**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JOE DALE MARTINEZ AND** | § | |
| **FIDENCIO LOPEZ, JR., Individually** | § | |
| **and on behalf of all others similarly** | § | |
| **situated;** | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:11-cv-295** |
| | § | |
| **REFINERY TERMINAL FIRE** | § | |
| **COMPANY** | § | |
| | § | |
| | § | |
| *Defendant* | § | |

---

### PLAINTIFFS' OPPOSED MOTION FOR CERTIFICATION OF COLLECTIVE ACTION AND REQUEST FOR NOTICE TO POTENTIAL PLAINTIFFS PURSUANT TO SECTION 216(b)

Plaintiffs, Joe Dale Martinez, Fidencio Lopez, Jr., Diana Alvarez, David Cantu, Jesse Castillo, Gordon Means, Thomas Cruz, Matthew Rives, Jacob McDaniel, Matthew Lynn Mitchell, Gabriel Salinas, Justin Serna, Steven Hogue, Arturo Lopez, Marcos Torres, Steven Sendejo, Cody Bogue, and Ura Lara, III, Individually and on behalf of all others similarly situated, ("Plaintiffs"), file this Motion for Certification of Collective Action and Request for Notice to Potential Plaintiffs, and would show the Court as follows:

### I.    SUMMARY OF CASE

1.1    Plaintiffs have filed a Fair Labor Standards Act ("FLSA") claim against Defendant Refinery Terminal Fire Company (hereinafter "RTFC") because Defendant RTFC failed to pay overtime compensation to Plaintiffs and other "salaried non-exempt" employees who worked more than forty (40) hours per workweek as is

required by 29 U.S.C. § 207(a) and 29 C.F.R. § 778.101.  Defendant RTFC routinely required hourly non-exempt employees to work more than forty (40) hours per workweek without paying them overtime or time and a half pursuant to the FLSA.  The Plaintiffs and the Potential Plaintiffs were also required to perform "additional time worked" (hereinafter "ATW") over and above forty (40) hours per workweek for which they did not receive full compensation pursuant to the FLSA.  Further, the Plaintiffs and the Potential Plaintiffs were required to be "on-call" for twenty-four (24) hours at a time but would not receive full compensation pursuant to the FLSA for all hours worked in excess of forty (40) hours per workweek.  The Plaintiffs and the Potential Plaintiffs did not and currently do not perform work that meets the definition of exempt work under the FLSA.  Defendant RTFC benefited from willfully depriving these employees of their hard earned wages.

   1.2  Additional individuals employed who are or were employed by Defendant RTFC suffer, and continue to suffer, injury as a result of Defendant RTFC's violations of the FLSA.  These unnamed individuals are similarly situated to the named Plaintiffs because (1) they have or had similar job duties and titles, (2) they have or had the same hourly pay structure, (3) they all work or worked for Defendant RTFC, (4) they were all required to perform ATW over and above forty (40) hours per workweek for which they did not receive full compensation pursuant to the FLSA, and (5) they were required to be "on-call" for twenty-four (24) hours at a time but would not receive full compensation pursuant to the FLSA for all hours worked in excess of forty (40) hours per workweek.  Accordingly, the named Plaintiffs seek to proceed in this FLSA action collectively with other similarly situated "salaried non-exempt" employees of Defendant RTFC.

1.3     The FLSA specifically confers the right of a party plaintiff to maintain an action on behalf of him/herself and those similarly situated to him/her.  29 U.S.C. § 216(b).  29 U.S.C. § 216(b) provides, in pertinent part:

> An action to recover liability … may be maintained against any employers … by any one or more employees for and on behalf of … themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless she gives her consent in writing to become such party and such consent is filed in the court in which such action is brought.

1.4     Collective actions serve the dual interests of serving justice and efficient case management, and benefit the plaintiffs, defendants and the courts by avoiding a multiplicity of duplicative suits, expediting the disposition of the action and reducing the attorneys' fees, costs and expenses associated with each affected individual having to pursue his or her own action.  *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed. 480 (1989).  "These benefits, however, depend on employees receiving accurate and *timely notice* concerning the pendency of the collective action so that they can make informed decisions about whether to participate."  *Id*. at 165 (emphasis added).

1.5     To that end, it is well settled that in a collective action brought pursuant to § 216(b) of the FLSA, district courts have the discretionary power to authorize the sending of notice to potential class members. *Id*.  Indeed, the "broad remedial purposes of the FLSA are best served" if the district court facilitates such notice.  *Brooks v. Bell South Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1955).  In the absence of court-authorized notification to all similarly situated employees, those employees may (i) not receive timely, complete and accurate information as to the pendency of this action, (ii) lack meaningful access to the court, and (iii) have no practical or efficient method of vindicating their rights. *Riojas v. Seal Products, Inc.*, 82 F.R.D. 613 (S.D. Tex.

1979) (court holding that notions of fundamental fairness dictate that notice should be sent).

1.6     This Motion for Notice to Potential Plaintiffs is brought pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b).  This is **not** a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Rather, under the FLSA and the case law interpreting it, individuals may bring "collective actions" on behalf of themselves and on behalf of those "similarly situated."  However, in sharp contrast to Rule 23 class action cases, collective actions under this statute are **opt-in** rather than opt-out.  There are potentially many other current and former RTFC firefighters who may not be aware of this suit or their rights to proceed in this forum.  Plaintiffs are therefore requesting that this Court issue a Notice to "all current and former salaried non-exempt employees of Defendant RTFC from 2008 through the present" who did not receive full compensation pursuant to the FLSA ("Potential Plaintiffs").  The Notice requested by Plaintiffs, a copy of which is attached hereto as Exhibit "A" and incorporated as if set out fully herein, would provide Potential Class Members with information about this lawsuit and allow them to make an informed decision as to whether or not to join this case.

1.7     Plaintiffs and Potential Plaintiffs were subject to a common policy, practice and procedure transgressing the requirements of the FLSA.  Specifically, Plaintiffs contend that they and those current and former "salaried non-exempt" employees of Defendant RTFC "similarly situated" to them were not paid correctly for all hours worked over forty (40) hours per workweek.[1]

---

[1] Plaintiffs' First Amended Collective Action Complaint ¶ 1.3.

1.8     Plaintiffs contend that they are similarly situated to current and former "salaried non-exempt" employees of Defendant RTFC at any time from 2008 through the present.

1.9     Plaintiffs, by this Motion, request this Court to enter an order authorizing this case to move forward as a collective action.

1.10    Plaintiffs, by this Motion, request this Court to order Defendant RTFC to produce a computer-readable file containing the names and current contact information including: addresses, e-mail addresses (if available) and telephone numbers of such "similarly situated" current and former employees from 2008 through the present so that Court-ordered notice may be implemented.

1.11    Plaintiffs, by this Motion, and pursuant to 29 U.S.C. § 215, request this Court to order Defendant RTFC to post, on its company bulletin boards and send via regular company newsletter, the Notice to Potential Plaintiffs authorized by the Court.

1.12    Plaintiffs, by this Motion, request this Court to order Defendant RTFC and individuals under its direction and control to refrain from interfering, by written or unwritten policy, by action or by statement, with the right of its employees to choose to opt-in as a Plaintiff to this cause of action and to refrain from retaliation of any kind against those employees who do choose to opt-in to this action.

1.13    In support of this Motion, Plaintiffs have submitted an appendix providing to the Court (1) a proposed Notice to Potential Plaintiffs, (2) a proposed Opt-In Consent Form, and (3) affidavits of Plaintiffs, establishing support for a collective action.

## II.     FACTS

2.1     Defendant RTFC is the largest non-profit industrial firefighting group in the United States.  Defendant RTFC is comprised of and owned entirely by its members

– Calpine Corporation, CITGO-Corpus Christi Refinery, Diamond Shamrock-Corpus Christi Facility, Elementis Chromium LP, Elementis Chromium, Lyondell Chemical-Corpus Christi Plant, Lyondell Corpus Christi, El Paso Corporation, Koch Pipeline Company, LP, Flint Hills Resources, Flint Hills Resources-East, Flint Hills Resources-West, Port of Corpus Christi Authority, Valero Marketing & Supply, Valero Refining-Corpus Christi, Valero Refining, Mark West-Javelina, Inc., NuStar Logistics, LP, Martin Midstream Partners, and Air Products.  Defendant RTFC is funded by these members who each pay an annual assessment for access to RTFC fire protection.  Defendant RTFC is in the business of providing fire protection, prevention, inspection, hazard mitigation, training, and technical support services.  Defendant RTFC currently has over 100 full time fire fighters that protect over 70 individual facilities and contains billions of dollars in assets.

2.2    During all times relevant to this action, the Plaintiffs and Potential Plaintiffs were employed by Defendant RTFC as "salaried non-exempt" employees and were not paid at time and a half of their regular rate of pay for all hours they worked over forty (40) hours per workweek.  The Plaintiffs and Potential Plaintiffs were classified as "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," "Senior Firefighter Two," "Captain," and "Senior Captain."

2.3    Plaintiff Joe Dale "J. D." Martinez ("Martinez") was employed by Defendant RTFC from approximately May 1995 until April 2010.  During that time, Plaintiff Martinez worked as a "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," "Senior Firefighter Two," "Captain," and "Senior Captain" at Defendant RTFC's Main Station and Training Academy in Corpus Christi, Texas.  Plaintiff Martinez was paid based on an hourly rate that increased over time as he was

promoted within the ranks of RTFC.  *See* Affidavit of Joe Dale "J. D." Martinez, attached hereto as Exhibit "B" and incorporated as if set out fully herein.

2.4     Plaintiff Fidencio "J. R." Lopez, Jr. ("Lopez") was employed by Defendant RTFC from approximately February 2004 until May 2011.  During that time, Plaintiff Lopez worked as a "Trainee," "Firefighter One" and "Senior Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Lopez was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Fidencio "J. R." Lopez, Jr., attached hereto as Exhibit "C" and incorporated as if set forth fully herein.

2.5     Plaintiff Diana Alvarez ("Alvarez") was employed by Defendant RTFC from approximately March 1989 until April 2009.  During that time, Plaintiff Alvarez worked as a "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," "Senior Firefighter Two," "Captain," and "Senior Captain" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Alvarez was paid based on an hourly rate that increased over time as she was promoted within the ranks of RTFC.

2.6     Plaintiff David Cantu ("Cantu") was employed by Defendant RTFC from approximately 2001 until August 2011.  During that time, Plaintiff Cantu worked as a "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," and "Senior Firefighter Two" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Cantu was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of David Cantu, attached hereto as Exhibit "D" and incorporated as if set forth fully herein.

2.7     Plaintiff Jesse Castillo ("Castillo") was employed by Defendant RTFC from approximately May 2002 until September 2009. During that time, Plaintiff Castillo

worked as a "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," and "Senior Firefighter Two" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the LyondellBasell in-plant station formerly located at Chocolate Bayou in Brazoria County, Texas.  Plaintiff Castillo was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Jesse Castillo attached hereto as Exhibit "E" and incorporated as if set forth fully herein.

2.8     Plaintiff Gordon Means ("Means") was employed by Defendant RTFC from approximately June 2008 until January 2011.  During that time, Plaintiff Means worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Means was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC. *See* Affidavit of Gordon Means attached hereto as Exhibit "F" and incorporated as if set forth fully herein.

2.9     Plaintiff Thomas Cruz ("Cruz") was employed by Defendant RTFC from approximately August 2007 until July 2009.  During that time, Plaintiff Cruz worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Cruz was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.

2.10     Plaintiff Matthew Rives ("Rives") was employed by Defendant RTFC from approximately August 2009 until August 2010.  During that time, Plaintiff Rives worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Rives was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.

2.11    Plaintiff Jacob McDaniel ("McDaniel") was employed by Defendant RTFC from approximately August 2008 until July 2010.  During that time, Plaintiff McDaniel worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff McDaniel was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Jacob McDaniel attached hereto as Exhibit "G" and incorporated as if set forth fully herein.

2.12    Plaintiff Matthew Mitchell ("Mitchell") was employed by Defendant RTFC from approximately August 2008 until September 2011.  During that time, Plaintiff Mitchell worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Mitchell was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Matthew Mitchell attached hereto as Exhibit "H" and incorporated as if set forth fully herein.

2.13    Plaintiff Gabriel Salinas ("Salinas") was employed by Defendant RTFC from approximately October 2007 until August 2010.  During that time, Plaintiff Salinas worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas.  Plaintiff Salinas was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Gabriel Salinas attached hereto as Exhibit "I" and incorporated as if set forth fully herein.

2.14    Plaintiff Justin Serna ("Serna") was employed by Defendant RTFC from approximately August 2008 until May 2010.  During that time, Plaintiff Serna worked as a "Trainee" and "Firefighter One" at Defendant RTFC's and Training Academy located in Corpus Christi, Texas.   Plaintiff Serna was paid based on an hourly rate that

increased over time as he was promoted within the ranks of RTFC. *See* Affidavit of Justin Serna attached hereto as Exhibit "J" and incorporated as if set forth fully herein.

2.15   Plaintiff Steven Hogue ("Hogue") was employed by Defendant RTFC from approximately November 2004 until September 2009.  During that time, Plaintiff Hogue worked as a "Trainee," "Firefighter One," and "Senior Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the LyondellBasell in-plant station formerly located at Chocolate Bayou in Brazoria County, Texas. Plaintiff Hogue was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Steven Hogue attached hereto as Exhibit "K" and incorporated as if set forth fully herein.

2.16   Plaintiff Arturo Lopez ("Lopez") was employed by Defendant RTFC from approximately October 2007 until October 2010.  During that time, Plaintiff Lopez worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the LyondellBasell in-plant station formerly located at Chocolate Bayou in Brazoria County, Texas.  Plaintiff Lopez was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Arturo Lopez attached hereto as Exhibit "L" and incorporated as if set forth fully herein.

2.17   Plaintiff Marcos Torres ("Torres") was employed by Defendant RTFC from approximately October 2007 until November 2009.  During that time, Plaintiff Torres worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the LyondellBasell in-plant station formerly located at Chocolate Bayou in Brazoria County, Texas.  Plaintiff Torres was paid based on an hourly rate that increased over time as he was promoted

within the ranks of RTFC.  *See* Affidavit of Marcos Torres attached hereto as Exhibit "M" and incorporated as if set forth fully herein.

2.18    Plaintiff Steven Sendejo ("Sendejo") was employed by Defendant RTFC from approximately November 2007 until November 2009.  During that time, Plaintiff Sendejo worked as a "Trainee" and "Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the LyondellBasell in-plant station formerly located at Chocolate Bayou in Brazoria County, Texas. Plaintiff Sendejo was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC.  *See* Affidavit of Steven Sendejo attached hereto as Exhibit "N" and incorporated as if set forth fully herein.

2.19    Plaintiff Cody Bogue ("Bogue") was employed by Defendant RTFC from approximately August 2010 until July 2011.  During that time, Plaintiff Bogue worked as a "Trainee" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the Flint Hills Resources in-plant station located in Port Arthur, Texas. Plaintiff Bogue was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC. *See* Affidavit of Cody Bogue attached hereto as Exhibit "O" and incorporated as if set forth fully herein.

2.20    Plaintiff Ura Lara, III ("Lara") was employed by Defendant RTFC from approximately September 2008 until September 2011.  During that time, Plaintiff Lara worked as a "Trainee," "Firefighter One," and "Senior Firefighter One" at Defendant RTFC's Main Station and Training Academy located in Corpus Christi, Texas, and the Flint Hills Resources in-plant station located in Port Arthur, Texas.  Plaintiff Lara was paid based on an hourly rate that increased over time as he was promoted within the ranks of RTFC. *See* Affidavit of Ura Lara, III attached hereto as Exhibit "P" and incorporated as if set forth fully herein.

2.21    Defendant RTFC required or permitted the Plaintiffs and Potential Plaintiffs to work in excess of forty (40) hours per week without being paid full overtime compensation.  The Plaintiffs and Potential Plaintiffs were not paid time and a half for all hours they worked over forty (40) hours per workweek.   Instead, the Plaintiffs and Potential Plaintiffs were paid only "half-time" for hours which RTFC classified as "true" or "scheduled" overtime.  The Plaintiffs and Potential Plaintiffs were paid at a different "half-time" rate depending on their rank within RTFC.  A higher rank dictated a higher hourly rate of pay and therefore a higher "half-time" rate for "true" or "scheduled" overtime hours worked.

2.22    The Plaintiffs and Potential Plaintiffs were also required to perform ATW, or work past their regular shift, but would not receive full compensation for all hours worked pursuant to the FLSA.  The Plaintiffs and Potential Plaintiffs were paid for ATW on a sliding-scale rate that was also based on rank within RTFC.  Instead of being paid "half-time" for all ATW, the Plaintiffs and Potential Plaintiffs were paid at a premium rate above their hourly rate of pay.  *Id*.  The Plaintiffs and Potential Plaintiffs were also permitted and/or required to work holidays and weekends.  These hours were included in the ATW premium "coverage" rate.

2.23    Further, the Plaintiffs and Potential Plaintiffs were required to be "on-call" for twenty-four (24) hours at a time but would not receive full compensation pursuant to the FLSA for all hours worked in excess of forty (40) hours per workweek.  The Plaintiffs and Potential Plaintiffs were required to respond to a "callout" and be at the RTFC Main Station within thirty minutes (forty-five minutes at the Chocolate Bayou or Port Arthur in-plant locations).  If the Plaintiffs and Potential Plaintiffs responded within the allotted thirty-minute (or forty-five minute) window, they received a $50.00 "initial reporting" bonus payment and were then paid at a "callout" rate that was

commensurate with their rank.  The Plaintiffs and Potential Plaintiffs were paid at the "callout" rate as long as the job lasted unless it overlapped into their next scheduled shift, then the Plaintiffs and Potential Plaintiffs were paid at their regular hourly rate even though they continued to work on the "callout" job.  However, if the Plaintiffs and Potential Plaintiffs did not respond in time they were subject to various disciplinary measures, including but not limited to the loss of vacation and/or sick days, lower rates of pay, demotion in rank, and/or termination.  As such, the Plaintiffs and Potential Plaintiffs were essentially held captive when "on-call" as they were unable to travel, visit with friends and/or family, or engage in other personal pursuits with any type of regularity or consistency for fear of not being able to respond to a call within the allotted thirty-minute (or forty-five minute) window.

2.24   The Plaintiffs and Potential Plaintiffs were not exempt from the overtime pay requirements of the Fair Labor Standards Act because they were  "salaried non-exempt" employees and/or their duties were non-exempt.  Further, the Plaintiffs and Potential Plaintiffs were firefighters ("first responders") who performed work such as preventing, controlling or extinguishing fires of any type and therefore are not exempt under Section 13(a)(1) of the FLSA.

2.25   Moreover, the Plaintiffs and Potential Plaintiffs were not subject to the "fixed salary for fluctuating hours," or "fluctuating workweek ("FWW")," payment method under 29 C.F.R. 778.114.  Specifically, the Code of Federal Regulations provides in pertinent part:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.  Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever

their number, rather than for working for 40 working hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

29 C.F.R. § 778.114(a).

2.26    In short, to apply the FWW method, Defendant RTFC must demonstrate that (1) the Plaintiffs' and Potential Class Members' hours fluctuate from week to week, (2) the Plaintiffs and Potential Class Members receive a fixed salary that does not vary with the number of hours worked during each workweek (excluding overtime premiums), (3) the fixed amount received by the Plaintiffs and Potential Class Members provides compensation every week at a regular rate that is at least equal to the minimum wage, and (4) that Defendant RTFC and the Plaintiffs and Potential Class Members share a "clear mutual understanding" that Defendant RTFC will pay that fixed salary regardless of the number of hours worked.  *Id*.

2.27    The Plaintiffs and Potential Plaintiffs were classified as "salaried non-exempt" employees, but were not paid "a fixed salary that does not vary with the number of hours worked during each workweek (excluding overtime premiums)."  *Id*. The FWW prohibits the payment of non-overtime bonuses and other work-related pay incentives.  *See* Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.14, 76 Fed. Reg. 18832, 18848 (April 5, 2011) (to be codified at 29 C.F.R. pt. 778); *see also Overnight Transportation Co. v. Missel*, 316 U.S. 572 (1942).  The Plaintiffs' and Potential Plaintiffs' compensation for non-overtime hours varied depending upon callout, ATW, holiday and/or weekend-pay therefore precluding the application of the FWW.  *See O'Brien v. Town of Agawam*, 350 F.3d 279, 288 (1st Cir. 2008) (holding that a

ten-dollar night-shift increase precluded application of the FWW); *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326 (S.D.N.Y. 2007) (holding "any Plaintiff who received sea pay or day-off pay did not have fixed weekly straight time pay, in violation of 29 C.F.R. § 778.14(a)."); *Dooley v. Liberty Mutual Insurance Company*, 369 F.Supp.2d 81, 86 (D. Mass. 2005) (holding that payment of a premium rate for weekend work precludes application of the FWW); *Adeva v. Intertek USA, Inc.*, No. 09-1096, 2010 WL 97991 (D.N.J. Jan. 11, 2010) (holding that shift premiums and holiday pay preclude application of the FWW); *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 WL 1644066 (D.N.J. April 22, 2010) (holding that the use of day off and holiday pay results in the absence of the "fixed salary" required by 29 C.F.R. § 778.114(a).  The sea-pay, day-off pay, night-shift pay, weekend-pay, and holiday pay analyzed in the *O'Brien*, *Ayers*, *Dooley*, *Adeva*, and *Brumley* decisions are nearly identical to the types of payments received by the Plaintiffs and Potential Plaintiffs in this case.  Clearly, the payment of differentials such as "on-call" bonus pay and increased pay for ATW, holidays, and weekends means that RTFC employees were not and are currently not being paid a "fixed salary" regardless of hours worked.  Instead, the salary fluctuates, based upon whether the employee is or is not receiving "on-call," ATW, holiday, or weekend-pay.   The Supreme Court has specifically held that such differentials, when paid, are part of the worker's regular rate of pay.  *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468-69 (1948).  Therefore, it must follow that the Plaintiffs and Potential Plaintiffs do not receive a "fixed amount" for their straight-time labor each week.

2.28   If the regulation merely required that employees received a minimum salary every week, which could be increased by such bonuses, then Defendant RTFC's argument that the FWW applied would have substantial force.   The regulation, however, contains no such thing.   Notably, in 2008, the Department of Labor

(hereinafter "DOL") under the Bush Administration proposed certain regulations that would have amended 29 C.F.R. § 778.114 to permit payments of non-overtime bonuses and incentives (such as pay differentials) "without invalidating the guaranteed salary criterion required for the half-time overtime pay compensation."  *See* Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.14, 73 Fed. Reg. 43654, 43663 (proposed July 28, 2008) (to be codified at 29 CFR pt. 778).  The DOL, however, left out this proposed change from the final rules, saying it had "concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime."  Explaining the decision not to amend the FWW regulation, the DOL noted that "several commenters…noted that the proposal would permit employers to reduce employees' fixed weekly salaries and shift the bulk of the employees' wages to bonus and premium pay" contra to the FLSA's intent.  *See* Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.14, 76 Fed. Reg. 18832, 18848 (April 5, 2011) (to be codified at 29 C.F.R. pt. 778).  Accordingly, Defendant RTFC's FWW compensation methodology violates the FLSA as such premiums and bonuses run afoul of the "fixed salary" requirement of 29 C.F.R. § 778.14(a).

2.29   While the Plaintiffs and Potential Plaintiffs each acknowledged and signed notice of the FWW payment method, there was not a "clear mutual understanding" that Defendant RTFC would pay the purported "fixed salary" regardless of the number of hours worked.  The Plaintiffs and Potential Plaintiffs signed the notice not knowing what they were signing.  The Plaintiffs and Potential Plaintiffs are, and always have been, unsophisticated laborers who were entirely dependent upon the sophisticated Defendant RTFC for explanations and instructions on their pay.  The Plaintiffs and Potential Plaintiffs were, and always have been, under the impression that they were

paid on an hourly, not "fixed salary," basis. The Plaintiffs and Potential Plaintiffs do not, and have not ever, understood that they were to be paid according to a fluctuating workweek method pursuant to 29 C.F.R. 778.114(a). Defendant RTFC, by use of their notice, failed to establish a "clear mutual understanding" within the Plaintiffs and Potential Plaintiffs, as a whole and as to each individual Plaintiff and Potential Plaintiff, that they were to be paid according to an alleged fluctuating workweek method.

2.30    Even assuming there was a "clear mutual understanding" of a valid FWW payment method, Defendant RTFC failed to apply such method on a consistent basis in accordance with the FLSA. By way of illustration, on numerous occasions the Plaintiffs and Potential Plaintiffs responded to callouts expecting to receive the RTFC mandated "callout" pay, but instead routinely received the ATW "coverage" rate. The Plaintiffs and Potential Plaintiffs clearly failed to exhibit to a "clear mutual understanding" of the FWW payment method, and Defendant RTFC contributed to that lack of "clear mutual understanding" on a regular basis by failing to apply the stated policies and procedures in any consistent manner whatsoever.

2.31    In addition to the named Plaintiffs, there are many other similarly situated current and former employees of RTFC who perform, or have performed, duties similar to the Plaintiffs and who are, or were, paid in the same manner. These individuals are Potential Plaintiffs in this matter who are entitled to know about the lawsuit and are entitled to participate in this suit if they choose to recover overtime compensation that Defendant RTFC failed to pay as required by the Fair Labor Standards Act.

2.32    Plaintiffs do not presently know the names, addresses and/or telephone numbers of all employees with whom they worked at Defendant RTFC.

### III.    ISSUE PRESENTED

3.1    Should Potential Plaintiffs be notified about the existence of this action so that they can make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid overtime compensation?

### IV.    THE COURT IS AUTHORIZED TO ISSUE NOTICE
### TO ALL POTENTIAL OPT-INS

4.1    Courts are authorized to facilitate notice to potential plaintiffs in collective actions brought under 29 U.S.C. § 216(b). *Hoffman-LaRoche*, 493 U.S. at 169; *Dybach*, 942 F.2d at 1567-68.   Court facilitation of notice to potential opt-ins serves the "broad remedial purpose of the Act [FLSA]." *Dybach*, 942 F.2d at 1567.

4.2    For an opt-in class to be created under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.), *cert. denied*, ___ U.S. ---___, 117 S.Ct. 435 (1996).   Plaintiffs' claims and positions need not be identical to those of putative class members, but need only be similar. *Id.*; *Tucker*, 872 F. Supp. at 947.   Plaintiffs need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist. *Grayson v. K Mart*, 79 F.3d at 1097.

4.3    The standard plaintiffs must meet is thus considerably less stringent than the proof required for joinder pursuant to Fed. R. Civ. P. 20(a) or for class certification under Fed. R. Civ. P. 23. *Grayson v. K Mart*, 79 F.3d at 1096. *See also*, *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) (applying a "fairly lenient standard" for §216(b) determinations). It is also abundantly clear that the notice motion is not a ruling on the merits of the Plaintiffs' claims. *Grayson v. K Mart*, 79 F.3d at 1099 n.17; *Garner*, 802 F. Supp. at 423 n.3. *See also*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (plaintiffs need not demonstrate they will prevail on the merits even to obtain class

certification under the more demanding requirements of Rule 23 and the requirements of Section 216(b) are far less stringent).

4.4     In sum, all Plaintiffs need demonstrate at this stage of a collective action is that "there are other employees of the ... employer who [may] desire to "opt-in" and that these other employees are "similarly situated" with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1567-68; *Tucker*, 927 F. Supp. at 947.   Plaintiffs may establish this through substantial and detailed allegations in their complaint with some modicum of evidentiary support in the form of affidavits.   *Grayson v. K Mart*, 79 F.3d at 1097.   As demonstrated below, Plaintiffs in this case more than meet this standard for creating an opt-in class and for issuance of notice under §216(b).

### A.     <u>Issuance of Notice is Appropriate in This Case Because Plaintiffs Meet the Similarly Situated Standard.</u>

4.5     In this case, the current and former hourly employees of Defendant RTFC who, from 2008 through the present, were required to routinely work more than forty (40) hours in a workweek without being paid time and a half for all such hours, form a cohesive group of similarly situated employees.   Defendant RTFC had a practice of requiring hourly "salaried non-exempt" employees to work more than forty (40) hours per workweek without paying them time and a half.   Because each member of the proposed opt-in "class" was required to work more than forty (40) hours per workweek and was paid on an hourly basis, the overtime claims presented in this case can readily be adjudicated on a collective action basis.

4.6     There is no significant difference between the job duties and responsibilities of the representative Plaintiffs and Potential Plaintiffs that hold or held the job positions of "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter

Two," "Senior Firefighter Two," "Captain," and/or "Senior Captain," from 2008 to the present.

4.7     The similarity of the duties and responsibilities of "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," "Senior Firefighter Two," "Captain," and "Senior Captain" is confirmed by the affidavits of Joe Dale Martinez, Fidencio Lopez, Jr., David Cantu, Jesse Castillo, Gordon Means, Jacob McDaniel, Matthew Mitchell, Gabriel Salinas, Justin Serna, Steven Hogue, Arturo Lopez, Marcos Torres, Steven Sendejo, Cody Bogue, and Ura Lara, III.   The affidavits confirm that (1) all of these job positions were "salaried non-exempt" positions, (2) each affiant worked more than forty (40) hours per week without being compensated for overtime at a rate of one and one-half times their regular hourly rate, (3) each affiant was required to perform ATW and was only paid at a nominal rate above their regular hourly rate, and (4) each affiant was required to be "on-call" for twenty-four (24) hours at a time and was paid a $50.00 lump-sum bonus for responding to a "callout" within thirty minutes (or forty-five minutes) and a sliding-scale rate for all hours worked thereafter.  The affidavits also confirm that the job duties performed by these employees are nearly identical – providing fire protection and prevention, inspection, hazard mitigation, training and technical support services to refineries and petrochemical facilities.

4.8     Plaintiffs have also alleged that they along with Potential Opt-In Plaintiffs were all subject to the same illegal pay practice imposed by Defendant RTFC.[2]  Plaintiffs have alleged that all firefighters employed as "Trainee," "Firefighter One," "Senior Firefighter One," "Firefighter Two," "Senior Firefighter Two," "Captain," and/or "Senior Captain" were not paid in compliance with the overtime provisions of the FLSA.  Rather, the Plaintiffs and Potential Opt-In Plaintiffs worked in excess of forty

---

[2] Plaintiffs' Amended Complaint ¶¶ 1.2, 1.3, 6.1 through 6.20.

(40) hours per workweek but were not compensated at a rate of one and one-half times their regular hourly rate of pay.  Plaintiffs have supported these allegations with their affidavits.  *See* Exhibits "B" through "P."

    4.9    Plaintiffs readily meet the liberal standard for court facilitation of a FLSA collective action, because: (a) there are other employees of the employer who desire to "opt-in"; (b) these other employees are "similarly situated" with respect to their job requirements and with regard to their pay provisions; and (c) Plaintiffs have demonstrated the above through the substantial allegations of the Complaint, the consents already filed with the Court, and the Affidavits filed to date.  Therefore, the Court should authorize this lawsuit to proceed as a FLSA collective action and also authorize mailing of a notice to all current and former employees employed by Defendant during the three years prior to filing of the Original Complaint through the present.

    **B.**    **There Are Other Similarly Situated Employees Who May Desire to Opt-In.**

    4.10    There are an as of yet undetermined number of current and former employees who are similarly situated to those Plaintiffs who have already filed Consent Forms in this action and who also may desire to opt into this collective action.  The Affidavits attached hereto state that the Plaintiffs currently in this case are aware of hundreds of other current or former employees who may be interested in joining this lawsuit. *See* Exhibits "B" through "P."  In sum, the Consent forms already on file, combined with the attached Affidavits establish the existence of other similarly situated employees who potentially have large monetary claims and would likely join the lawsuit if they became aware of this action and the procedures available for opting in.  Those eligible to opt-in represent hundreds of current and former employees of

Defendant RTFC.

4.11    In spite of the fact that Defendant RTFC knew it owed overtime pay to these individuals, it has not paid this overtime pay.  Indeed, Defendant RTFC willfully sought to avoid its obligations to pay Plaintiffs as required by law.  *See* Exhibits "B" through "P."

4.12    Given Defendant RTFC's willful failure to obey the law, it is likely that the forty-two (42) Plaintiffs who have opted into this case thus far represent only the tip of the iceberg of the back pay obligations of this Defendant.  Indeed, there are likely to be many more current and former employees of Defendant RTFC who are similarly situated to the Plaintiffs herein and who would desire to opt in if they were aware of this action.

C.    <u>**Plaintiffs Have Carried Their Burden of Demonstrating a Reasonable Basis for a Collective Action Determination.**</u>

4.13    Plaintiffs have carried their burden of demonstrating the propriety of proceeding as a collective action through the substantial allegations of the Original and Amended Complaints, the Consent Forms already filed with the Court, and the Affidavits attached hereto *See* Exhibits "B" through "P."  Typically, discovery is not necessary prior to a determination on the issue of Section 216(b) notice.  *Mooney*, 54 F.3d at 1213-14.  Rather, a collective action is to be authorized and notice issued when plaintiffs have demonstrated a reasonable basis for the class allegations of the complaint by filing Affidavits and Consents from class members. *Grayson v. K Mart*, 79 F.3d at 1097.  As such, Plaintiffs' Motion is fully supported by the allegations in the Amended Complaint, the Consent Forms on file, and the attached Affidavits. *See* Exhibits "B" through "P."

*Motion for Certification of Collective Action and*
*Request for Notice to Potential Plaintiffs Pursuant to Section 216(b)*

Page 22

**D.** **Notice Must be Expedited Due to the Running of the Statute of Limitations.**

4.14    Notice to the class should be expedited in this action in order to prevent the running of the statute of limitations or the diminishment of the damages recovery period for potential plaintiffs who desire to opt-in to the case. *Knight v. Columbus, GA,* 19 F.3d. 582; 29 U.S.C. §255(a).  The statute of limitations is tolled for a named plaintiff in a FLSA collective action on the date the complaint is filed; but for those opting in the statute generally is tolled only on the later date when each individual's written Consent Form is filed with the court.  *Grayson v. K Mart*, 79 F.3d at 1105-06; 29 C.F.R. §790.21(b)(2).

4.15    For each day that passes while notice has not been provided to potential opt-ins, former employees of Defendant are being deprived of their right to sue and/or are having the potential value of their claims diminished.  Circulating notice to these putative plaintiffs is thus essential to allow current and former employees of Defendant to act to protect their interests.  Without notice, they are unaware of this action and their rights to opt-in, and they are powerless to prevent their claims from slipping away.

4.16    Therefore, notice should be expedited in this action to the maximum extent feasible and should be sent to all similarly situated current and former employees of Defendant employed during the maximum three-year potential liability period beginning three years prior to the filing of the Original Complaint through the present.  *See Belcher*, 927 F. Supp. at 252.

**E.** **The Proposed Notice is Fair and Adequate.**

4.17    A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.  Court

authorized notice prevents "misleading communications" and assures the dissemination of accurate information. *Id*. at 172; *Garner*, 802 F. Supp. at 422. Plaintiffs' proposed Notice meets these criteria.

4.18    Plaintiffs' proposal for court approved notice to the potential opt-ins is "timely, accurate, and informative" as required. *Hoffman-LaRoche*, 493 U.S. at 172; Ex. 12. It provides notice of the pendency of the action and of the opportunity to opt-in. *Id*. The Plaintiffs' legal claims are accurately described. *Id*. Potential opt-ins are advised that they are not required to participate. *Id*. The proposed Notice provides clear instructions for how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action.[3]  *Id*.

4.19    Plaintiffs have proposed that the Notice and Consent Forms be mailed by first class mail to all current and former employees employed by Defendant RTFC during the period beginning three years prior to the filing of the Original Complaint through the present.  Plaintiffs also have proposed that those class members interested in participating would be required to file their Consents with the Court within ninety (90) days of their receipt of the mailing.  This is consistent with established practice under the FLSA. *Hoffmann-LaRoche*, 493 U.S. at 172; *Garner*, 802 F. Supp. at 422 (cut off date expedites resolution of action); *Hipp*, 164 F.R.D. at 576 (M.D. Fla. 1996) (120 day filing period); *Belcher*; 927 F. Supp. at 252-55 (exemplar of company-wide notice).  In sum, the proposed Notice is fair and accurate and should be approved for distribution.

F.    **The Proposed Limited Discovery is Essential to Ensure Timely Notice.**

4.20    Discovery of a mailing list for Section 216(b) class members is a routine component of notice in collective actions. *Hoffman-LaRoche*, 493 U.S. at 170 ("District Court was correct to permit discovery of the names and addresses...");* Grayson v. K*

---

[3] *See also* FLSA, 29 U.S.C. § 215 (a)(3); *Reich v. Davis*, 50 F.3d 962 (11th Cir. 1995).

*Mart*, 79 F.3d at 1111 (ordering production of mailing list); *Belcher*, 927 F. Supp. at 252 (same); *Hipp*, 164 F.R.D. at 576 (same).  Plaintiffs submit that this Motion may be resolved without the need for extensive or time-consuming discovery. *Mooney*, 54 F.3d at 1213-14. Even so, as a practical matter, a mailing list is essential to the timely notice required by Section 216(b).  *Hoffmann-LaRoche*, 493 U.S. at 170.

## V.    RELIEF SOUGHT

5.1    Plaintiffs ask that the Court approve the attached proposed Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA.

5.2    To facilitate the Notice process and preserve the rights of those who have not yet opted-in, Plaintiffs have attached a proposed Notice and proposed Consent form to be approved by the Court.  *See* Exhibits "A" and "A-1."  Plaintiffs seek to notify a group of potential plaintiffs described as follows:

**ALL CURRENT AND FORMER SALARIED NON-EXEMPT EMPLOYEES OF DEFENDANT REFINERY TERMINAL FIRE COMPANY DURING THE TIME PERIOD FROM 2008 THROUGH THE PRESENT WHO WERE NOT PAID OVERTIME COMPENSATION FOR TIME WORKED IN EXCESS OF 40 HOURS PER WORKWEEK**

5.3    Plaintiffs do not have access to a list of all of Defendant RTFC's "salaried non-exempt" employees that performed duties similar to those performed by Plaintiffs and who were denied overtime pay for hours worked over forty (40) per week from 2008 through the present.  Therefore, Plaintiffs request that the Court order Defendant RTFC to produce a computer-readable file containing the names, job titles, addresses, e-mail addresses (if available) and home telephone and cell phone numbers of such similarly situated current and former "salaried non-exempt" employees from 2008 through the present so that Court-ordered notice may be implemented.

5.4     Requiring Defendant RTFC to provide this information will carry out the purposes of Section 216(b) and help ensure that each affected individual will be located and provided with appropriate notice so each can determine whether he/she wants to "opt-in" as a plaintiff in this collective action.

5.5     All of the information requested above is necessary to locate the similarly situated affected individuals.   As mentioned earlier, accurate and timely notice is critical to the preservation of employees' legal rights in FLSA collective actions and will be maintained in accordance with the Court's standard protective order.

5.6     Plaintiffs also request that the Court order Defendant RTFC to post the attached Notice, along with the Consent forms, in each of Defendant RTFC's offices where "similarly situated" individuals are employed.

5.7     Plaintiffs requests that all potential plaintiffs be given ninety (90) days from the date of mailing of the notices to "opt-in" to the collective action.

## VI.     CONCLUSION

6.1     In order to facilitate the purposed of the FLSA's collective action provisions, this Court should authorize a Court-approved notice to be issued by Plaintiffs to Potential Plaintiffs.  Such a Notice will allow those employees whose rights are eroding each day to be informed of this action and their right to join.  Plaintiffs have met their burden to show that other similarly situated individuals exist and are interested in asserting their claims.

Respectfully submitted,

By:       /s/ *Craig M. Sico*

Craig M. Sico
State Bar No. 18339850
Federal I.D. No. 13540
SICO, WHITE, HOELSCHER & BRAUGH L.L.P.
900 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78401
Telephone:  361-653-3300
Facsimile:  361-653-3333

**ATTORNEY IN CHARGE FOR PLAINTIFFS**

OF COUNSEL:

Roger S. Braugh, Jr.
Federal I. D. No. 21326
Texas Bar No. 00796244
Clif Alexander
Federal I.D. No. 1138436
Texas Bar No. 24064805
Stuart R. White
Texas Bar No. 24075268
SICO, WHITE, HOELSCHER & BRAUGH, L.L.P.
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Telephone: 361/653-3300
Facsimile: 361/653-3333

Jerry Guerra
Federal I.D. No. 18166
Texas Bar No. 00789326
HUERTA GUERRA BEAM, PLLC
924 Leopard Street
Corpus Christi, Texas 78401
Telephone: 361/884-1632
Facsimile: 361/884-7013

## CERTIFICATE OF CONFERENCE

Plaintiffs have conferred with defense counsel regarding the relief sought by way of this notice.  Defendant is opposed to this motion.

_/s/ Craig M. Sico_
Craig M. Sico

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of December a copy of the foregoing instrument was served on counsel of record by electronic filing at the website for the Southern District of Texas at http://www.txsd.uscourts.gov.

/S/            Craig M. Sico
Craig M. Sico