**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JOE DALE MARTINEZ and FIDENCIO LOPEZ, JR., Individually and on behalf of all others similarly situated;** | § § § § | |
| *Plaintiffs,* | § § | |
| **v.** | § § | Civil Action No. 2:11-cv-295 |
| **REFINERY TERMINAL FIRE COMPANY** | § § § | |
| *Defendant* | § § § | |

---

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE FLUCTUATING WORKWEEK PAYMENT METHOD

---

Plaintiffs move for summary judgment on liability because as a matter of law Defendant Refinery Terminal Fire Company's ("RTFC") method of payment violated the Fair Labor Standards Act ("FLSA" or "the Act"). Similarly to other FLSA actions, the trial of this matter should be limited to damages because liability is established by conclusive evidence of the employees' work schedules and the payment scheme.

### I.
### BRIEF SUMMARY OF ARGUMENTS

RTFC failed to pay its non-exempt employees (collectively, "Plaintiffs") overtime at a rate of time-and-a-half (1.5) by misapplying the fluctuating workweek method of payment ("FWW"), the very narrow exception under federal law that permits employers to pay overtime at a rate of half-time (0.5) for all hours worked over forty in a single workweek. To utilize the FWW, an employer is required to adhere to the very specific rules outlined in 29 C.F.R. § 778.114. When an employer fails

to strictly follow the specific rules, the FWW is improper and the employer is in violation of the FLSA.

As a matter of law, RTFC's payment scheme failed to satisfy the strict FWW requirements and was therefore in violation of the FLSA. As a result, RTFC owes Plaintiffs back pay and penalties pursuant to the provisions of Section 216(b) of the FLSA.

## II.
## SUMMARY JUDGMENT EVIDENCE

In support of the motion for summary judgment, Plaintiffs submit the following evidence, which along with well-established precedent establishes RTFC's violations as a matter of law.

| | |
|---|---|
| **Exhibit 1** | RTFC Employee Handbook |
| **Exhibit 2** | RTFC Website (Printed Version) (also available online at www.rtfc.org) |
| **Exhibit 3** | Deposition of Lonnie Bartlett (30(b)(6) witness for RTFC) |
| **Exhibit 4** | Deposition of Tania Claudio |
| **Exhibit 5** | Fixed Salary for Fluctuating Workweek Form |
| **Exhibit 6** | Affidavit of Christopher Garcia |
| **Exhibit 7** | Affidavit of Neri Garcia |
| **Exhibit 8** | Affidavit of Fidencio Lopez, Jr. |
| **Exhibit 9** | Affidavit of William Major |
| **Exhibit 10** | Affidavit of Joe Dale Martinez |
| **Exhibit 11** | Affidavit of David Mireles |
| **Exhibit 12** | Affidavit of Edward Morgan |
| **Exhibit 13** | Affidavit of Andres Vasquez |
| **Exhibit 14** | Payroll Worksheets from Sample of Plaintiffs Who Were Paid Reporting Pay Bonuses |

**Exhibit 15**       Payroll Worksheets from a Sample of Plaintiffs Who Were Paid ATW and/or Callout Pay in Workweeks with Less Than Forty Hours

**Exhibit 16**       Payroll Worksheets from a Sample of Plaintiffs Who Were Paid ATW in the First Forty Hours of their Workweek

**Exhibit 17**       Payroll Worksheets and Written Reprimands Reflecting RTFC Disciplining Plaintiffs by Suspending Them Without Pay

**Exhibit 18**       Deposition of Christopher Garcia

**Exhibit 19**       Deposition of Neri Garcia

**Exhibit 20**       Deposition of Fidencio Lopez, Jr.

**Exhibit 21**       Deposition of William Major

**Exhibit 22**       Deposition of Joe Dale Martinez

**Exhibit 23**       Deposition of David Mireles

**Exhibit 24**       Deposition of Edward Morgan

**Exhibit 25**       Deposition of Andres Vasquez

### III.
### BACKGROUND FACTS AND THE FWW

A.       **RTFC AND THE PLAINTIFFS, CLAIM PERIOD, AND DEFINITIONS**

As an initial matter, RTFC was and is an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).[1] RTFC further was and is an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).[2] Finally, RTFC was and is an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1).[3]

---

[1] Exhibit 1 and Exhibit 2. For purposes of brevity, Plaintiffs will not restate the "claim period" before each of the statements, but each of the statements in this section is directed at the "claim period" which is defined in this section as September 9, 2008 through December 31, 2011.
[2] *Id.*
[3] *Id.*

Plaintiffs were/are individual employees engaged in commerce within the meaning of sections 206 and 207 of the FLSA. 29 U.S.C. §§ 206-207.[4] Plaintiffs were/are among the one hundred plus full-time firefighters employed by RTFC that are responsible for protecting over seventy different facilities in the State of Texas. After advancing from recruit training, Firefighters at RTFC hold varied positions including, but not limited to: Trainee, Firefighter One, Senior Firefighter One, Firefighter Two, Senior Firefighter Two, Captain, and Senior Captain, in this progression, respectively.[5] Plaintiffs were classified by RTFC as salaried non-exempt employees.[6]

Prior to 2004, RTFC paid its firefighters a straight hourly rate for their first forty hours worked and time-and-a-half for any hours worked over forty.[7] In 2004, RTFC decided to implement the FWW method of payment and change how it had customarily paid its firefighters.[8] On January 1, 2012, RTFC changed back to paying overtime hours at the default time-and-a-half rate.[9] Thus, the "claim period" or "relevant window of recovery" began on September 9, 2008 and ended on December 31, 2011.

Plaintiffs were typically scheduled to work a minimum of forty-eight hours one week and seventy-two hours the following week.[10] RTFC utilized a seven-day work cycle beginning and ending on Sunday at 0700.[11] "Regular rate of pay" is the employees' total earnings from the employer attributable to a particular workweek divided by the number of hours worked by the employees in the workweek. *Walling v. Youngerman-Reynolds Hardware Co.*, 325 U.S. 419, 424-5 (1945). "Time and a half" is one hundred fifty percent (150%) of the employee's regular rate of pay. "Half-time" is fifty

---

[4] *Id.*
[5] Ex. 2.
[6] *Id.*; Ex. 3, at p. 21, ln. 17—p. 22, ln. 2.
[7] Ex. 4, at p. 13, ln. 9—p. 14, ln. 23.
[8] Ex. 3, at p.11, ln.19—p.12 ln. 6.
[9] Ex. 3, at p. 12, ln. 7—p. 13 ln. 4.
[10] Ex. 4, at p. 56, lns. 9—17; *see also* Ex. 1 at p. 24.
[11] Ex. 1, at p. 23.

percent (50%) of the employee's regular rate of pay.[12] RTFC defines "scheduled overtime" as work in excess of forty hours per workweek that is announced in advance and part of the employee's assigned shift.[13]

## B. THE FLUCTUATING WORKWEEK UNDER 29 C.F.R. § 778.114

(1)     How the FWW Works.

The general rule is that employers are required to pay time-and-a-half to non-exempt employees for any work performed over forty hours in a workweek. 29 U.S.C. § 207(a). One very narrow exception is the FWW, known to many workers as "Chinese Overtime" because the system typically pays employees less money per hour the more hours they work. *See Ayers v. SGS Control Servs., Inc.*, 2007 WL 646326, at *2 (S.D.N.Y. Feb. 27, 2007) (discussing, among other things, the FWW being called "Chinese Overtime"). When applied properly, it can be a permissible alternative to the traditional method of overtime compensation.[14]

Under the FWW, the employee must receive a fixed salary as compensation for all hours worked by the employee in a given work week, whether above or below forty hours, as well as an additional overtime premium for each overtime hour. 29 C.F.R. §778.114(a). When applied properly, the employee's "regular rate" for FLSA purposes is calculated anew each week by dividing the actual number of hours worked that week into the salary amount. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001); *Yadav v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206, 1207 (5th Cir. 1976). This calculation produces a straight-time hourly rate, which is then multiplied by fifty percent (50%) to

---

[12] Ex. 3, at p. 72, ln. 20—p. 73, ln. 4.

[13] Ex. 1, at p. 23.

[14] Notably, several states have outlawed the FWW under their state's labor laws. *See, e.g., N.M. Dep't of Labor v. Echostar Communications Corp.,* 134 P.3d 780, 784-85 (N.M. Ct. App. 2006); *Janes v. Otis Engineering Corp.,* 757 P.2d 50, 53 (Alaska 1988); *Skyline Homes, Inc. v. Department of Industrial Relations,* 211 Cal. Rptr. 792, 798 (Cal. Ct. App. 1985); *Foster v. Kraft Foods Global, Inc.,* W.D. Pennsylvania 2012 U.S. Dist. LEXIS 121282 (W.D. Pa. Aug. 27, 2012).

produce the overtime rate that must be paid for every hour worked beyond forty during that workweek. *Samson*, 242 F.3d at 633; *O'Brien v. Town of Agawam*, 350 F.3d 279, 287 (1st Cir. 2003).

In this case, RTFC elected not to calculate its overtime rate using this formula. Rather, RTFC utilized a fixed hourly rate that was equal to or exceeded the required minimum half-time rate. Nonetheless, RTFC failed to follow the strict guidelines of 29 C.F.R. § 788.114, a necessary prerequisite to application of the FWW, and therefore is in violation of the FLSA.

    (2)    <u>To Utilize the FWW, the Employer Must Follow the Strict Guidelines Set Forth in 29 C.F.R. § 778.114</u>.

Because implementing the FWW method creates incentives directly opposite to those Congress intended in establishing the overtime requirement (financial incentives to reduce overtime hours and spread employment),[15] federal courts consistently hold that the requirements of 29 C.F.R. § 778.114 are ***independent prerequisites*** to proper application of the fluctuating workweek. *See, e.g., Town of Agawam*, 350 F.3d at 288; *Davis v. Friendly Exp., Inc.*, 61 Fed. Appx. 671, 2003 WL 21488682, at *1 (11th Cir. 2003); *Griffin v. Wake County*, 142 F.3d 712, 715 (4th Cir. 1998). These requirements are:

    (1)    Plaintiffs' hours fluctuated from week to week;

    (2)    Plaintiffs received a fixed salary that did not vary with the number of hours worked during the week (excluding overtime premiums);

    (3)    The fixed amount received by Plaintiffs provided compensation every week at a regular rate that is at least equal to the minimum wage; and,

    (4)    RTFC and Plaintiffs shared a "clear and mutual understanding" that RTFC would pay that fixed salary regardless of the number of hours worked.

29 C.F.R. § 778.114(a). Importantly, each prerequisite must be satisfied to comply with the FLSA's FWW method of payment. If one element fails, then the employer is in violation of the FLSA and

---

[15] The Act was intended to tackle the twin evils of "overwork" and "underpay". *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578, 62 S.Ct. 1216, 86 L. Ed. 1682 (1942).

owes back pay to the employees at a rate of time-and-a-half per hour of overtime worked in a single workweek.

As a matter of law, RTFC failed to satisfy the first, second, and fourth requirements of 29 C.F.R. § 778.114. Consequently, this Court must grant summary judgment in favor of the Plaintiffs on liability.

## C. RTFC's APPLICATION OF THE FWW

During the claim period — as Plaintiffs' payroll worksheets reflect — RTFC's semi-monthly payments consisted of several different and confusing categories of arbitrary payments. These payments included:

(1)     salary and compensation for scheduled overtime;

(2)     compensation for callouts and lump sum reporting pay bonuses; and

(3)     compensation for additional time worked ("ATW").[16]

Each of these methods/payments violates the prerequisites set forth in 29 C.F.R. § 778.114 (a).

(1)     "Salary" and Scheduled Overtime Paid to Plaintiffs.

First, Plaintiffs were paid a semi-monthly "salary" to cover their scheduled shift work in a two-week period.[17] Plaintiffs were then paid at a half-time rate for scheduled overtime hours.[18] The half-time rate was a calculation that was directly tied to the Plaintiffs' so-called "salary."[19] It was a fixed hourly rate[20] and did not follow the perscribed formula to calculate a half-time rate using the FWW. *See, e.g., O'Brien v. Town of Agawam,* 350 F.3d 279 (1st Cir. 2003). Furthermore, the "salary" and scheduled overtime compensation generally did not change in the Plaintiffs' semi-monthly paychecks because it reflected payment for the scheduled shift work and scheduled overtime for a

---

[16] RTFC defines "ATW" as additional time worked. This means time worked outside of an employee's scheduled shift that does not qualify as callout time. Ex. 3, at p. 74, ln. 6—p. 75, ln. 15.
[17] Ex. 4, at p.21, ln. 12–p.24, ln.23.
[18] *Id.* at p. 52, lns. 15–23.
[19] *Id.* at p. 24, lns. 12–23.
[20] Ex. 5.

two-week period.[21] That is, these forms of payment compensated Plaintiffs for a set number of hours that they always worked week in and week out, which were typically forty-eight hours in one week and seventy-two hours in the next.

    (2)    <u>Callout Pay and Reporting Pay Bonuses.</u>

Another form of payment was "callout pay" and "reporting pay bonuses."

### i.    *Callout Pay*

During normal off-duty hours, Plaintiffs were required to be "on-call" for incidents that could potentially arise wherein the services of the RTFC firefighters were needed, unless granted "out of service" status.[22] When Plaintiffs were actually called to a scene, it was termed a "callout."[23] When responding to a "callout," in addition to their "salaries," RTFC paid Plaintiffs additional compensation at their rank-specific callout rate as long as the job lasted, so long as the work was outside the scheduled shift for the employee. "Callout pay" ceased if the callout job overlapped into an employee's scheduled shift.[24] RTFC determined this compensation based on an arbitrary budget decision, not a calculation based off the Plaintiffs' hourly rate.[25]

### ii.    *Reporting Pay Bonuses*

If Plaintiffs responded to a "callout" by reporting for duty within the allotted thirty-minute (or forty-five minute) window, RTFC paid Plaintiffs a lump sum reporting pay bonus of $50.00.[26]

---

[21] Ex. 3, at p. 57, ln. 19—p. 58, ln. 16.
[22] "On-call" status is defined as RTFC firefighting personnel who are prepared to be recalled from their homes or other personal activities in response to various situations that arise due to the nature of the services provided by RTFC. (Ex. 1, at p. 29).
[23] "Callout" is defined as the actual act of the RTFC firefighting personnel being recalled from their homes or other personal activities in response to various situations that arise due to the nature of the service provided by RTFC. (Ex. 3, at p. 77, ln. 21—p. 78, ln. 6).
[24] Ex. 4, p. 72, lns. 9—18
[25] Ex. 3, at p. 74, ln 23—p. 75, ln. 15.
[26] Ex. 4, at p. 66, ln. 17—p. 68, ln. 23.

However, if a firefighter did not respond within the required reporting window, he or she would not receive the $50.00 and was only paid for hours actually worked.[27]

    (3)    <u>Additional Time Worked ("ATW").</u>

RTFC defines "ATW" as additional time worked. ATW is time worked outside of an employee's scheduled shift that does not qualify as callout time.[28] Like callout pay, RTFC determined the ATW rate using a budgetary process versus calculating it from Plaintiffs' hourly rate. Payment for ATW caused Plaintiffs' compensation to vary.[29] For example, if two different firefighters were paid the same annual salary, their compensation would differ depending on the amount of hours each one worked.[30] The firefighter who worked more ATW would make more money than the firefighter who worked less ATW hours.

**IV.**
**<u>ARGUMENT AND AUTHORITIES</u>**

**A.**    **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper in a case in which there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A plaintiff moving for summary judgment satisfies its burden by submitting summary judgment proof that establishes all elements of its claim as a matter of law. *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).

An employee suing under the FLSA carries the burden of proving all elements of his or her claim. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001). The employer, however, bears the burden of demonstrating the applicability of any exemption under the FLSA. *Id.* The FWW method of payment is simply one method of complying with the overtime payment

---

[27] *Id.*
[28] Ex. 3, at p. 74, ln. 6—p. 75, ln. 15.
[29] *Id.* at p. 57, ln. 19—p. 58, ln. 7.
[30] Ex. 4, at p. 33, lns. 10—22.

requirements of 29 U.S.C. § 207(a)(1) – it is not an exemption to it. Plaintiffs therefore have the burden of proof under 29 C.F.R. § 778.114. *Id.* at 636

**B. RTFC IMPROPERLY ADMINISTERED THE FWW BECAUSE IT FAILED TO COMPLY WITH THE PREREQUISITES OF 29 C.F.R. § 778.114.**

RTFC failed to comply with the first, second, and fourth prerequisites; each of which alone is enough to preclude application of the FWW.

(1)  <u>Second Requirement Was Not Met Because Plaintiffs Were Not Paid A "Fixed Salary."</u>

The FWW requires each employee to be paid a "fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many". 29 C.F.R. § 778.114(a); *O'Brien v. Town of Agawam*, 350 F.3d 279, 288 (1st Cir. 2003). In other words, regardless of the number of hours worked in a particular week, the employee's "straight-time pay" cannot change. *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326, *9 (S.D.N.Y. 2007). The FWW further prohibits the payment of non-overtime bonuses and other work-related pay incentives.[31] *See also Overnight Transportation Co. v. Missel*, 316 U.S. 572 (1942).

*i.  Additional payments are incompatible with the FWW and section 778.114.*

In addition to the purported "salaries" and overtime for Plaintiffs' shift work, RTFC paid a number of additional payments—ATW, callout pay, and lump sum reporting pay bonuses.[32] This compensation was tied directly to the number of hours worked or specific days worked in direct contravention of the FWW's requirements set forth in 29 C.F.R. § 778.114. Several federal court decisions support Plaintiff's position that these forms of payment contravene the section 778.114:

o  *O'Brien v. Town of Agawam,* 350 F.3d 279, 288 (1st Cir. 2003) (holding that a ten-dollar night-shift increase precluded application of the FWW);

---

[31] For example, *see* Fluctuating Workweek Method of Computing Overtime Under 29 C.F.R. 778.114, 76 FED. REG. 18832, 18848 (April 5, 2011) (to be codified at 29 C.F.R. pt. 778); *see also Overnight Transportation Co. v. Missel*, 316 U.S. 572 (1942).
[32] *See, e.g.*, Plaintiffs' payroll worksheets attached to their affidavits (Exs. 6 through 13).

- *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326 (S.D.N.Y. 2007) (holding "any Plaintiff who received sea pay or day-off pay did not have fixed weekly straight time pay, in violation of 29 C.F.R. § 778.14(a)");

- *Dooley v. Liberty Mutual Insurance Company*, 369 F.Supp.2d 81, 86 (D. Mass. 2005) (holding that payment of a premium rate for weekend work precludes application of the FWW);

- *Adeva v. Intertek USA, Inc.*, No. 09-1096, 2010 WL 97991 (D.N.J. Jan. 11, 2010) (holding that shift premiums and holiday pay preclude application of the FWW); and

- *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 WL 1644066 (D.N.J. April 22, 2010) (holding that the use of day off and holiday pay results in the absence of the "fixed salary" required by 29 C.F.R. § 778.114(a)).

Beginning with the First Circuit's *Town of Agawam* decision, federal courts began to clarify the requirements for use of the FWW. Specifically, courts focused on the language in 29 C.F.R. § 778.114 which said "[t]he regular rate of the employee [on FWW] will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." Additional compensation paid to employees would have to be included in the total compensation in determining the regular rate, which this line of cases hold is inconsistent with the regulatory requirement that the regular rate be determined by dividing the salary by the total hours, not the salary ***plus additional compensation*** by the total hours.

In light of these cases, on April 5, 2011, the United States Department of Labor, Wage and Hour Division ("DOL") published certain comments in the Federal Register clarifying that an employer's payment of certain bonuses and other premium payments is incompatible with the FWW method of payment. Among these comments was the following:

> While the Department continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime under section 778.114.

76 FED.REG. 18832, 18849, April 5, 2011.

Here, all of the time worked by Plaintiffs in this case was taken into consideration when their bi-monthly pay was determined. The Seventh Circuit in *Heder* explained that such a payment scheme directly contradicts the premise and utility of the FWW – "[e]very extra hour is calculated and paid for. That is incompatible with treating the base wage as covering any number of hours as straight time." *Heder v. City of Two Rivers*, 295 F.3d 777, 780 (7th Cir. 2002); *see also Soderberg v. Naturescape, Inc.,* Civil Action No. 10-3429 (D. Minn. Nov. 3, 2011). Very recently, the Honorable Judge Nancy Atlas agreed with *Soderberg* and explained that additional pay based on the number of hours worked by an employee "would be inconsistent with the FWW method." *Switzer v. Wachovia Corp.*, 2012 WL 3685978, * 3 (S.D. Tex. August 24, 2012) (Atlas, J.) (emphasis added). Further, the United States Supreme Court has specifically held that such differentials, when paid, are part of the worker's regular rate of pay and cannot be treated as bonuses or premium pay. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 468-69 (1948).

In addition to the payments described above, Plaintiffs received $50.00 reporting pay bonuses that are also clearly impermissible because, put plainly, they are lump sums of money that did not depend upon hours worked. Therefore, those payments similarly do not qualify as permissible overtime premium payments. *Ayers*, 2007 WL at *9-10; 29 U.S.C. § 207(e).[33] The DOL regulations on lump sum payments confirm Plaintiffs' position:

> A premium in the form of a lump sum which is paid for work performed during overtime hours without regard to the number of overtime hours worked ***does not qualify as an overtime premium*** even though the amount of money may be equal to or greater than the sum owed on a per hour basis.

29 C.F.R. § 778.310 (emphasis added).

---

[33] *See also* Plaintiffs' Payroll Worksheets attached as Exhibit 14. Plaintiffs' payroll worksheets are from a sample of Plaintiffs intended to reflect the pattern of payment to all of the Plaintiffs in the lawsuit.

Thus, under the enforcement position of the DOL, as well as *Town of Agawam* and its progeny, RTFC's additional payments "are incompatible with the fluctuating workweek method of computing overtime under section 778.114" and violates the FLSA.

### ii.    *Additional payments were not overtime premium payments.*

Despite substantial authority against it, RTFC will likely argue that these additional payments are to be considered premium payments under the FLSA. In rejecting a similar argument, the First Circuit held that an employer's "premium payment" or "additional time worked" labels do not control. *Town of Agawam*, 350 F.3d at 288. Indeed, "[o]nce the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." *Walling v. Youngerman-Reynolds Hardwood Co.* 325 U.S. 419, 424-25, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945).

Further, as noted in 29 C.F.R. § 778.108, an employee's regular rate of pay must include all compensation for employment, not just the base rate. Only the types of payments identified in 29 U.S.C. § 207(e) may be excluded. To exclude ATW, callout pay, reporting pay bonus, and to claim that such payments are not just more straight-time pay, the only argument RTFC can make is that such payments are overtime premiums greater than what is due under the FLSA. That is, RTFC must argue that these "premium" payments qualify under 29 U.S.C. § 207(e)(5), (6), or (7), which exclude from the regular rate the following:

> (5)  Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be;
>
> (6)  Extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less

than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days; or

(7) Extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, of work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a)), where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek…

RTFC's additional payments do not fit into any of these categories. Therefore, the additional payments made to Plaintiffs invalidate RTFC's attempt to use the FWW.

Payroll Worksheets for the Plaintiffs are attached as Exhibit 1 to Exhibits 6 – 13 and demonstrate RTFC's inability to establish the additional payments as "overtime premiums." First, 29 U.S.C. § 207(e)(6) cannot apply to RTFC's ATW and callout pay because, as the Payroll Worksheets demonstrate, such payments were not paid for working on any designated day such as a Saturday, Sunday, or holiday. Plaintiffs were regularly scheduled to work on these days during their normal shift work, and they did not receive any additional pay. Next, as the Payroll Worksheets demonstrate, section 207(e)(7) does not apply since the payment of ATW and callout pay is not connected with working outside any "normal" hours less than or equal to eight hours per day, or any "normal" hours less than or equal to forty hours per workweek.

Furthermore, both sections 207(e)(6) and (7) require that premium payments must be "no less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days". 29 U.S.C. § 207(e)(6)-(7). RTFC's rates for ATW and callouts did not meet this requirement. For example, Plaintiff Neri Garcia's payroll worksheets from January 1, 2011 through July 31, 2011 reflect that he made approximately $20.23 per hour, yet he was paid ATW at a rate of $18.58. RTFC even admits that the ATW and callout rates are arbitrary rates

derived through their budgetary process and have no relation to Plaintiffs' regular rate.[34] Thus, it is not a "premium payment" under 29 U.S.C. 207(e)(6) and (7).

Finally, 29 U.S.C. 207(e)(5), does not save RTFC either because ATW payments—regardless of their amount—cannot be considered "overtime premiums" under the applicable law. Section 207(e)(5) excludes overtime premium payments from the regular rate if they are paid for working either (a) over eight hours in a day or (b) forty hours in a workweek, or for working more than the employee's normal working hours or regular working hours. As the Payroll Worksheets show, ATW was frequently paid on days when no other hours were worked, and even in amounts below one hour. ATW was also paid regardless of the number of hours worked by the Plaintiffs in a workweek. For illustration, Exhibit 15 is a compilation of examples of ATW being earned by a sample group of Plaintiffs in weeks where they did not work forty hours.[35] For purposes of the FLSA, all hours worked under the statutory maximum are non-overtime labor. 29 C.F.R. § 778.101. Thus, ATW cannot be considered an "overtime premium rate" as that term is defined in 29 U.S.C. § 207(e)(5). Similarly, Exhibit 16 is a compilation of examples of ATW payments that were actually earned within the first forty hours of a sample group of Plaintiffs' workweek even though the workweek included more than forty hours.  Again, because these hours worked were not actually "true" overtime pursuant to the FLSA, they do not fit within the statutory definition of premium payments and therefore run afoul of 29 C.F.R. § 778.114. Accordingly, these additional payments do not meet the standards set forth in 29 U.S.C. § 207(e)(5), (6), or (7).

If section 778.114(a) merely required that employees received a minimum salary every week that could be increased by bonuses like ATW, callout pay, or lump sum reporting pay bonuses, then RTFC's likely argument that the FWW applied would make some sense. The regulation, however,

---

[34] Ex. 3, at p. 74, ln. 6—p. 75, ln. 15; Ex. 4, at p. 24, ln. 24—p.25, ln. 18.
[35] Attached with Exhibits 15 and 16 for the Court's ease of reference are calendars for years 2008-2012.  As mentioned before, Plaintiffs' workweek began and ended on Sunday at 0700.

does not contain any such language. Notably, in 2008, the DOL proposed certain regulations that would have amended 29 C.F.R. § 778.114 to permit such payments of non-overtime bonuses and incentives "without invalidating the guaranteed salary criterion required for the half-time overtime pay compensation."[36] The DOL, however, left out this proposed change from the final rules, concluding that "***unless such payments are overtime premiums***, they are incompatible with the fluctuating workweek method of computing overtime."[37] Explaining the decision not to amend the FWW regulation, the DOL stated that "several commenters…noted that the proposal would permit employers to reduce employees' fixed weekly salaries and shift the bulk of the employees' wages to bonus and premium pay" in direct contrast to the FLSA's intent.[38]

All extra payments for hours worked in various capacities other than a firehouse shift are not overtime premiums—no matter how large—and no matter if they are larger than the Plaintiffs' constant half-time under RTFC's flawed constant half-time FWW scheme. Since these additional payments are not overtime premiums as established in the previous section, they are simply additional straight-time hours that must be included in Plaintiffs' regular rate of pay. Accordingly, RTFC's attempt at the FWW clearly violates the FLSA as such premiums and bonuses run afoul of the "fixed salary" requirement in 29 C.F.R. § 778.14(a).

### iii. Further, RTFC's disciplinary policy of suspension without pay also violates the second prerequisite of a "fixed salary."

In addition to impermissibly shifting the bulk of Plaintiffs' wages to "bonus and premium pay," RTFC also caused Plaintiffs' so-called "fixed salary" to vary when RTFC disciplined Plaintiffs by suspending them without pay. For example, Plaintiffs were suspended without pay for infractions such as scratching a fire truck and/or inadvertently allowing their HAZMAT license/endorsement

---

[36] Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.14, 73 Fed. Reg. 43654, 43663 (proposed July 28, 2008) (to be codified at 29 CFR pt. 778).

[37] Fluctuating Workweek Method of Computing Overtime Under 29 CFR 778.14, 76 Fed. Reg. 18832, 18848 (April 5, 2011) (to be codified at 29 C.F.R. pt. 778) (emphasis added).

[38] *Id.*

to expire.[39] The DOL has expressed that only in limited circumstances are disciplinary salary deductions permissible, stating "it is the longstanding position of the Wage and Hour Division that an employer utilizing the fluctuating workweek method of payment may not make deductions from an employee's salary for absences occasioned by the employee," unless the deductions are of a non-routine disciplinary nature "for willful absences or tardiness or for infractions of major work rules."[40] Plaintiffs' infractions do not fall within the category of permissible disciplinary deductions, thus, RTFC was in violation of the FLSA and section 778.114(a)'s second prerequisite when it deducted payment from Plaintiffs' so-called "fixed salary".

      (2)    <u>Plaintiffs' hours never actually fluctuated as contemplated under the FWW and thus RTFC did not comply with the first prerequisite.</u>

After providing the specific requirements for a contract based upon a fluctuating rate, section 778.114 warns that "typically, such salaries are paid to employees who do not customarily work a regular schedule of hours" and are "in amounts agreed on by the parties as adequate straight-time compensation for long work weeks as well as short ones." 29 C.F.R. § 778.114(c). Courts have elected not to apply the FWW in situations where employees never have a shortfall of time in one pay period so as to make up for longer work in another pay period. *See, e.g., Heder v. City of Two Rivers*, 295 F.3d 777, 780 (7th Cir. 2002). Indeed, "for a fluctuating work week arrangement to make sense to both parties, employees should offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty weeks. Otherwise, employees have not bargained for anything but decreasing marginal pay as they work longer and longer hours at work." *Hasan v. GPM Investments, LLC*, 2012 WL 3725693, at *4 (D. Conn. August 27, 2012). Such is the case here.

---

[39] Ex. 17.
[40] DOL Opinion Letter, 1999 WL 1002415 (May 28, 1999) (the example given being an employee sent home from work because of drunkenness); DOL Opinion Letter, 2006 WL 1488849 (May 12, 2006).

In *Hasan*, a Connecticut District Court closely examined relevant case law and the DOL's guidelines regarding the FWW method in determining whether the payment scheme could be used as a formula for calculating damages. Plaintiffs in that case were store managers in convenience stores and gas stations and were expected to work a minimum of fifty-two (52) hours per week while some weeks could approach 100 hours of work. *Id.* In ruling that the employer in *Hasan* failed to meet the "fluctuating hours" criterion, the Court noted: "[t]his variance, between weeks with a moderate amount of overtime hours, and weeks where a majority of hours worked exceeded the 40 hour threshold, is not the same as the up and down fluctuation contemplated by the DOL and the Court in *Missel*."[41]

Here, Plaintiffs' hours fluctuated in a similar manner as the *Hasan* plaintiffs. Plaintiffs routinely worked twelve and twenty-four hour shifts multiple times per workweek. As a result, they worked a minimum of forty-eight hours in one week and seventy-two hours the next week. This was just their scheduled shift hours and did not include any ATW or callout hours worked. To the extent there was any fluctuation, it was due to Plaintiffs' hours ranging from forty-eight hours per week to upwards of 100 hours per week at certain times throughout the claim period.[42] As the Court explained in *Hasan*, this is no bargain. It is simply RTFC requiring its employees to work for "decreasing marginal pay as they work longer and longer hours at work." 2012 WL 3725693, at *4.

(3) No "clear and mutual understanding" was shared and therefore the fourth prerequisite is not met.

The fourth prerequisite of section 778.114(a) states that "the employer and employee must share a 'clear and mutual understanding' that the employer will pay that fixed salary regardless of the number of hours worked." 29 C.F.R. § 778.114(a)(4). The attached affidavits and deposition

---

[41] *Missel* refers to *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), wherein the United States Supreme Court allowed a trucking company to pay a fixed salary to a rate clerk who worked varying hours, sometimes clocking long hours logging shipments in busy seasons, and working far fewer hours during lulls.

[42] *See, e.g.,* Ex. 8; Payroll worksheets RTFC 85532 and RTFC 85533 which reflect that Plaintiff Lopez worked 100.25 hours the week of November 30, 2008 through December 6, 2008.

testimony plainly show that Plaintiffs had at the very most a general idea of how they were paid, but the requisite "clear and mutual understanding" that they would receive straight-time compensation for all hours worked, whether few or many, was absent.[43]

While Plaintiffs acknowledged and signed notices of the FWW payment method, there was not a "clear and mutual understanding" that RTFC would pay the purported "fixed salary" regardless of the number of hours worked, whether few or many. Rather, Plaintiffs signed the notice without understanding what they were signing and in most cases out of fear of retaliation due to RTFC's rigid paramilitary structure that discouraged questioning of upper management and its decision-making. *Id.* As established above, prior to RTFC implementing the FWW in 2004, RTFC paid its firefighters an hourly rate and time and a half for any hours worked over forty in a workweek. Plaintiffs were familiar with this payment method because it was straight-forward and simple. When RTFC went to the FWW in 2004, Plaintiffs were handed a sheet of paper explaining that they would be paid a "fixed salary" for all hours worked and that they were entitled to additional half-time pay for any hours worked above forty in a workweek.[44] In theory, RTFC attempted to legitimize its payment scheme and make it seem straight-forward, but in reality, it practiced a very different method of payment, which confused and bewildered Plaintiffs then and to this day.[45] RTFC's various rates of payment for different types of work was anything but clear. In

---

[43] *See* Exs. 6-13; *see also* Depositions of Plaintiffs attached hereto as Exhibits 18-25 and incorporated herein by reference. (Ex. 18, at p. 97, ln. 19–p. 98, ln. 13, p. 101, ln. 22–p. 102, ln. 15) (Ex. 19, at p. 21, lns. 11–24, p. 24, ln. 20–pg. 25, ln. 7, p. 130, ln. 25–p. 134, ln. 11) (Ex. 20, at p. 48, ln. 19–p. 49, ln. 22, p. 57, ln. 25–p. 58, ln. 13) (Ex. 21, at p. 36, ln. 23–p. 40, ln. 11, p. 77, ln. 4–p. 78, ln. 11) (Ex. 22, at p. 100, ln. 4–p. 101, ln. 18) (Ex. 23, at p. 109, lns. 6–11, p. 110, ln. 1–p. 111, ln. 8; p. 136, ln 19–p. 137, ln. 16) (Ex. 24, at p. 45, ln. 10–p. 46, ln. 4, p. 50, ln. 1–p. 51, ln. 12, p. 53, ln. 11–p. 55, ln. 15, p. 89, ln. 12–p. 91, ln. 2) (Ex. 25, at p. 27, ln. 2–p. 28, ln. 6, p. 125, ln. 4–23).

[44] *See* Ex. 5; Exs. 6-13.

[45] *See* Exs. 6-13; *see also* Depositions of Plaintiffs attached hereto as Exhibits 18-25 and incorporated herein by reference. (Ex. 18, at p. 97, ln. 19–p. 98, ln. 13, p. 101, ln. 22–p. 102, ln. 15) (Ex. 19, at p. 21, lns. 11–24, p. 24, ln. 20–pg. 25, ln. 7, p. 130, ln. 25–p. 134, ln. 11) (Ex. 20, at p. 48, ln. 19–p. 49, ln. 22, p. 57, ln. 25–p. 58, ln. 13) (Ex. 21, at p. 36, ln. 23–p. 40, ln. 11, p. 77, ln. 4–p. 78, ln. 11) (Ex. 22, at p. 100, ln. 4–p. 101, ln. 18) (Ex. 23, at p. 109, lns. 6–11, p. 110, ln. 1–p. 111, ln. 8; p. 136, ln 19–p. 137, ln. 16) (Ex. 24, at p. 45, ln. 10–p. 46,

fact, Plaintiffs were (and always have been) under the impression that they were paid hourly, not on a "fixed salary" basis.[46] Plaintiffs were completely dependent upon the sophistication of RTFC and its attorneys for explanations and instructions on their pay and they never felt that they were ever given a legitimate explanation as to how they were paid.[47]

It is important to note that not only did RTFC's notice fail to educate its employees as to the basic calculation of how they were to be paid, but it was also completely devoid of any instruction as to how ATW, S-ATW, callout pay, reporting pay bonuses, and holiday pay were calculated or how these various arbitrary payments constituted a "fixed salary" for all hours worked, whether few or many.[48] Thus, there was never a "clear and mutual understanding" with Plaintiffs as to how they were to be paid according to an alleged FWW.

Even if this Court initially finds RTFC adequately informed Plaintiffs of the FWW based on the notice, RTFC paid Plaintiffs impermissible non-overtime bonuses and failed to pay Plaintiffs straight-time for all hours worked, whether few or many. Further, RTFC made impermissible deductions in their so-called "salaries." As such, these FWW violations have removed the basis for any "clear and mutual understanding" regarding Plaintiffs' fixed salary. *Town of Agawam*, 350 F.3d at 290 (finding that there is no "clear and mutual understanding" where the "method of calculating overtime is premised on assumptions inconsistent with § 778.114"). Similarly, in *McCumber v. Eye Care Ctr. Of Am., Inc.*, 2011 WL 1542671 (M.D. La. Apr. 20, 2011), the court ruled in favor of the

---

ln. 4, p. 50, ln. 1–p. 51, ln. 12, p. 53, ln. 11–p. 55, ln. 15, p. 89, ln. 12–p. 91, ln. 2) (Ex. 25, at p. 27, ln. 2–p. 28, ln. 6, p. 125, ln. 4–23).

[46] *See* Exs. 6-13.

[47] (Ex. 19, at p. 24, ln. 14–p. 25, ln. 7, p. 130, ln. 25—p. 134, ln. 11) (Ex. 21, at p. 36, ln. 23—p. 40, ln. 11) (Ex. 22, at p. 125, ln. 16—p.126, ln. 24) (Ex. 23, at p. 109, lns. 6—11, p. 110, lns. 1—18) (Ex. 24, at p. 89, ln. 12—p. 91, ln. 2; Ex. 25, at p. 27, ln. 2—p. 28, ln. 6).

[48] Ex. 5; Exs. 6-13; Exs. 18-25; (Ex. 18, at p. 97, ln. 19–p. 98, ln. 13, p. 101, ln. 22–p. 102, ln. 15) (Ex. 19, at p. 21, lns. 11–24, p. 24, ln. 20–pg. 25, ln. 7, p. 130, ln. 25–p. 134, ln. 11) (Ex. 20, at p. 48, ln. 19–p. 49, ln. 22, p. 57, ln. 25–p. 58, ln. 13) (Ex. 21, at p. 36, ln. 23–p. 40, ln. 11, p. 77, ln. 4–p. 78, ln. 11) (Ex. 22, at p. 100, ln. 4– p. 101, ln. 18) (Ex. 23, at p. 109, lns. 6–11, p. 110, ln. 1–p. 111, ln. 8; p. 136, ln 19–p. 137, ln. 16) (Ex. 24, at p. 45, ln. 10–p. 46, ln. 4, p. 50, ln. 1–p. 51, ln. 12, p. 53, ln. 11–p. 55, ln. 15, p. 89, ln. 12–p. 91, ln. 2) (Ex. 25, at p. 27, ln. 2–p. 28, ln. 6, p. 125, ln. 4–23).

plaintiff who argued that the "clear and mutual understanding" requirement was not met because his fixed salary was reduced twice when he worked less than forty (40) hours in a week. The Court held that "no sincere argument may be made by defendants that its intention was to pay plaintiff a set salary regardless of the hours he worked in a given week, as required for the application of the FWW method." *Id.* at *12; *see also Brantley v. Inspectorate America Corp.*, 821 F. Supp.2d 879, 892-93 (S.D. Tex. 2011). Such is the case here as well and Plaintiffs respectfully request the Court follow the decisions in *McCumber* and *Town of Agawam*.

## V.
## CONCLUSION

Based on the evidence set forth above and the exhibits referenced herein, RTFC failed to comply with the prerequisites of section 778.114. Therefore, RTFC is in violation of the FLSA because it could not properly utilize the FWW. Plaintiffs respectfully request the Court grant Plaintiff's motion for summary judgment as to the inapplicability of the FWW.

Respectfully submitted,

_____/s/ Craig M. Sico_____
Craig M. Sico
Federal I.D. No. 13540
Texas Bar No. 18339850
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH, L.L.P
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Telephone: 361/653-3300
Facsimile: 361/653-3333

**ATTORNEY IN CHARGE FOR PLAINTIFFS**

OF COUNSEL:

Roger S. Braugh, Jr.
Federal I.D. No. 21326
Texas Bar No. 00796244
Clif Alexander
Federal I.D. No. 1138436
Texas Bar No. 24064805
Tara A. Hoelscher
Texas Bar No. 24012189
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH L.L.P
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Telephone: 361/653-3300
Facsimile: 361/653-3333

Jerry Guerra
Federal I.D. No. 18166
Texas Bar No. 00789326
HUERTA GUERRA BEAM, PLLC
924 Leopard Street
Corpus Christi, Texas 78401
Telephone: 361/884-1632
Facsimile: 361/884-7013

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of June, 2013, a true and correct copy of the above and foregoing document was served upon the following counsel of record via the Court's electronic filing system and/or Certified U.S. Mail, Return Receipt Requested, in accordance with the Federal Rules of Civil Procedure.

Keith B. Sieczkowski
BRANSCOMB | PC
802 North Carancahua, Suite 1900
Corpus Christi, Texas 78401

*Attorneys for Defendant Refinery Terminal Fire Company*

/s/ *Craig M. Sico*