IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE DALE MARTINEZ AND<br>FIDENCIO LOPEZ, JR.,<br>Individually and on behalf of<br>all others similarly situated;<br><br>*Plaintiffs*,<br><br>v.<br><br>REFINERY TERMINAL FIRE<br>COMPANY<br><br>*Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:11-cv-295 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO RTFC'S COUNTER MOTION FOR SUMMARY JUDGMENT ON THE MOTOR CARRIER ACT EXEMPTION**

Because the Plaintiffs were not engaged in interstate or foreign commerce at any time, and therefore not subject to the jurisdiction of the Secretary of Transportation, the Motor Carrier Act ("MCA") exemption does not apply. Accordingly, the Court should grant Plaintiffs' Motion for Summary Judgment on the Motor Carrier Act Exemption.

**I.
REPLY SUMMARY**

RTFC has a fundamental misunderstanding of the most important and basic requirement of the MCA exemption. That is, RTFC must be <u>engaged in interstate or foreign commerce</u> to apply the MCA exemption. RTFC relies exclusively on the argument that because the refineries it protects are located in a foreign trade zone ("FTZ"), RTFC is therefore engaged in foreign commerce.[1] At no point does RTFC provide this Court with any authority that physical presence alone within an FTZ

---
[1] D.E. 167 at p. 14 ("It is RTFC's position that it is engaged in foreign commerce under the MCA.").

qualifies as being engaged in interstate or foreign commerce. As a result, Plaintiffs are not exempt from overtime under 29 U.S.C. § 213(b)(1).

What is equally important for this Court to understand is the Fair Labor Standards Act ("FLSA") is a remedial statute and any exemption must be narrowly construed against the employer.[2] In *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945), the Supreme Court noted that:

> The Fair Labor Standards Act was designed to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work. Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of the statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.

*Id.* at 493. Because the MCA exemption is an affirmative defense, not only must it be narrowly construed against RTFC, but RTFC also bears the burden of "plainly and unmistakably" proving the Plaintiffs fall within the scope of the MCA exemption. *Id.*; *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). RTFC must therefore establish <u>beyond dispute</u> all of the required elements of the MCA exemption. *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (emphasis added). For the following reasons, RTFC as a matter of law is unable to meet its requisite burden.

## II.
## ARGUMENTS & AUTHORITIES

### A. THE MOTOR CARRIER ACT EXEMPTION

Congress enacted the Motor Carrier Act in 1935. *See United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 538-39 (1940) (discussing the purposes and policies of the MCA). In addition to

---

[2] The FLSA begins with the words: "The Congress hereby finds…the existence…of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers…" 29 U.S.C. § 202(a). Thus, the American belief: "A fair day's pay for a fair day's work" is at the very core of the FLSA's overtime pay provisions. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting from a speech given by President Franklin D. Roosevelt to Congress on May 24, 1934).

promoting transportation efficiency and economy, one of the integral goals of this legislation was "to ensure the safety of operations on the nation's roads and highways." *Mayan v. Rydbom Express, Inc.*, 2009 WL 3152136 at *4 (E.D. Pa. Sept. 30, 2009). Shortly after the enactment of the MCA, Congress passed the FLSA to ensure "certain minimum labor standards." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). To this end, the FLSA imposes a financial disincentive on employers seeking to make their employees work overly long hours. *See* 29 U.S.C. § 207(a)(1). The FLSA requires that employers provide their employees overtime compensation at a rate of one and one-half times the employee's regular rate if they work more than forty hours in any workweek. *Id.* This general rule, however, is subject to certain exceptions, including the MCA exemption at issue here. *See* 29 U.S.C. § 213(b)(1).

For the MCA exemption to apply, an employer [RTFC] must show that its employees [Plaintiffs] are subject to the jurisdiction of the Secretary of Transportation. To be subject to Department of Transportation ("DOT") jurisdiction, the Secretary of Transportation (the "Secretary") must be able to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49. *Id.* Significantly, that power extends <u>only</u> to those classes of employees who:

1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to DOT jurisdiction under Section 204 of the Motor Carrier Act; **and**

2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property **in interstate or foreign commerce within the meaning of the Motor Carrier Act**.

29 C.F.R. § 782.2(a) (emphasis added). To meet its burden of showing it is entitled to the MCA exemption, RTFC must meet both of the requirements above. However, RTFC is unable to satisfy either requirement.

1. <u>Plaintiffs were not subject to the DOT</u>.

RTFC claims the "undisputed evidence" proves that it was a motor private carrier pursuant to 49 U.S.C. § 13102(15) and therefore subject to DOT jurisdiction.[3] This is simply incorrect. To be subject to the Secretary of Transportation's jurisdiction and therefore exempt from overtime under the Motor Carrier Act, a motor carrier <u>must be engaged in interstate commerce</u>. *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010). The Fifth Circuit defines interstate commerce as "the actual transport of goods across state lines <u>or</u> the intrastate transport of goods in the flow of interstate commerce." *Songer*, 618 F.3d at 472 (*citing Siller v. L & F Distributors, Ltd.*, 1997 WL 114907, at *1 (5th Cir. 1997) (per curiam) and (*Merchant's Fast Motor Lines, Inc. v. ICC*, 528 F.2d 1042, 1044 (5th Cir. 1976) (emphasis added).

(a) <u>*RTFC did not transport passengers or property across state lines*</u>.

RTFC has absolutely no evidence that it ever transported passengers, property, or both, <u>by commercial motor vehicle</u> (*i.e.*, vehicles weighing 10,001 pounds or more) across state lines.[4] Because the Plaintiffs did not transport passengers or property in interstate (or foreign) commerce, the Secretary simply does not possess the power to regulate the Plaintiffs in this case and the MCA exemption does not apply.

(b) <u>*RTFC did not transport goods intrastate while in the flow of interstate commerce*</u>.

There is no dispute that the <u>intrastate</u> transportation of a product may remain "interstate" in character <u>if</u> it forms a part of a practical continuity of movement across state lines from the point of origin to the point of destination. *Merchant's Fast*, 528 F.2d at 1044 (emphasis added). However, RTFC has not provided this Court with any evidence that it was transporting goods inside the State of Texas while in the flow of interstate commerce. RTFC is therefore unable to meet the first requirement of the MCA exemption and the Court's analysis should stop here. However, and out of

---

[3] D.E. 167 at p. 7.
[4] Swetish Depo.; p. 80, ln. 24—p. 81, lns. 1—15, attached hereto as Exhibit "A."

an abundance of caution, Plaintiffs provide this Court with the following analysis for completeness and clarity.

  2. <u>Plaintiffs never engaged in safety-related activities as a motor private carrier in interstate or foreign commerce</u>.

The second prong of the MCA exemption requires RTFC to show that Plaintiffs "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on public highways of passengers or property <u>in interstate or foreign commerce within the meaning of the Motor Carrier Act</u>." 29 C.F.R. § 782.2(a)(2) (emphasis added). Even if Plaintiffs were regularly called upon to drive fire trucks and other apparatus that weighed in excess of 10,000 pounds on public highways, that would not be enough to meet the requirements of the MCA exemption.[5] Likewise, even if Plaintiffs were charged with loading, helping, and inspecting these vehicles on a daily basis, that too would be insufficient for RTFC to qualify for the MCA exemption.

The missing link in this case is any evidence whatsoever that the Plaintiffs engaged in any of these activities <u>while in interstate or foreign commerce</u>. RTFC has produced approximately 71,000 pages of documents in response to Plaintiffs' MCA exemption-related discovery requests and attached approximately 200 pages of documents in the form of a declaration, deposition testimony, and invoices to its response and counter motion for summary judgment.[6] In all of this documentation, there is not one piece of evidence that RTFC can point to that satisfies its burden of proving to this Court that Plaintiffs were engaged in interstate or foreign commerce at any time.[7]

---

[5] The fact that Plaintiffs regularly drive on public highways that eventually cross state lines—such as Interstate 37—does not bring them within the jurisdiction of the Secretary of Transportation under section 31501 or 31502 of Title 49.
[6] D.E. 167.
[7] Correspondence from Brian T. Farrington to Plaintiffs' counsel dated July 2, 2013 and October 1, 2013, attached hereto as Exhibits "B" and "C," respectively.

Therefore, RTFC's argument that the Plaintiffs are exempt from overtime payment under the MCA exemption fails.

### (a) RTFC misstates the holding in Allen v. Coil Tubing Servs., L.L.C.

It is imperative this Court understand that RTFC completely misstates the holding in *Allen v. Coil Tubing Servs., L.L.C.*, 846 F.Supp.2d 678 (S.D. Tex. 2012) (Atlas, J.), and therefore its application to the facts in this case is inapposite. In its response and counter motion, RTFC makes the following statement:

> In *Coil Tubing*, the court considered the MCA application to oil well service vehicles that also carried tools, chemicals and associated equipment in interstate commerce. <u>Transport of such vehicles and equipment itself was sufficient to establish the transport of property in interstate commerce</u>.[8]

What RTFC fails to mention is there was no dispute between the parties in *Coil Tubing* that actual <u>interstate trips</u> were distributed throughout the year to the plaintiffs in that case. *Coil Tubing*, 846 F.Supp.2d at 702 ("There is no dispute in the case at bar that interstate trips were distributed generally throughout the year…"). Indeed, the employer in *Coil Tubing* presented evidence that a total of approximately 7% of all land projects and 11% of all offshore projects during the relevant time period required certain employees to drive across state lines. *Id.* at 703. Because of this specific evidence, Judge Nancy Atlas concluded that, objectively, there was a reasonable expectation that any of those employees could be assigned to drive interstate. *Id.* And for that reason, the MCA exemption was found to apply. In stark contrast, there is no such interstate (or foreign) activity in the case before this Court.

### (b) Plaintiffs did not have a "reasonable expectation" that they could be assigned to drive interstate.

The standard for applying the MCA exemption is not that there existed some remote possibility that a driver might be called upon to cross state lines. Rather, as Judge Atlas instructs, the

---

[8] D.E. 167 at p. 12 (emphasis added).

*Plaintiffs' Reply in Support of MSJ*          Page 6
*and Response to Counter Motion on the MCA Exemption*

pertinent inquiry is "whether an employer can establish that its employees could have been 'reasonably expected' to engage or be asked to engage in safety-affecting duties <u>in connection with interstate transport of property</u> 'in the ordinary course of his work,' at least 'from time to time.'" *Id.* at 702 (quoting *Songer*, 618 F.3d at 474); *see also* 29 C.F.R. § 782.2(b)(3). Therefore, the question is whether, <u>objectively</u>, there was a "reasonable expectation" that an interstate trip could be assigned to the Plaintiffs. Several federal court decisions provide guidance as to what is required in order to have a "reasonable expectation" which meets the "interstate" requirement of the MCA exemption:

- *Morris v. McComb*, 332 U.S. 422, 433-34 (1947) (full-time drivers who as a group spent approximately 4% of their time transporting goods in interstate commerce);

- *Barefoot v. Mid-America Dairymen, Inc.*, 16 F.3d 1216, 1994 WL 57686, at *3 (5th Cir. Feb. 18, 1994) (at least twenty trips were made across state lines to deliver unprocessed milk);

- *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 476 (5th Cir. 2010) (MCA exemption applied when the percentage of trips that involved interstate transport was approximately 2.75%);

- *Allen v. Coil Tubing Servs., L.L.C.*, 846 F.Supp2d 678, 703 (S.D. Tex. 2012) (Atlas, J.) (MCA exemption applied because there were interstate trips during each quarter during the relevant time period)

Beginning with the Supreme Court's decision in *Morris*, federal courts have concluded that there must be <u>at least some</u> interstate travel to satisfy the "reasonable expectation" component of the MCA exemption. The Department of Labor ("DOL") makes clear that <u>some actual participation</u> in interstate transportation is required.[9] Federal regulations similarly require some concrete evidence—<u>such as an actual trip in interstate commerce</u>—to fall under the DOT's jurisdiction. *Lucas v. NOYPI, Inc.*, 2012 WL 4754729, at *5 (S.D. Tex. Oct. 3, 2012) (Lake, J.) (*citing* 46 Fed. Reg. 37,902) (emphasis added).

---

[9] *See* 29 C.F.R. § 782.7(a) ("In order for the exemption to apply, their activities, so far as interstate commerce is concerned, must relate directly to the transportation of materials <u>moving in interstate or foreign commerce</u> within the meaning of the Motor Carrier Act.") (emphasis added).

As stated throughout, RTFC has not presented any evidence that <u>even one trip</u> was made across state (or national) lines while driving a vehicle weighing more than 10,000 pounds, the purpose of which was, in whole or in part, the transportation of passengers or property.[10] Without such evidence, RTFC's argument fails and the Plaintiffs cannot be found exempt from overtime under 29 U.S.C. § 213(b)(1).[11]

(c) *<u>Plaintiffs never transported property in interstate or foreign commerce</u>*.

In another futile attempt to satisfy its burden of engaging in interstate or foreign commerce, RTFC gives the following examples of goods that RTFC allegedly purchased and then transported into FTZ122 during the relevant time period:[12]

- o $18,000.00 spent on lights, sirens, speakers, brackets, tire, valves, firefighting foam, and other miscellaneous supplies; and
- o $20,000.00 in food and fuel transported into FTZ122 subzone 122I.[13]

Notwithstanding the above examples of goods that RTFC alleges it purchased and then transported into FTZ122, RTFC fails to provide any evidence—as it must—that this was done <u>while engaged in interstate or foreign commerce</u>. *See* 29 C.F.R. § 782.7(a). Rather, these goods were used and/or consumed by firefighters (and occasionally refinery workers) in the furtherance of RTFC's firefighting and emergency response duties.[14] At no time were these goods—or any others transported by RTFC—inserted into the stream of commerce. They were simply used for the benefit of RTFC and its employees.

Similarly, there is simply no authority to support RTFC's claims that these activities alone magically invoke the MCA exemption. What RTFC argues—albeit incorrectly—is that a foreign

---

[10] Ex. A; p. 80, ln. 24—p. 81, ln. 15.
[11] *See* 29 C.F.R. § 782.2(b)(3) ("Thus the activities of drivers, drivers' helpers, loaders or mechanics in connection with transportation which is not in interstate or foreign commerce within the meaning of the Motor Carrier Act provides no basis for exemption under section 13(b)(1) of the Fair Labor Standards Act.").
[12] September 9, 2008 through December 31, 2011.
[13] D.E. 167 at p. 13.
[14] Ex. A; p. 104, lns. 6—18, p. 105, ln. 12—p. 107, ln. 4.

trade zone is the functional equivalent of a State, or even a foreign country, for purposes of the MCA exemption. That is, RTFC misstates that transportation of property in a commercial motor vehicle into FTZ122 is the same as driving across a state line (like Texas to Arkansas) or national border (like Texas to Mexico). It is telling that RTFC is unable to cite any authority whatsoever that supports this argument even though foreign trade zones were created by statute in 1934.[15]

### (d) *Plaintiffs never transported passengers in interstate or foreign commerce*.

RTFC further argues that because fire apparatus vehicles and its shuttle bus move passengers into and out of FTZ122, Plaintiffs are therefore engaged in interstate and/or foreign commerce.[16] Again, however, there is simply no support for this argument. Much like the rest of RTFC's response and counter motion, this is a manufactured-for-litigation argument without any supporting authority.[17] Even assuming Plaintiffs "move[d] passengers on a routine basis using both fire apparatus and a shuttle bus, each also qualifying as commercial motor vehicles with a gross weight of at least 10,000 pounds,"[18] it is absolutely meaningless for purposes of the MCA exemption since these activities did not occur while engaged in interstate or foreign commerce.

There is simply no authority—and RTFC certainly does not cite any—supporting its argument that FTZ122 is on foreign soil, as it would have to be, in order for RTFC to be engaged in foreign commerce. To the contrary, there is no dispute that FTZ122 is located entirely within Nueces County, Texas and the laws of the United States, the State of Texas and Nueces County apply at all times.[19] Because Plaintiffs never crossed state or national lines while engaged in interstate

---

[15] *See* 19 U.S.C. 81a; *see also* Port of Corpus Christi website, last accessed on September 30, 2013 (http://www.portofcorpuschristi.com/index.php/foreign-trade-zone-163/ftz), attached hereto as Exhibit "D."
[16] D.E. 167 at pp. 13, 14.
[17] It was not until May 2012—eight months after Plaintiffs filed suit—that RTFC came up with its Motor Carrier Act defense (D.E. 115).
[18] D.E. 167 at p. 14.
[19] Ex. A; p. 25, lns. 9—25.

or foreign commerce, the MCA exemption does not apply and Plaintiffs are therefore entitled to overtime compensation under 29 U.S.C. § 207(a)(1) of the FLSA.

B. FOREIGN TRADE ZONES

A foreign trade zone (sometimes "FTZ" or "FTZ122") is defined as "an area within the United States in or near a U.S. customs port of entry, where foreign and domestic merchandise is considered to be outside the country, or at least outside of U.S. Customs territory."[20] Although foreign and domestic merchandise is "considered to be outside the country" while inside a foreign trade zone, the definition also makes clear that FTZs are not, in fact, outside the country but are "areas within the United States." The National Association of Foreign-Trade Zones further instructs:

> Foreign-trade zones are secure areas within the United States that are considered to be outside of U.S. Customs territory for tariff purposes…[a]ll other U.S., state, and local laws apply.[21]

In essence, an FTZ is no different than a duty free shop in an airport. While the customs and tax laws of the United States do not apply in those locations, an individual certainly does not enter a foreign country, or another state for that matter, when he enters a duty free shop. Nor does an individual escape liability for breaking the law while inside a duty free shop. RTFC's "virtual fence line" argument is nothing more than a red herring. The movement of goods and passengers into and out of an FTZ has no bearing on the application of the MCA exemption. RTFC's attempt to enlarge the MCA exemption via ingress and egress of FTZ122 is not only unsupported, it is intellectually dishonest.

---

[20] *See* Port of Corpus Christi website, last accessed on September 30, 2013 (http://www.portofcorpuschristi.com/images/pccpdfs/PortFTZ%20BrochWeb_1.pdf), attached hereto as Exhibit "E."
[21] *See* National Association of Foreign-Trade Zones website, last accessed on September 30, 2013 (http://www.naftz.org/wp-content/uploads/2013/08/ftzmaterials.pdf), attached hereto as Exhibit "F."

     1.    <u>Travel into and out of FTZ122 does not trigger the MCA exemption</u>.

Plaintiffs do not dispute the possibility that some activities occurring within FTZ122 may, under certain conditions, constitute foreign and/or interstate commerce just as they might from any other location in the United States.[22] It is also undisputed that Plaintiffs' liability expert Brian T. Farrington agreed that foreign commerce can, <u>under the right circumstances</u>, include activities related to things coming in and out of FTZs.[23] What is disputed—and what RTFC cannot provide—is any evidence or authority for the specious argument that mere physical presence within a foreign trade zone triggers the MCA exemption and therefore exempts Plaintiffs from overtime compensation. RTFC's so-called authority is based on a gross misunderstanding of the MCA exemption. The language quoted below is a clear example of this misunderstanding:

> Reduced to its simplest terms, a foreign-trade zone is a properly protected…area which is outside <u>the customs boundaries</u> of the United States. Thus, <u>from a customs angle</u>, a foreign-trade zone is not a part of the United States.[24]

A simple analysis of the language in this quote is quite revealing. The phrase "outside the customs boundaries of the United States" is only necessary because FTZs are, in actuality, fully inside the legal and geographic boundaries of the United States. Similarly, the phrase "from a customs angle" is only necessary because FTZs are, from any common sense and factual perspective, completely within the United States.

Indeed, there is no evidence and certainly no support in case law, statutory history, or even dicta from any court in the country that, from a <u>geographic or jurisdictional angle</u>, a foreign trade zone is not part of the United States. Rather, it is undisputed that FTZ122 is located entirely within

---

[22] For example, refineries like Citgo and Valero clearly are engaged in interstate and foreign commerce when they receive from and ship petroleum products to foreign nations through FTZ122.
[23] Farrington Depo., 72:14—73:1 (*e.g.*, loading and unloading a shipping vessel engaged in international trade), attached hereto as Exhibit "G."
[24] D.E. 167 at p. 15; fn. 27 (emphasis added) (citing hearings on H.R. 6159 and 6160, Committee on Ways and Means, 80th Cong., 2d Sess. at 5 (1948); *see also Hawaiian Indep. Refinery v. U.S.*, 460 F.Supp. 1249, 1255 (Cust. Ct. 1978).

Nueces County, Texas and individuals within FTZ122 are subject to the laws of the United States, the State of Texas and Nueces County.[25] Moreover, and as clearly illustrated by the chart below, the very law that created foreign trade zones provides additional support for Plaintiffs' common sense argument that a foreign trade zone is not on foreign soil, but rather a part of the United States and subject to her laws.

| Foreign Trade Zone Act | Under the Laws of the United States |
|---|---|
| **19 U.S.C. § 81b(a)** (emphasis added) | "The Board is authorized…to grant to corporations the privilege of establishing, operating, and maintaining foreign-trade zones in or adjacent to ports of entry <u>under the jurisdiction of the United States</u>." |
| **19 U.S.C. § 81e** (emphasis added) | "Vessels entering or leaving a zone shall be <u>subject to the operation of all the laws of the United States</u>…" |

For all the reasons explained above, RTFC simply cannot satisfy its burden of showing that it transported passengers, property, or both, <u>while engaged in interstate or foreign commerce</u>. Accordingly, the MCA exemption does not apply and Plaintiffs are entitled to overtime compensation under the FLSA.

    2.    <u>RTFC's protection and support activities do not trigger the MCA exemption</u>.

RTFC makes the following additional arguments in an attempt to meet its burden of showing that Plaintiffs were engaged in interstate or foreign commerce:

---

[25] *See* Exhibit "E."

- o Importation of crude oil and other products from foreign countries into the FTZ122 subzones <u>protected and serviced</u> by Plaintiffs;[26]

- o Plaintiffs participate in the flow of interstate and/or foreign commerce by <u>supporting transfer operations</u> of the imported petroleum products from the vessel to the pipeline and/or storage area to tanker trucks for further transport out of FTZ122 and into the United States;

- o Plaintiffs <u>perform "standby" operations</u> wherein Plaintiffs stand on the ready to address hazardous or unsafe situations due to operational or weather related conditions during liquid transfers; and

- o Petroleum products could be destined for final delivery inside Texas via transport in tanker trucks and/or all over the country via interstate and international pipelines that connect to the receiving storage vessels in FTZ122 as part of the operations of each member refinery.[27]

What is missing—and absolutely imperative for purposes of applying the MCA exemption—is any evidence whatsoever that RTFC is the one actually transporting via tanker truck or pipeline petroleum imports or any other products in interstate or foreign commerce.[28] Simply put, RTFC is not engaged in the actual transport of products and, therefore, not engaged in interstate or foreign commerce for purposes of the MCA exemption. And although RTFC may consider itself to be an "integral" part of the activities listed above, there is no authority for extending the MCA exemption in this manner.

---

[26] RTFC cites *McGoldrick v. Gulf Oil Corp.*, 309 U.S. 414 (1940) and states that it supports the notion that "FTZs are <u>special geographical areas created to provide a physical boundary</u> under which to regulate activity under these statutes and regulations, thus imports into FTZs are foreign commerce." D.E. 167 at p. 17, n. 32. (emphasis added). Contrary to RTFC's convoluted interpretation, nowhere does the Supreme Court remotely mention anything about FTZs being geographical areas created to provide physical boundaries. Rather, *McGoldrick* simply holds that crude oil that had been imported from a foreign country to New York and then sold and delivered <u>to vessels engaged in foreign commerce</u> was not subject to state taxation. *McGoldrick*, 309 U.S. at 669.

[27] D.E. 167 at pp. 17-18 (emphasis added); *see also* D.E. 167-7, "Summary of Petroleum Imports 2008-2012 into the Port of Corpus Christi" Bates Nos. RTFC 117031—117066.

[28] Ex. A, p. 99, ln. 7—p. 100, ln. 4.

## III.
## RTFC'S EMPLOYEE HANDBOOK ADMISSIONS

RTFC has a 56-page employee handbook that does not once inform its employees they are exempt from overtime compensation under the MCA exemption. To the contrary, RTFC instructs it employees they are in fact entitled to overtime compensation pursuant to the FLSA.[29] RTFC even has FLSA posters that hang from on-site bulletin boards.[30] Yet, there are no posters informing employees they are exempt from overtime compensation under the MCA exemption. As such, it should be abundantly clear to this Court that RTFC manufactured the MCA defense purely for litigation purposes.

## IV.
## CONCLUSION

More importantly, and keeping in mind the MCA exemption must be narrowly construed against RTFC, there is no evidence that would allow a jury to return a verdict in RTFC's favor based on the affirmative defense of the MCA exemption. Plaintiffs are therefore entitled to summary judgment on this affirmative defense and respectfully request the Court grant the same.

Respectfully submitted,

         /s/ *Craig M. Sico*
Craig M. Sico
Federal I.D. No. 13540
Texas Bar No. 18339850
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH L.L.P.
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Telephone: 361/653-3300
Facsimile: 361/653-3333

**ATTORNEY IN CHARGE FOR PLAINTIFFS**

---

[29] Excerpts from the RTFC Employee Handbook are attached hereto as Exhibit "H" Bates Nos. RTFC 3320, 3333; *see also* Ex. A; p. 79, ln. 7—p. 80, lns. 1—7.
[30] Ex. A; p. 51, ln. 17—p. 52, lns. 1—22.

OF COUNSEL:

Roger S. Braugh, Jr.
Federal I.D. No. 21326
Texas Bar No. 00796244
Clif Alexander
Federal I.D. No. 1138436
Texas Bar No. 24064805
Tara A. Hoelscher
Federal I.D. No. 1850018
Texas Bar No. 24012189
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH L.L.P.
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
Telephone: 361/653-3300
Facsimile: 361/653-3333

Jerry Guerra
Federal I.D. No. 18166
Texas Bar No. 00789326
HUERTA GUERRA BEAM, PLLC
924 Leopard Street
Corpus Christi, Texas 78401
Telephone: 361/884-1632
Facsimile: 361/884-7013

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this 2nd day of October, 2013, a true and correct copy of the above and foregoing document was served upon the following counsel of record via the Court's electronic filing system and/or Certified U.S. Mail, Return Receipt Requested, in accordance with the Federal Rules of Civil Procedure.

Keith B. Sieczkowski
BRANSCOMB|PC
802 North Carancahua, Suite 1900
Corpus Christi, Texas 78401

*Attorneys for Defendant Refinery Terminal Fire Company*

                                                      /s/ *Craig M. Sico*