UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOE DALE MARTINEZ, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> REFINERY TERMINAL FIRE § <br> COMPANY, § <br> § <br> Defendant. § | CIVIL NO. 2:11-CV-295 |

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON MOTOR CARRIER ACT EXEMPTION AND DENYING DEFENDANT'S MOTION

Pending is Plaintiffs' motion for summary judgment on Defendant Refinery Terminal Fire Company's (RTFC) affirmative defense that it is not liable for unpaid overtime wages because the employees were exempt under the Motor Carrier Act (MCA) exemption and Defendant's counter motion for summary judgment on the same issue (D.E. 155, 167). The parties have filed additional responses to the motions (D.E. 170, 185, 189). As discussed more fully below, Plaintiffs' motion for summary judgment is GRANTED and Defendant's motion is DENIED.

### JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this court because a substantial part of the actions about which Plaintiffs complain occurred in Nueces County, Texas, which is located in the Southern District of Texas.

## BACKGROUND

RTFC is a private not-for-profit company that provides firefighting and related services to refineries and petrochemical facilities in and around Corpus Christi, Texas. The organization is owned by its members, primarily petrochemical refineries, who pay an annual assessment for access to fire protection. The Port of Corpus Christi Authority is also a member. RTFC has a main station and five in-plant stations, four which are located in Corpus Christi and one which is located in Port Arthur, Texas. RTFC employs more than 100 full-time firefighters and Plaintiffs are current and former employees of RTFC.

Plaintiffs argue that they did not receive all the overtime compensation they were due under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. Defendant counters that the employees are exempt from receiving overtime pay under the MCA exemption to the FLSA.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions,

affidavits, and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. *See Celotex*, 477 U.S. at 324; *Caboni*, 278 F.3d at 451; Fed.R.Civ.P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Caboni*, 278 F.3d at 451.

Where there are cross-motions for summary judgment, the party bearing the burden of proof at trial must satisfy not only the initial burden of production on the summary judgment motion by showing that there is no genuine issue of material fact, but also the burden of persuasion on the claim itself by showing that it would be entitled to judgment as a matter of law at trial. *Provenza v. Gulf South Administrative Services, Inc.*, 67 F.Supp.2d 617, 619 (M.D. La. 1999). Each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *American Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2012). If there is no genuine issue of fact and one party is entitled to prevail as a matter of law,

the court may render summary judgment.  *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004).

### B.  The FLSA and the MCA Exemption

Under the FLSA, employees who work more than 40 hours in a work week are entitled to compensation for employment for excess hours at a rate of not less than one and one-half times the employee's regular rate of pay.  20 U.S.C. § 207(a)(1).  There are exceptions to the "time-and-a-half" provision of the statute, including an exemption for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  20 U.S.C. § 213(b)(1).  This exemption is known as the Motor Carrier Act Exemption.

The Department of Labor's jurisdiction under the FLSA and the Department of Transportation's (DOT) jurisdiction under the MCA are mutually exclusive and there are no overlapping areas of jurisdiction.  *Spires v. Ben Hill County*, 980 F.2d 683, 686 (5th Cir. 1993) (citing *Morris v. McComb*, 332 U.S. 422, 437 (1947)).  To avoid conflict between the Acts, Congress determined that the Secretary of Transportation does not need to actually exercise his power to regulate under the MCA.  Rather, employees are exempt from the overtime requirements as long as the secretary has the authority to regulate a particular category of employees.  *Id.*

Pursuant to 49 U.S.C. § 31502, the Secretary of Transportation may prescribe requirements for qualifications and maximum hours of service of employees of, and safety of operation and equipment of, motor carriers and motor private carriers when needed to promote safety of operation, when they are engaged in interstate commerce.

49 U.S.C. § 31502(a) and (b); 49 U.S.C. §§ 13501 and 13502. The regulations state the following:

> The exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act. . . .

29 C.F.R. § 782.2(b)(2).

> Interstate and foreign commerce are described in relevant part as follows:
>
> The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier—
>
> (1) between a place in—
>
>> (A) a State and a place in another State; . . .
>>
>> (C) the United States and a place in a territory or possession of the United State to the extent the transportation is in the United States; . . .
>>
>> (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
>>
>> (E) the United States and a place in a foreign country to the extent the transportation is in the United States. . . .

49 U.S.C. § 13501(1).

Exemptions under the FLSA are construed narrowly against the employer and the employer bears the burden of establishing an exemption. *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). The party seeking the exemption must show that the claimed exemption falls plainly and unmistakably within the terms of

the statute. *Lederman v. Frontier Fire Protection, Inc.*, 685 F.3d 1151, 1157-1158 (10th Cir. 2012). "Plainly and unmistakably" refers to the legal standard which must be met, and not to the evidentiary burden. An employer must prove it is eligible for the exemption by a preponderance of the evidence. *Lederman*, 685 F.3d at 1158.

It is undisputed that the DOT regulates Plaintiffs in some respects. For example, drivers must qualify for commercial drivers' licenses and vehicles are subject to inspections according to DOT specifications. *See, generally,* 49 C.F.R. § 391-397. However, to be subject to the MCA exemption, in addition to being regulated by the DOT, Plaintiffs must operate in interstate or foreign commerce.

The parties disagree on whether RTFC is engaged in interstate or foreign commerce. Defendant asserts that RTFC is engaged in foreign commerce because (1) it operates between the RTFC main station in Corpus Christi and foreign trade zones in the Port of Corpus Christi, and (2) it participates in the flow of interstate or foreign commerce by supporting transfer operations of imported petroleum products from vessels in the Port of Corpus Christi for distribution throughout the United States. Defendant further asserts that RTFC is engaged in interstate commerce because it moves equipment between Texas, Mississippi, and Louisiana.

It is important to note that engaging in interstate commerce for purposes of the FLSA is not necessarily the same thing as engaging in interstate commerce for purposes of the MCA. The interstate commerce requirements of 29 U.S.C. § 213(b)(1) are not always met by establishing that an employee is engaged in commerce within the meaning of the FLSA. 29 C.F.R. 782.7(a). Defendant argues that Plaintiffs conceded that they are engaged in interstate commerce in their first amended collective action

complaint (D.E. 10) when they alleged that they were engaged in interstate commerce for purposes of the FLSA. However, Plaintiffs have not conceded that they are engaged in interstate commerce for purposes of the MCA (D.E. 189 at 9-10).

**1. Foreign Commerce**

**(a) Entry into Foreign Trade Zones**

Defendant asserts that because Plaintiffs drive vehicles carrying equipment and supplies in and out of a foreign trade zone (FTZ) they are engaged in interstate or foreign commerce. FTZs are discrete areas located adjacent to ports of entry and authorized by Congress to receive preferential treatment under United States customs laws. *United States v. 4,432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168 (9th Cir. 2006). Merchandise from foreign countries stored within an FTZ is not subject to United States customs duties as long as it remains in the FTZ. *Id.* (citing 19 U.S.C. § 81c). From a customs angle, an FTZ is not part of the United States. *Hawaiian Indep. Refinery v. United States*, 81 Cust. Ct. 117, 123-124, 460 F.Supp. 1249, 1255 (1978). However, aside from tariff and customs laws, all other federal, state, and local laws apply in FTZs (U.S. Foreign Trade Zones, D.E. 170-6 at 1).

FTZ122 is located at the Port of Corpus Christi and RTFC has a general contract with the Port of Corpus Christi as well as with three refineries which operate in subzones located within the FTZ. Defendant contends that when RTFC employees drive vehicles carrying equipment and supplies in and out of FTZ122, they are engaging in foreign commerce. However, Defendant does not cite to any authority for the proposition and none was found.

Defendant cites *Deer Park Indep. School Dist. v. Harris County Appraisal Dist.*,

132 F.3d 1095, 1098 (5th Cir. 1998) for its statement, "there can be no doubt that the activities in the FTZs constitute foreign, and by extension, interstate commerce, so they are within the purview of the Congress." But the court made that statement in response to a contention that Congress did not have power under the Commerce Clause to enact and enforce legislation creating the FTZs. *Id.* The fact that activities within FTZs constitute foreign commerce, which is in the purview of Congress, does not lead to the conclusion that every vehicle entering an FTZ is engaging in foreign commerce for purposes of the MCA exemption.

There simply is no authority for the proposition that because Plaintiffs carry equipment and supplies in and out of FTZ122, they are engaged in foreign or interstate commerce. "Whether or not a part of Texas is legally a free trade zone, it is still a part of Texas." *Summit Machine Tool Manufacturing Corp. v. Warren Transport, Inc.*, 920 F.Supp. 722, 726 (S.D. Tex. 1996). Because the MCA exemption is to be construed narrowly against the Defendant, the Court declines to find that Plaintiffs engaged in interstate commerce simply by driving equipment and supplies in and out of FTZ122.

**(b) Supporting Transfer Operations**

Defendant also claims that Plaintiffs participate in the flow of interstate and/or foreign commerce by supporting the transfer operations of imported petroleum products in and out of the FTZ.[1] Examples of support provided by RTFC to refineries in FTZ122, in addition to responding to emergencies, include standing by, ready to address hazardous or unsafe situations during liquid transfers; providing a cooling spray when fuel, oil, or chemical products are being transferred from one tank to another or from

---

[1] It is assumed that the transfers of the petroleum products by the refineries themselves constitute interstate commerce.

storage to tankers for further transport; supervising and providing input into the transfer process; and operating an "18-wheeler" and a shuttle bus which are used for training and to transport material and personnel to locations within FTZ122 (Decl. of Paul Swetish, Ex. B to Resp. to Pl's MSJ; D.E. 167-4 at 3-5).

Defendant has offered no authority to support its allegation that because Plaintiffs are present at petroleum transfer operations or respond to emergencies in the FTZ, they are engaged in interstate or foreign commerce or both. While it is clear that they have a role in keeping operations safe for those who are engaged in interstate or foreign commerce, Plaintiffs are not transporting passengers, property, or both, as described in the exemption.

Defendant also argues that the transfer of goods such as firefighting equipment and supplies as well as food and fuel to firefighters in FTZ122 constitutes foreign commerce. However, the Secretary of Transportation has consistently maintained that transportation within a State of consumable goods (such as food, coal, and ice) to railroad, docks, et cetera, for use of trains and steamships is not subject to its jurisdiction. 29 C.F.R. § 782.8(a). Similarly, the delivery of equipment and supplies to ocean-going vessels for use and consumption aboard the vessels which move in interstate or foreign commerce does not exempt the carriers from the overtime provisions of the FLSA. *Id.*

The activities described by Defendant appear to fall into the same category as the items described above. Although RTFC carriers moved items that may have assisted the refineries and the Port of Corpus Christi in their respective businesses, the goods and supplies themselves did not continue to flow in interstate commerce.

The regulations further explain:

> [E]mployees of construction contractors are, within the meaning of the Fair Labor Standards Act, engaged in commerce where they operate or repair motor vehicles used in the maintenance, repair, or reconstruction of instrumentalities of interstate commerce (for example, highways over which goods and persons regularly move in interstate commerce). . . . Employees so engaged are not however, brought within the [MCA] exemption merely by reason of that fact. In order for the exemption to apply, *their activities, so far as interstate commerce is concerned, must relate directly to the transportation of materials moving in interstate or foreign commerce within the meaning of the Motor Carrier Act.* Asphalt distributor-operators, although not exempt by reason of their work in applying the asphalt to the highways, are within the exemption where they transport to the road site asphalt moving in interstate commerce.

29 C.F.R. § 782.7(a) (internal citations omitted) (emphasis added). Similarly, in order for RTFC to be entitled to the exemption, its drivers' *activities* must relate directly to the transportation of material moving in interstate or foreign commerce within the meaning of the MCA. Defendant has not shown that Plaintiffs have engaged in such activities. *See, also*, 29 C.F.R. § 782.7(c) (Drivers transporting goods in and about a plant producing goods for commerce and chauffeurs or drivers of company cars or buses transporting officers or employees from place to place in the course of their employment in an establishment which produces goods for commerce do not fall within the MCA exemption.) Accordingly, Defendant has not shown that it is entitled to summary judgment on this issue.

### 2. Interstate Commerce

Defendant also argues that Plaintiffs participated in interstate commerce because they were expected to drive out of state. To be engaged in interstate commerce requires either the actual transport of goods across state lines, or the intrastate transport of goods in the flow of interstate commerce. *Barefoot v. Mid-America*

*Dairymen, Inc.*, 826 F.Supp. 1046, 1049 (N.D. Tex. 1993).  "[I]t is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment."  *Morris*, 332 U.S. at 431-432 (internal citations and quotations omitted).  When interstate trips are a "natural, integral and apparently inseparable part of the common carrier service of the employer and his drivers," and where, in the normal course of business, interstate commerce trips are "distributed generally throughout the year and their performance [is] shared indiscriminately by the drivers and [is] mingled with the performance of other like driving services," employees are subject to the MCA exemption even where not all drivers drive in interstate commerce. *Id.*, 332 U.S. at 433.

However, an employee's minor involvement in interstate commerce does not necessarily subject that employee to the Secretary of Transportation's jurisdiction for an unlimited period of time.  *Reich v. American Driver Service, Inc.*, 33 F.3d 1153, 1155-1156 (9th Cir. 1994) (citing *Baird v. Wagoner Transp. Co.,* 425 F.2d 407, 412-413 (6th Cir. 1970)).  The Federal Highway Administration (FHWA), a division of the DOT, issued an interpretation of its jurisdiction to regulate the qualifications and maximum hours of service of commercial motor vehicle drivers engaged in interstate or foreign commerce. According to the FHWA, in order to establish jurisdiction over a carrier, the carrier must have been engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question.  46 Fed. Reg. 37902-02, 1981 WL 115508 (F.R.), July 23, 1981.

11 / 14

> The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof, in the case of a "for hire carrier," that interstate business had been solicited.  If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs.  Satisfactory evidence would be statements from drivers and carriers, and any employment agreements.
>
> Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to [DOT jurisdiction] for a 4-month period from the date of the proof.  The FHWA believes that the 4-month period is reasonable because it avoids both the too strict week-by-week approach and the situation where a driver could be used or be subject to being used once and remain subject to jurisdiction [of the DOT] for an unlimited time.

*Id.*

An RTFC captain testified at his deposition that Defendant provided emergency services to Louisiana following Hurricane Rita in 2005, and had entered a contract as of January 1, 2013, to provide some type of services in Mississippi (Deposition of Paul Swetish, D.E. 184 at 34-41).  The captain testified that thirteen firefighters went to Louisiana in 2005 and stayed for approximately one month.  It is unclear whether the firefighters drove RTFC equipment to Louisiana, drove their personal vehicles, or flew (*Id.* at 40-41).  Regarding the contract with Mississippi, the captain testified that RTFC did not have a presence there prior to 2013 (*Id.* at 40).

The chief executive officer at RTFC stated in his deposition that ninety percent of the services provided by RTFC are provided in Texas, and that the remaining services consist of providing training out of state.  There was no testimony that providing training involves driving equipment or materials out of state (Deposition of Lonnie Bartlett, Ex. 8 to Pl's. Mot for SJ at 19-20; D.E. 155-14 at 5).  Bartlett further testified that services

were provided primarily to members of RTFC and that none of the member companies resided outside of Texas (Barlett Depo. at 59, 63; D.E. 155-14 at 15-16). Bartlett could not recall any incident where RTFC responded with firefighting foam to a fire outside of Texas (Bartlett Depo. at 65-66; D.E. 155-14 at 17). An RTFC employee stated in his deposition that employees did not expect to be assigned to an interstate emergency response trip (Deposition of Chris Garcia; Ex. 1 to Pl's. Mot for SJ at 79; D.E. 155-1 at 20). Nothing on the RTFC website indicates that Defendant provides anything other than training to anyone outside of Texas. *See generally*, D.E. 155-7.

There is no evidence in the record to support Defendant's contention that RTFC employees drove out of state or were expected to drive out of state as part of their duties. The only out-of-state emergency response prior to the filing of this lawsuit in 2011 was in 2005. Given the fact that all the RTFC members are in Texas, employees would not have had an expectation based on that one incident that they could be called to work out of state in 2011. If RTFC employees engaged in interstate commerce in 2005 for the purposes of the MCA, that is well outside of the "four-month rule." And clearly, the fact that RTFC has since entered into a contract to provide some sort of services in Mississippi in 2013 could not have put employees who worked for RTFC on notice that they might be expected to drive out of state prior to that date.

There are no genuine issues of fact related to the MCA exemption and Defendant has failed to show by a preponderance of the evidence that Plaintiffs engaged in interstate or foreign commerce such that they were under the jurisdiction of the DOT. Accordingly, the MCA exemption does not apply to them. Defendant's motion for summary judgment is denied and Plaintiffs' motion for summary judgment is granted

on the MCA issue.[2]

## CONCLUSION

For the reasons set out above, Plaintiffs' Motion for Summary Judgment on the Motor Carrier Act Exemption (D.E. 155) is GRANTED.  Defendant's Counter Motion for Summary Judgment on the Motor Carrier Act Exemption (D.E. 167) is DENIED.

ORDERED this 27th day of December, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs also argue that 49 C.F.R. § 390.3(f)(5) indicates that operators of fire trucks and rescue vehicles while engaged in emergency and related operations are not subject to the MCA exemption. Because the Court has determined that the MCA exemption does not apply based on the reasons discussed above, this argument is not addressed.