UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE DALE MARTINEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-295 |
| | § | |
| REFINERY TERMINAL FIRE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

# ORDER

Plaintiffs allege that Refinery Terminal Fire Company (RTFC) violated provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and owes them back wages. Pending is Plaintiffs' motion for summary judgment on the executive exemption to the FLSA minimum wage requirement and Defendant's counter-motion on the same issue (D.E. 154, 166). For the reasons set forth below, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendant's motion.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper in this court because a substantial part of the actions about which Plaintiffs complain occurred in Nueces County, Texas, which is located in the Southern District of Texas.

## BACKGROUND

RTFC is a private not-for-profit company that provides firefighting and related services to refineries and petrochemical facilities in and around Corpus Christi, Texas.

The organization is owned by its members, primarily petrochemical refineries, who pay an annual assessment for access to fire protection.  RTFC has a main station and five in-plant stations, four located in Corpus Christi and one in Port Arthur, Texas.  RTFC employs more than 100 full-time firefighters and Plaintiffs are current and former employees of RTFC.

RTFC runs three 24-hour shifts of firefighters at the RTFC main station and at the in-plant stations.  Each shift is run by a captain who oversees the work and assignments of the firefighters on the shift.  At issue is whether the shift captains are exempt from overtime pay under the executive exemption of the FLSA.

## APPLICABLE LAW

### I.  Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  An issue is material if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  The Court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. *See Celotex*, 477 U.S. at 324; *Caboni*, 278 F.3d at 451; Fed.R.Civ.P. 56(e). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Caboni*, 278 F.3d at 451.

Where there are cross-motions for summary judgment, the party bearing the burden of proof at trial must satisfy not only the initial burden of production on the summary judgment motion by showing that there is no genuine issue of material fact, but also the burden of persuasion on the claim itself by showing that it would be entitled to judgment as a matter of law at trial. *Provenza v. Gulf South Admin. Services, Inc.*, 67 F.Supp.2d 617, 619 (M.D. La. 1999). Each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *American Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2012). If there is no genuine issue of fact and one party is entitled to prevail as a matter of law, the court may

render summary judgment. *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004).

## II. Executive Exemption

The FLSA mandates that employers pay employees not less than minimum wage, and that employers pay non-exempt employees one-and-one-half times their regular rate of pay for any hours worked over forty during a workweek. 29 U.S.C. §§ 206-207. Exempted from the overtime provision are employees who work in bona fide executive, administrative, or professional capacities. 29 U.S.C. § 213(a)(1).

The term "employee employed in a bona fide executive capacity" in 29 U.S.C. § 213(a)(1) means any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

FLSA exemptions are construed narrowly and the burden of proving the exemption lies with the employer. *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006). The employer must prove facts by a preponderance of the evidence that show the exemption is plainly and unmistakably applicable. *Meza v. Intelligent Mexican*

*Marketing, Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations . . . ." 29 C.F.R. § 541.2.

It is undisputed in this case that the captains were paid a salary and that they customarily and regularly directed the work of two or more other employees. At issue is (1) whether their primary duties were management of the enterprise or of a recognized department or subdivision thereof, and (2) whether they had the authority to hire or fire, or made suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees which were given particular weight.

### A. Management as a Primary Duty

An employee's primary duty is the principal, main, major, or most important duty that the employee performs. 29 C.F.R. § 541.700(a). Determination of an employee's primary duty is based on all the facts in a particular case, with an emphasis on the character of the employee's job as a whole. *Id.* Factors include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employees. *Id.* Although time spent on exempt activities is not the sole test, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary

duty requirement. 29 C.F.R. § 541.700(b). Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if other factors support such a conclusion. *Id.*

> Generally, "management" includes, but is not limited to, the following:
>
> Activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production of sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102; *Gelhaus v. Wal-Mart Stores, Inc.*, 769 F.Supp.2d 1071, 1079-80 (E.D. Tex. 2011).

The RTFC job description for captains describes the position as "a command level position of a hazardous nature with emphasis shifted from individual performance of specific tasks to planning, coordinating, training, organizing, evaluating and otherwise exercising leadership practices required to enable subordinates to perform effectively, and to facilitate and encourage their development to fullest possible level of attainment." (D.E. 155-6 at 1). More specifically, a captain is expected to supervise emergencies, including assuming command at the scene of an emergency until arrival of a senior officer; supervise all aspects of the emergency response activities; determine and direct tactics and methods used in resolving fire and rescue emergency situations; supervise

subordinates in gathering data for pre-incident planning and reviews, and editing material prior to submission to senior staff; provide recommendations, including technical data, for the improvement of equipment, procedures, and techniques; prepare accurate incident reports; and when assigned to in-plant operations, act as the primary liaison between RTFC and the client (D.E. 155-6 at 1-2).

Duties relating to supervision of personnel include resolving moderately difficult personnel issues and referring more complex matters to senior staff; keeping senior staff advised of personnel issues and problems occurring on the shift; selecting and scheduling personnel for specific duty assignments; preparing written operations, training, and personnel reports; and preparing employee counseling and evaluations (D.E. 155-6 at 2).

Regarding maintenance, captains are expected to supervise shift personnel in the maintenance and cleaning of apparatus, equipment, and facilities; research and present recommendations to assist in selecting equipment and supplies; supervise equipment tests, repairs, and replacement; and oversee inspections and testing of plant emergency related equipment (D.E. 155-6 at 2-3).

Captains also are expected to supervise and conduct practical training sessions; respond on occasion to fire and rescue incidents to evaluate for training purposes; work with other officers to develop fire and rescue service training programs; develop and write training instruction manuals; provide instruction on training courses; train and supervise subordinate instructors; and prepare visual aids for instruction purposes (D.E. 155-6 at 3).

Two RTFC chiefs stated in sworn declarations that each 24-hour shift is run by a captain who is in charge of overseeing the work and assignments of five or six firefighters within the shift at the particular station. The primary assignment of a captain is to be in charge of a shift of firefighters (Declaration of Paul Swetish, D.E. 166-3 at 2-3; Declaration of Joseph Burnell, D.E. 166-4 at 2-3). Both chiefs stated that the job description prepared by RTFC accurately reflects the general duties of a captain (Swetish Decl., D.E. 166-3 at 3; Burnell Decl., D.E. 166-4 at 3).

The chiefs also stated that the captains apportion work and handle any equipment, personnel needs, or special requests. The captains administer corrective action to employees, and if more formal discipline is necessary, they initiate it by discussing and recommending the matter to the responsible chief (Swetish Decl., D.E. 166-3 at 4; Burnell Decl., D.E. 166-4 at 4). Captains order supplies and handle paperwork required by non-operational staff to keep the business running. They approve timesheets and paid time off, and approve and handle the logistics of crew member swaps. They conduct employee evaluations and discuss the evaluations with the crew members (Swetish Decl., D.E. 166-3 at 5-6; Burnell Decl., D.E. 166-4 at 5-6).

During incidents or emergency situations, captains use independent judgment to discern and evaluate the situation and assign tasks to meet the response need. Even when a captain transfers control of a response to a chief, the captain retains direct supervisory control of his team. After the active firefighting efforts are complete, the captain reestablishes command of the scene and manages the clean-up, establishes safety and monitoring activities, and completes administrative efforts involved after the incident

(Swetish Decl., D.E. 166-3 at 7; Burnell Decl., D.E. 166-4 at 7). In addition to the affidavits, Defendant incorporated by reference the exhibits attached to its Motion to Decertify Collective Action and Disqualify Plaintiffs (Motion to Disqualify Plaintiffs) which contain many examples of captains completing evaluations, issuing written reprimands, making recommendations for promotions, and completing written incident reports (*See* Ex. D to D.E. 152-2).

Based on the evidence submitted by Defendant and uncontested by Plaintiffs, RTFC captains engaged in many of the management activities described in 29 C.F.R. § 541.102. In addition to directing operations at emergency sites until a chief arrives, captains train employees, direct their work, maintain records, appraise employees' work, handle some complaints and grievances, plan work at the station and apportion it among employees, research equipment needs, recommend purchases, and oversee and enforce safety rules. While captains do work as first responders during emergency situations, much of their time is spent engaged in management activities. Chief John Lowe stated in his declaration that true emergency responses do not happen frequently and that the normal work day consists of inspections, testing, monitoring, and other safety-related tasks overseen by shift captains (Decl. of John Lowe, Ex. A to 152-2 at 3-4).

Courts faced with similar factual scenarios have found that captains or other supervisors with duties similar to the shift captains here fell within the executive exemption. *See Simmons v. City of Fort* Worth, 805 F.Supp. 419, 421 (N.D. Tex. 1992); *Masters v. City of Huntington*, 800 F.Supp. 363, 365 (S.D. W.Va. 1992); *Keller v. City of*

*Columbus, Indiana*, 778 F.Supp. 1480, 1482 (S.D. Ind. 1991); *Benavides v. City of Austin*, No. A-11-CV-438-LY, 2013 WL 3197636, *7-8 (W.D. Tex. 2013).

Plaintiffs cite *Department of Labor v. City of Sapulpa,* 30 F.3d. 1285, 1288 (10th Cir. 1994) for its holding that captains in the municipal fire department were not exempt from overtime pay. There, the court noted that the title of "captain" provides no guidance on whether the administrative exemption applies, but that a fact-sensitive inquiry is required. *Id.* The court found that the record supported the conclusion that captains were first to arrive at the scene of a fire less than fifty percent of the time, had no authority to call additional personnel to the scene, had little discretion at the scene, did not set work schedules for other employees, did not have input into their own schedules, participated in manual labor at the station, and did not earn much more than the employees they supervised. *Id.* As described above, RTFC fire captains had a great deal of authority at the scene of a fire and also had training, scheduling, and supervisory duties at their stations.

The evidence in the record supports Defendant's argument that RTFC captains' primary duties were management of their stations and that they meet the regulatory standard for managerial employees. Accordingly, Defendant has satisfied its burden to show that the captains' primary duty is management of recognized subdivisions of RTFC.

### B. Authority Regarding Hiring and Firing of Employees

In order to be exempt from overtime, the captains must also have had the authority to hire or fire, or made suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees which were

given particular weight. 29 C.F.R. § 541.100(a)(4). The RTFC captains did not have authority to hire or fire, but Defendant contends that the captains' suggestions and recommendations regarding hiring, firing, advancement, and promotion were given particular weight.

> The regulations provide instruction regarding the meaning of "particular weight."
>
> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

Chiefs Swetish and Burnell stated that captains provide information that is always considered and heavily relied upon in making the decision to promote an employee from the position of Firefighter Trainee to Firefighter 1. They also stated that no employee is ever promoted to the position of Firefighter 1 without the recommendation of his captain (Swetish Decl., D.E. 166-3 at 5; Burnell Decl., D.E. 166-4 at 5).

Chief Lowe averred that the evaluations done by captains are considered necessary for promotion and advancement, and that every firefighter below the rank of captain must receive a positive recommendation from the captain to be considered for advancement to

the next rank. Chief Lowe further stated that, in the eighteen years he worked at RTFC, he could not recall personnel action, including promotion, occurring without the recommendation of the employee's captain (Lowe Decl., Ex. A to 152-2 at 3). The records attached to Defendant's Motion to Disqualify Plaintiffs contain copies of at least two recommendations made by Captain Christopher A. Garcia to promote employees from Firefighter Trainee to Firefighter 1 (RTFC 69622 and 69436, Ex. D to 152-2).

Defendant has met its burden of showing that RTFC captains' suggestions and recommendations regarding the advancement, promotion, or other changes of status of employees are given particular weight. The Court therefore finds that RTFC has satisfied the four-part test set forth in 29 C.F.R. § 541.100(a), and concludes that the captains are employed in a bona fide executive capacity.

### C.  Relevance of 29 C.F.R. § 541.3

Plaintiffs argue that a regulation enacted by the United States Department of Labor (DOL) in 2004 precludes RTFC captains from being exempt from overtime under the executive exemption. The regulation states, in pertinent part, the following:

> The section 13(a)(1) exemptions and the regulations in this part . . . do not apply to . . . firefighters, . . . regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims . . . or other similar work.
>
> Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a . . . fire fighter whose primary duty is to . . . fight fires is not exempt under section 13(a)(1) of the Act merely because the . . . fire fighter also directs the work of other employees in . . . fighting a fire.

29 C.F.R. § 541.3(b)(1) and (2). Plaintiffs argue that the RTFC captains' primary duties were to fight fires and respond to emergency situations and that the regulation compels the conclusion that they are not exempt employees.

The regulation was revised to explicitly address the exempt status of police officers, firefighters, paramedics, emergency medical technicians, and other first responders. Defining Exemptions for Executive Employees, 69 Fed. Reg. 22122-01, 22129, 2004 WL 865626 (April 23, 2004). However, the DOL stated that it had no intention of departing from established case law. Rather, it intended to make clear that firefighters and others *engaged in the described activities* are entitled to overtime pay. *Id.* (emphasis added).

The regulation does not disturb federal court decisions that high level firefighters are still exempt if, in addition to satisfying the other pertinent requirements, their primary duty is performing managerial tasks. *Id.* at 22130. "High-level employees who perform some first responder duties, like police lieutenants or fire chiefs, can nonetheless be exempt executives if their primary duty is managerial and they meet the other elements of the test." *Maestas v. Day & Zimmerman*, 664 F.3d 822, 827 (10th Cir. 2012). The *Maestas* court added the following:

> [a]lthough the first responder regulation reaffirms the primary duty test, it changes the analysis in a subtle but significant way: It states that first responders are not exempt executives even if they "also direct [ ] work of other employees in the conduct of an investigation or fire." 29 C.F.R. § 541.3(b)(2). As the Secretary of Labor recently explained in relation to New York City police sergeants, "field law enforcement work does not become management simply because the police officer directs the work of other employees while performing such work." Brief for Sec'y of Labor as Amicus Curiae at 5, *Mullins v. City of New York*, 653 F.3d 104 (2d Cir.

>   2011). . . . In other words, although "directing the work of employees" is normally a managerial duty, it is not a managerial duty when it is performed concurrently with front-line law enforcement work.

*Id.* at 828-829.

The regulation does not affect the analysis of whether the primary duty of the captains is management of a department or subdivision of RTFC. As discussed above, when RTFC captains are not on the scene of an emergency, they engage in many activities that have long been considered managerial under the regulations, such as training employees, apportioning and directing work at the stations, maintaining records, evaluating employees, handling complaints and grievances, and overseeing and enforcing safety rules. The DOL stated in an opinion letter[1] that the duties of a fire battalion chief who engaged in managerial activities similar to those of the RTFC captains were sufficient to qualify them as exempt from the minimum wage and overtime provisions of the FLSA, explaining that the exemptions continue to apply to first responders so long as they meet all the requirements set out in the regulations. *See* DOL Advisory Letter, FLSA2005-40, 2005 WL 3308611 (October 14, 2005).

Plaintiffs' argument that 29 C.F.R. § 541.3 directs a finding that RTFC captains are non-exempt employees is without merit. The RTFC captains' primary duty is management of the stations to which they are assigned and thus, they are exempt employees.

---

[1] Interpretations contained in DOL opinion letters are not controlling, but are entitled to respect to the extent they have the power to persuade. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

## CONCLUSION

Based on the foregoing, the Court finds that the undisputed evidence in this case is sufficient to find that the RTFC captains are exempt employees under the current regulations and not entitled to overtime pay. Plaintiffs' motion for summary judgment on the executive exemption (D.E. 154) is DENIED. Defendant's motion for partial summary judgment on the executive exemption (D.E. 166) is GRANTED.

ORDERED this 13th day of February, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE