UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE DALE MARTINEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-295 |
| | § | |
| REFINERY TERMINAL FIRE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Plaintiffs allege that Refinery Terminal Fire Company (RTFC) violated provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and owes them back wages. The Court previously determined that RTFC violated the FLSA when it made improper deductions from employees' salaries. Pending are the parties' motions for the determination of damages: (1) RTFC's motion for partial summary judgment for determination of the regular rate (D.E. 235) and the responses and replies thereto (D.E. 244, 245, 250, 251) and (2) Plaintiffs' motion for summary judgment on the proper measure of damages (D.E. 237) and the responses and replies thereto (D.E. 248, 249, 257). Also pending is Plaintiffs' motion to strike the unsworn expert reports of Patricia Slate and Donald Deere (D.E. 255, 256) and RTFC's response and motion to file sworn declarations from Slate and Deere (D.E. 258). In addition, the parties have filed cross motions for summary judgment on this issue of whether the FLSA violations were willful (D.E. 234, 243, 249, 254, 258).

The Court held a hearing on the motions to determine damages on November 14, 2014. At the hearing, the Court found that RTFC had not met its burden to show that the pay for the additional time worked (ATW) and callout hours (CO) fell within the exclusions set forth in 29 U.S.C. §§ 207(e)(5) & (6). The Court found that ATW & CO pay was additional compensation for hours worked and was not an overtime premium because such pay was received during regular hours worked as well as when the employee had worked fewer than regular hours.

Based on this finding, the Court held that, in addition to RTFC violating the fluctuating workweek (FWW) method of compensation by making improper deductions, RTFC also violated it by improperly characterizing ATW and CO pay as overtime premiums. As a result of this additional pay, the Plaintiffs' salary varied with the number of hours worked and thus was not fixed.

Consequently, the Court stated that in determining the regular rate of pay, the total compensation would include the salary plus ATW and CO pay. The Court must now address whether the total compensation will be divided by 40 hours, the scheduled hours worked, or by all hours worked. After further review and as more fully discussed below, the Court orders that the total compensation shall be divided by all hours worked to determine the regular rate. Additionally, the Court finds that RTFC willfully violated the FLSA which results in the three-year statute of limitations being applicable.

At the hearing, the Court denied RTFC's motion to exclude the opinion and testimony of Bryan Farrington (D.E. 236) and RTFC's motion to exclude the opinion and testimony of David L. Kern (D.E. 241). Because the Court has ruled in favor of the

Plaintiffs on the issue of willfulness, the Court finds that Plaintiffs' motion to strike the reports of RTFC's experts (D.E. 255, 256) and RTFC's motion to file sworn declarations of these experts (D.E. 258) are moot.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue is proper in this court because a substantial part of the actions about which Plaintiffs complain occurred in Nueces County, Texas, which is located in the Southern District of Texas.

## BACKGROUND

RTFC is a private not-for-profit company that provides firefighting and related services to refineries and petrochemical facilities.  The organization is owned by its members, primarily petrochemical refineries, who pay an annual assessment for access to fire protection.  RTFC has a main station and five in-plant stations, four of which are located in Corpus Christi and one which is located in Port Arthur, Texas.  RTFC employs more than 100 full-time firefighters and Plaintiffs are current and former employees of RTFC.

Beginning in 2004, RTFC began using the FWW method to pay its employees and continued to use that method until December 31, 2011, when it switched back to a traditional method of paying an hourly wage plus time-and-a-half for overtime. Plaintiffs' hours fluctuated as they normally worked 24-hour shifts followed by 48-hour periods when they were off, which resulted in their working forty-eight hours one week and seventy-two hours the next week.  In addition, Plaintiffs often worked more than the

regular forty-eight or seventy-two hours in a workweek and the extra hours were classified as "additional time worked" (ATW) or "callout" hours, depending on the duties performed. Also, Plaintiffs sometimes received a $50 lump sum payment if they appeared to work within thirty minutes after being called when they were scheduled to be off, described as "reporting pay".

Plaintiffs filed this lawsuit on September 9, 2011. Several motions for partial summary judgment have been filed and ruled upon by the Court. On January 15, 2014, the Court granted a motion for partial summary judgment filed by Plaintiffs on the FWW method when it found that RTFC had violated the FWW method by making improper deductions from employees' pay (Transcript of Hearing held Jan. 15, 2014, D.E. 196 at 51). The Court also found that lump sum "reporting pay" was properly excluded from the regular rate of pay by RTFC under 29 C.F.R. § 778.222 (*Id.*, D.E. 196 at 7-8). The Court also ruled that the Motor Carrier Exemption did not apply to Plaintiffs (D.E. 192), and that employees classified as Captains were subject to the Executive Exemption, with the result that they were dismissed from the lawsuit (D.E. 198, 228). The remaining Plaintiffs are proceeding via a collective action (D.E. 54, 228).

The issues addressed herein are (1) whether the FLSA violations by RTFC were willful, and (2) the number of hours to be used for the denominator to determine the regular rate of pay.

## APPLICABLE LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). In making this determination, the court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Generally, the court will not weigh the evidence or evaluate the credibility of witnesses. *Caboni v. General Motors Corp*., 278 F.3d 448, 451 (5th Cir. 2002).

The movant bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates there is an absence of evidence to support the nonmovant's case, the nonmovant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita*, 475 U.S. at 587. To sustain this burden, the nonmovant cannot rest on the mere allegations of the pleadings. *See Celotex*, 477 U.S. at 324; *Caboni*, 278 F.3d at 451; Fed.R.Civ.P. 56(e). After the nonmovant has been given an opportunity to

raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Caboni*, 278 F.3d at 451.

Where there are cross-motions for summary judgment, the party bearing the burden of proof at trial must satisfy not only the initial burden of production on the summary judgment motion by showing that there is no genuine issue of material fact, but also the burden of persuasion on the claim itself by showing that it would be entitled to judgment as a matter of law at trial. *Provenza v. Gulf South Administrative Services, Inc.*, 67 F.Supp.2d 617, 619 (M.D. La. 1999). Each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *American Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2012). If there is no genuine issue of fact and one party is entitled to prevail as a matter of law, the court may render summary judgment. *Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 539 (5th Cir. 2004).

The parties in this case agree that the issues have been fully briefed and all relevant evidence is before the court. The parties have further stipulated that any issues of fact will be tried by the Court without a jury. Accordingly, the Court may draw inferences from the evidence. *American Century Proprietary Holdings, Inc. v. American Century Cas. Co.*, 295 F.App'x 630, 634 (5th Cir. 2008).

## II. Willfulness

The Court has determined that RTFC violated the FLSA because of the improper use of the FWW method of compensation. Specifically, the Court found that improper

deductions from some of Plaintiffs' salaries and the payment of ATW and CO pay violated the FWW method and thus violated the FLSA. The issue of the willfulness of the violations is relevant to whether a two-year or three-year statute of limitations applies. 29 U.S.C. § 255(a). If a defendant is found to have willfully violated the FLSA, it is liable for violations in the three years preceding the filing of the lawsuit. If the violations were not willful, the defendant is liable for violations in the two years preceding the filing. *Id.; Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903, 923 (E.D. La. 2009).

The word "willful" "is generally understood to refer to conduct that is not merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). It refers to situations where an employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute. *Id.* (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)). Plaintiffs have the burden of showing willfulness. *Stokes v. BWXT Pantex, LLC,* 424 F.App'x 324, 326 (5th Cir. 2011).

The Fifth Circuit found that an employer acted willfully when the evidence showed that the employer had actual knowledge that it was violating the FLSA but continued to do so. *Singer v. City of Waco*, 324 F.3d 813, 822 (5th Cir. 2003). Similarly, the court found willfulness where evidence showed that an employer was put on notice by the local wage and hour board that its practices violated the overtime law but continued its practices without further investigation. *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994); s*ee also Carman v. Meritage Homes Corp.,* No. 4:11-CV-1824, 2014 WL 3919749 (S.D. Tex. Feb. 28, 2014) (evidence that employer told employees to not

report all their hours worked coupled with citations to FLSA in employee handbook was sufficient for factfinder to find willfulness).

Conversely, where an employer discussed minimum wage requirements with the Texas Employment Commission and reviewed brochures and pamphlets prior to making a compensation decision, the Fifth Circuit affirmed a district court's conclusion that the employer had not acted with reckless disregard that it was violating the FLSA. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990). Nor was knowledge that a female employee filed complaints about being paid less than her male counterparts enough to make a finding that an employer knew or recklessly disregarded the fact that its pay scale violated the FLSA. *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University*, 579 F.3d 546, 553 (5th Cir. 2009). Also, in *Local 889, American Federation of State, County and Municipal Employees v. Louisiana*, 145 F.3d 280, 284 n. 2 (5th Cir. 1998), the court found that the fact that the State of Louisiana paid employees overtime before it was legally required to do so weighed against a finding of willfulness on the State's failure to pay the same employees for a fifteen-minute roll call period every morning. In *Burns v. Blackhawk Management Corp.*, 494 F.Supp.2d 427, 436 (S.D. Miss. 2007), a district court found that an employer did not act willfully in making a decision about overtime because when an employee complained about his compensation, the employer obtained and read a copy of the applicable regulation before determining that the employee was exempt. The employer also asked another employee, who had a law degree, to review the issue. In addition, the Department of Labor (DOL) ultimately investigated the issue and reached the same conclusion as that reached by the employer.

The court found that under these circumstances, any failure to pay overtime required by the relevant regulation was not willful.  *Id.*

Regarding the issue of improper deductions in this case, RTFC was aware of DOL policies that an employer utilizing the FWW scheme of compensation may not make deductions from an employee's salary for absences occasioned by the employee, except in situations of willful absences or tardiness or for infractions of major work rules.  Even in those circumstances, deductions cannot be made if they cut into the required minimum wage or overtime compensation.  *See* DOL Opinion Letter, FLSA2006-15, 2006 WL 1488849 (May 12, 2006).  In particular, the opinion letter states that an employer "may not make full day deductions from the salary of its fluctuating workweek employees when the employee has exhausted his or her sick leave bank or has not yet earned enough leave to cover the absence."  *Id.* at *1. It is undisputed that RTFC's counsel provided a copy of this letter to RTFC when the letter was published (Depo. of Keith Sieczkowski at pp. 45-46; D.E. 234-1 at 2-3).

Despite the language of the opinion letter, RTFC described the following policy in its handbook:

> New Hires will begin accruing annual PTO [Paid Time Off] <u>after</u> their first 30 days of employment.  New Hires, who have not completed their first year of service and are therefore not eligible for annual PTO use, shall nevertheless be authorized to use up to 24 hours of accrued annual PTO for absences due to illness and/or injury.  Any such annual PTO use will reduce any annual PTO that may otherwise be available during the next year.

*RTFC Employee Handbook* at "Paid Time Off (PTO) Policy," p. 2 (D.E. 147-2 at 59) (emphasis in original).  The policy does not specify what happens if an employee is sick

or otherwise needs to use more than 24 hours of PTO during the first year of employment. RTFC's expert, Patricia Slate, pointed to one incident involving Plaintiff Cody Brogue, a firefighter trainee at the time, who missed eight hours without pay in his sixth week of work and before he had accrued any PTO (Report of Patricia Slate at p. 16; D.E. 243-5 at 16; Payroll worksheet for Cody Brogue, D.E. 169-4 at 2). Another firefighter trainee also missed work and was not paid, apparently because he had already exhausted his 24 hours of PTO (Slate Report at p. 16; D.E. 243-5 at 16; Payroll worksheet for Marcus Collins, D.E. 169-4 at 6). RTFC presumably decided to not pay these employees on the days they took off pursuant to its "new hire" policy, and the failure to pay them was at the very least reckless, given the clear instruction from the DOL on the issue. *See also Brantley v. Inspectorate America Corp.*, 821 F.Supp.2d 879, 891 (S.D. Tex. 2011) ("Under the FWW, employers are not allowed to make deductions to an employee's fixed salary for sick leave or vacation leave, even if the employee has not yet accrued sufficient leave to cover their absence.")

Other firefighter trainees also missed work and were not paid (Payroll worksheets of Jared Brannon, D.E. 169-4 at 4-5; Herman Contreras, Jr., D.E. 169-4 at 7; Christopher Hoefel, D.E. 169-4 at 13; Arturo Lopez, D.E. 169-4 at 15; Jacob McDaniel, D.E. 169-4 at 19; Matthew Mitchell, D.E. 169-4 at 21; Matthew Rives, D.E. 169-4 at 24; Gabriel Salinas, D.E. 169-4 at 26; Steven Sendejo, D.E. 169-4 at 27-28 and Justin Serna, D.E. 169-4 at 29). However, nothing in the evidence submitted by Plaintiffs indicates why RTFC determined that the leave would be uncompensated. If RTFC did not compensate the employees because they were ill or otherwise unable to come to work, the failure to

compensate them would, as described above, be a willful violation of the FWW method of compensation.  Conversely, if the leave was uncompensated for another reason, either because it was a willful, unexcused absence, or because the employee was suspended for a day as a disciplinary measure, RTFC would not have committed a violation, willful or otherwise.  *Brantley*, 821 F.Supp.2d at 892.  Plaintiffs, who have the burden of proof on this issue, have not provided evidence from which the Court can conclude that RTFC violated the FLSA with respect to these Plaintiffs or that if it did so, that it was a willful violation.

Regarding other employees, Plaintiffs assert that RTFC willfully violated the FLSA when it deducted from salaries of employees with insufficient PTO because they missed work for a variety of non-willful reasons such as calling in sick, locking keys in a car, going to a funeral, and when they were stranded and could not go to work because of Hurricane Ike.  Plaintiffs cite broadly to several multi-page exhibits which they claim support their claim (*See* Plaintiffs' Mot. for Sum. Jmt. On Willfulness at p. 7, n. 10; D.E. 234 at 7, citing D.E. 151-3, 169-4 and 169-5).

A review of the documents reveals that some of Plaintiffs' allegations are supported by the record and some are not.  Plaintiffs Jason Flores, Arturo Lopez, David Mireles, Anthony Mixon, and Juan Rodriguez all were suspended without pay for violations of major work rules (D.E. 151-3 at 2-37).  Such suspensions are allowed under the FLSA statute and regulations, as long as the deductions do not cut into the required minimum wage or overtime compensation.  DOL Opinion Letter, FLSA2006-15, 2006 WL at *1 (D.E. 234-4 at 1).  *Brantley*, 821 F.Supp.2d at 892.  In addition, each of the

suspensions was for one to two weeks.  Under the FWW method, an employer is not required to pay an employee for weeks in which no hours are worked.  *See* DOL Opinion Letter, 1991 WL 11648489 at *1 (Aug. 20, 1991) (no reductions may be made from salary *provided employee performs any work during the workweek*) (emphasis added) and Deposition of Bryan Farrington at 54-55 (D.E. 234-8 at 5).

Also, firefighters classified as "FF1" or "FF2" missed work and were not paid (Payroll worksheets of Joe Gonzalez, D.E. 169-4 at 10; Paul H. Garza, D.E. 169-4 at 11; Ryan Marshall, D.E. 169-4 at 18; Mark McKinley, D.E. 169-4 at 20; Christopher Don Powell, D.E. 169-4 at 23; Jeremy Williams, D.E. 169-4 at 31).  However, without an explanation from Plaintiffs regarding why they were absent, the Court cannot conclude that their pay was docked in violation of the FLSA.

The only violations apparent in D.E. 151-3 are the three occasions when RTFC did not pay Adam Walton when he was out.  On December 9, 2008, Walton missed work because of an emergency, and on December 17, 2008 and December 16, 2010, he called in sick.  In the first two incidents, Walton did not have any PTO and it is unclear why he was not paid the third time (D.E. 151-3 at 43, 45-46, 48, 50).  These failures to pay him were violations of the FLSA and given the clear statements by the DOL regarding deductions for employees who have no PTO, the violations were willful.

Plaintiff Walton also was suspended without pay for twelve hours on October 21, 2008, following a violation of safety rules (D.E. 151-3 at 39-41).  This is considered suspension without pay for violation of a major work rule and thus was not a violation of the FLSA.

Regarding employees who were not paid when they missed work because of a hurricane, Plaintiffs Matthew Rives, Thomas Bennett, and Marcus Collins did not work at all during the workweek (D.E. 169-5 at 3, 9, 11) and it was not a violation of the FLSA for RTFC to not have paid them for the days they missed.  The other Plaintiffs who missed work because of the hurricane, Justin Newcomb, Mario Rodriguez, Justin Serna, Matthew Mitchell, Gordon Means, Jacob McDaniel, Matthew Burgos, Herman Contreras, Jr., Thomas Cruz, Zachery Fritz, Grant Funderburg, and Christopher Hoefel, all worked at least a few hours during the week of the hurricane (D.E. 169-5 at 2, 4, 5, 6, 7, 8, 10, 12, 13, 14, 15, 16).  Given the clear directive by the DOL regarding other-than-willful absences occasioned by employees, RTFC's deduction for the hours missed because of a hurricane was a willful violation of the FLSA.

Two employees, Steve Hogue and Fidencio Lopez, were not paid when they called in sick (D.E. 169-5 at 17, 20).  These were willful violations of the FLSA.  Plaintiff Marcos Munoz was not paid for 23.25 hours when he called in sick, apparently because he had exhausted his PTO.  However, because he did not work at all during the week, failure to pay him did not result in a violation of the FLSA (D.E. 169-5 at 19).

Regarding the allegation that an employee was not paid when he missed work for a funeral, the only reference to funeral leave was for Ruben Cortez when he missed work on August 23, 2010 (D.E. 169-5 at 22).  According to RTFC's expert, Cortez missed his very first day of work at RTFC because of the funeral, and employees paid under the FWW method may be paid a pro rata share of their salary in their first and last weeks of work (Slate report, D.E. 243-5 at 17) (citing the Field Operations Handbook at

32b04b(c); Cortez Payroll Records, D.E. 169-4 at 9).  Plaintiffs offered no evidence to the contrary, and the Court finds that failure to pay Cortez that day was not a violation of the FLSA, willful or otherwise.

Also, although Plaintiffs allege that an employee's pay was docked when he was late because he locked his keys in the car, Plaintiffs point to no evidence in the record to support this assertion.   The only reference to keys being locked in a car was a memorandum from Plaintiff Arturo Lopez explaining that he was late to work because he had locked his keys in his car.  There is a notation on the memorandum indicating that the tardiness was excused (D.E. 243-3 at 4).

In sum, although all of Plaintiffs allegations regarding deductions are not supported by the evidence in the record, Plaintiffs are correct that RTFC willfully violated the FLSA by making some improper deductions from employee salaries on several occasions.  Thus, the three-year statute of limitations applies.

Because the Court has found that the FLSA violations based on improper deductions were willful, the Court does not find it necessary to address whether the ATW and CO payments were willful violations of the FLSA.

## III.  DAMAGES CALCULATION

### A.  Effect of FWW Violation

Plaintiffs argue that because RTFC violated the FWW compensation method, such method no longer applies to any of the compensation received by them.  They further argue that if the FWW method does not apply, their salaries for the three years in question must be recalculated using the non-FWW formula of dividing their total

compensation for a workweek by forty hours to determine their regular rate of pay and then calculating their overtime pay at time-and-a-half the regular rate for all hours over forty and subtracting the amount of overtime they already received.  This formula will hereinafter be referred to as the "FLSA default formula."

Plaintiffs cite, among other cases, this Court's order denying summary judgment in *Gomez v. Crescent Services, LLC.*, No. 2:13-CV-130, 2014 WL 2593091 at *6 (S.D. Tex. June 10, 2014), arguing that *Gomez* stands for the proposition that if an employee proves a misuse of the FWW method, the employee is entitled to compensatory damages as described above.  However, the order in *Gomez* rested on a different set of facts and a different criterion of the FWW method than are under consideration in this case.  In *Gomez*, the plaintiffs alleged that their fixed salary often failed to pay them minimum wage because they worked too many hours.  *Id.* at *3.  Under the FWW method, the employer must assure that the fixed salary is sufficient to provide compensation of not less than minimum wage for every hour worked in the workweek.  29 C.F.R. § 778.114(c).  The DOL has issued letters stating that the FWW pay plan fails if the salary is not reasonably calculated to provide that the statutory minimum wage is paid for the first forty hours of the week.  *Gomez* at *4.  After examining the letters and the opinion in *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884 (E.D. Tex. 1997), this Court stated the following:

> If an employee proves a misuse of the FWW method *and a finding is made that the employer regularly violated the minimum wage criterion*, the employee is entitled to compensatory damages equal to the difference between the amount of overtime compensation owed when total remuneration is divided by forty, the result is multiplied by 1.5, and that

product is multiplied by the number of hours over forty; and the amount of overtime compensation actually paid in each week the FWW method was used.

*Gomez* at *6 (emphasis added) (citing *Cash*, 2 F.Supp.2d at 896).

Plaintiffs omit the italicized portion of the paragraph when they cite *Gomez* (D.E. 244 at 19), but it is an essential element of the decision.  In *Gomez*, this Court looked to the DOL letters which made clear that when compensation repeatedly fell below minimum wage, the FWW method fails.  Plaintiffs here do not argue that RTFC ever failed to pay them minimum wage and *Gomez* does not stand for a broad mandate that any misuse of the FWW method renders it inapplicable to a calculation of damages.

Several district courts have held that violating the FWW method by making wrongful deductions means that all wages must be recalculated using the FLSA default formula.  In *McCumber v. Eye Care Centers of America, Inc*., No. Civ.A. 09-1000, 2011 WL 1542671 (M.D. La. April 20, 2011), the court addressed the employer's motion seeking a judgment that any wages found to be due the plaintiff be calculated using the FWW method.  *Id.* at 11.  The employer argued that it was undisputed that the employee was paid a fixed salary regardless of the number of hours he worked, but the court found that on two occasions he had failed to work 80 hours in a two-week period and eight hours of pay was deducted from his salary.  *Id.* at 12.  The court declined to apply the FWW method to the case and instead held that any overtime found by the jury to be owed to the employee would be calculated under the FLSA default formula.  *Id.  See also Ayers v. SGS Control Services, Inc.*, Nos. 03 Civ. 9078(RMB), 06 Civ. 7111(RMB), 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) (violation of FWW results in fall back to FLSA default

formula) and *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 WL 1644066 (D.N.J. Apr. 22, 2010) (followed *Ayers*, finding that FLSA default formula applies to plaintiffs who have suffered FWW violation).

However, in *Conne v. Speedee Cash of Mississippi, Inc.*, 246 F.Appx. 849, 851 (5th Cir. 2007),[1] the court found that a single instance of a wrongful deduction would not bar an employer from using the FWW method for calculating future pay.   Also, in *Cash*, 2 F.Supp.2d at 884, the court first stated that if an employer violated the FWW clear understanding criterion, the full schedule criterion, or both, damages would be calculated using the FLSA default formula.   *Id.* at 896.   Notwithstanding that comment, the court found that occasional docking of pay for illness for which no sick time was available did not cause the FWW method of pay to be unavailable to the employer.   *Id.* at 899, 906.   In addition, in *Brantley*, 821 F.Supp.2d at 889, 892-893, the court found that the employer violated the FWW method by making impermissible salary deductions and also by paying offshore, day-off, and holiday premiums.   Nevertheless, the court did not find that the FLSA default formula was applicable, but employed a different formula, dividing

---

[1] Plaintiffs assert that unpublished opinions have no precedential value, citing Fifth Circuit Rule 47.5.4, which states that unpublished opinions issued on or after January 1, 1996 are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case, but an unpublished opinion may be cited pursuant to Fed. R. App. P. 32.1(a).   Under Fed. R. App. P. 32.1, a court may not prohibit or restrict the citations of federal judicial opinions, orders, judgments, or other written dispositions that have been designated as "unpublished" or "not-precedential"  and issued on or after January 1, 2007.   Those rules apply to procedures in the Fifth Circuit Court of Appeals.   Also, the Advisory Committee Notes state that the rule is extremely limited and says nothing about what effect a court must give to one of its unpublished opinions or the unpublished opinion of another court.   Rather, the rule addresses only the citation of federal judicial opinions that have been designated "unpublished" or "non-precedential."

total compensation by the number of hours actually worked to determine the regular rate of pay and amount of overtime due for hours worked over forty.  *Id.* at 894-895.

Plaintiffs contend that not applying the FLSA default method would allow RTFC to reap the benefit of a failed FWW plan and receive a windfall not intended under the law.  But the FLSA describes penalties for employers who violate the statute:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).  If an employer fails to follow the regulations with the result that it fails to pay its employees properly under the statute, the employees' remedy is to receive the compensation to which they would have been entitled had the employer followed the law.  In addition, the statute provides for liquidated damages.  Although the statute giving employees the right to sue for unpaid overtime is compensatory, it is also an enforcement provision.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709 (1945).  "And not the least effective aspect of this remedy is the possibility that an employer who gambles on evading the Act will be liable for payment not only of the basic minimum originally due, but also damages equal to the sum left unpaid."  *Id.*

Determining what amount of compensation Plaintiffs were entitled to under their agreement with RTFC and assessing an equal amount of compensation as liquidated damages will compensate Plaintiffs and act as a sanction against RTFC for its failure to abide by FWW requirements.  Accordingly, the Court declines to apply the FLSA default

formula and instead orders the parties to calculate damages using the formula discussed below.

### B.  Determining the Regular Rate

Overtime rates are calculated at one and one-half times an employee's regular rate of pay, or in the FWW context, at one-half the regular rate of pay.  29 U.S.C. § 207(a)(1); 29 C.F.R. §778.114.  "Regular rate" is broadly defined as the hourly rate actually paid the employee for "all remuneration for employment."  29 U.S.C. § 207(e).  "The 'regular rate' becomes a mathematical computation once the parties have decided on the amount of wages and the mode of payment, which is unaffected by any designation to the contrary in the wage contract."  *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010) (citing *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 441 (1948)).

As mentioned above, the Court determined at the hearing on November 14, 2014, that for purposes of determining the hourly rate, all compensation received by Plaintiffs, including salary and ATW and CO pay, would be included in the numerator.  At issue is whether 40 hours, the scheduled number of hours, or all hours worked in a week should be used in the denominator.

Plaintiffs argue initially that the denominator should be forty, the number of hours in the standard workweek.  However, Plaintiffs never worked a standard forty-hour workweek and their argument is without support in the case law.  Evidence in the record shows that Plaintiffs worked an average of fifty-six hours per week, not counting ATW

or CO hours.  Therefore, the Court considers whether the denominator should be fifty-six hours, or the actual number of hours worked in a given week.

The *Brantley* court stated that "[i]n order to determine the regular hourly rate of pay, the Court must ascertain the number of hours per week the salary was 'intended to compensate.' . . . This intended number of hours can be determined by examining what happens under the employment contract, and may include non-overtime and overtime hours." *Id.* at 893 (citing 29 C.F.R. § 778.113(a) and *Singer v. City of Waco, Tex.*, 324 F.3d 813, 824 (5th Cir. 2003)).  Payroll records in *Brantley* showed that the number of hours worked by employees varied greatly from week to week and frequently did not correspond to a forty hour week, which weighed against calculating their pay based on a forty-hour workweek.  *Id.* at 893-894.  In addition, the *Brantley* court found that even though the employer violated the FWW's requirements of a fixed salary and "clear mutual understanding," because it informed employees that it intended to pay them under the FWW method, the employees were on notice that their non-overtime compensation did not correspond to a forty hour workweek.  *Id.* at 894.

In *Singer*, when the Fifth Circuit discussed the regular rate of pay for municipal fire fighters, it determined that even though the firefighters had not been adequately compensated, their paychecks were intended to compensate them for all of their regularly scheduled non-overtime and overtime hours.  Thus, the overtime and non-overtime hours were included in the divisor when determining the regular rate.  *Singer*, 324 F.3d at 824-825.  Similarly, in *Urnikis-Negro v. American Family Property Services, Inc.*, 616 F.3d 665, 681 (7th Cir. 2010), the Seventh Circuit found that the starting point for calculating

the regular rate of pay is deciding what number of hours the fixed weekly pay was intended to compensate.

Payroll worksheets from a sample group of RTFC employees show that their hours varied widely. For example, in records for Ryan Barbato for 2011, the number of hours he worked in a two-week period ranged from 120 to 184 (Ex. 6 to Plaintiffs' MSJ on the Prop. Meas. Dmgs., D.E. 238 at 1-26). Like in *Brantley*, the variation in hours worked weighs against using fifty-six hours as the denominator and weighs in favor of using the actual number of hours worked.

Defendant presented evidence that it had an agreement with its employees regarding compensation. Documents signed by employees in 2004 explained the standard FWW method of salary computation and the overtime premium:

> It was explained that as of January 1, 2004, and, thereafter, *I would be paid a fixed salary for all hours worked* and that I am entitled to additional half-time pay for any hours worked above 40 in any workweek. I understand that my acceptance to such payment method is a condition of continued employment with RTFC.
> . . .
>
> bi-monthly salary x 24 ÷ 52 = weekly salary
>
> weekly salary ÷ hours worked = weekly hourly rate
>
> weekly hourly rate ÷ 2 = half-time rate
>
> half-time rate x hours worked over 40 = <u>minimum</u> FLSA overtime due
>
> Under this payment method my hourly rate and overtime rate for any given week will vary based on the actual number of hours worked.

> This explanation of computing my overtime provided above and during my training, describes the minimum hourly rate and overtime payments required. RTFC, however, has agreed to pay overtime at a fixed hourly rate that is equal to or exceeds the required minimum half-time rate. At this time, RTFC has agreed to pay overtime at a flat hourly rate in accordance with the attached chart.

(Ex. C to Resp. to MPSJ; D.E. 157-4) (emphasis added). There was no chart attached to the exhibit, but based on the language in the agreement and other evidence in the record, it is assumed that the chart set out the overtime, ATW and CO rates.[2]

Based on the language in the document, it is clear that the salary was intended to cover all hours worked. While RTFC ran afoul of the FWW method in its attempts to characterize ATW and CO pay as overtime premiums and in making wrongful deductions, that conclusion does not alter the fact that in the original agreement, the notion that the salary was intended to cover all hours worked was unambiguous. Thus, looking to *Brantley*, the Court concludes that when determining the regular rate, the parties must use all hours worked as the denominator.

## CONCLUSION

For the foregoing reasons, the Court finds that RTFC willfully violated the FLSA by improperly implementing the FWW method of compensation and that the three-year statute of limitations applies. The Court further finds that for purposes of determining damages, the regular rate of pay is the total compensation received by a Plaintiff, including salary, ATW pay, and CO pay, divided by the total number of hours worked by

---

[2] *See, e.g.*, Non-Exempt Salaried Pay Scale and Rate Structure, Eff. January 1, 2011 (Ex. C. to First Amd. Compl., D.E. 10-3 at 1).

the Plaintiff.  In addition, the Court finds that Plaintiffs are entitled to liquidated damages in an amount equal to the unpaid compensation due.

ORDERED this 16th day of December, 2014.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE