United States District Court
Southern District of Texas
**ENTERED**
September 02, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE DALE MARTINEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-00295 |
| | § | |
| REFINERY TERMINAL FIRE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART APPLICATION FOR ATTORNEY FEES, COSTS, AND EXPENSES

Pending before the Court is Plaintiffs' Application for Attorney Fees, Costs, and Expenses (D.E. 284). The parties have provided extensive briefing and evidence (D.E. 284, 290, 293, 294-1). Plaintiffs request $3,613,122.00 in attorney's fees and $366,866.56 in costs and expenses. Defendant objects to these amounts on various grounds. For the reasons discussed below, Plaintiffs' motion is granted in part and denied in part. The Court awards Plaintiffs $1,476,411.50 in attorney's fees and $15,731.39 in costs.

## BACKGROUND

Plaintiffs filed this lawsuit as a collective action in 2011, asserting that Defendant, Refinery Terminal Fire Company (RTFC), violated the Fair Labor Standards Act (FLSA) by misapplying the Fluctuating Work Week (FWW) method of compensation. The Court determined that RTFC had violated the FLSA when it misused the FWW method and that it had done so willfully. The Court issued a formula by which the parties were to

calculate actual damages owed to each Plaintiff and also ordered that the actual damage amount be doubled as liquidated damages. The parties have done so and agree that, based on the rulings of the Court, Plaintiffs are entitled to $1,461,446.00 in lost wages and liquidated damages.

Plaintiffs seek attorney's fees for 5,161.60 hours of attorney and paralegal work (Aff. of Craig Sico at pp. 7-10; D.E. 284-1 at pp. 8-11).[1] Plaintiffs seek $550.00 per hour for two senior attorneys and $425.00 per hour for two associates and one contract attorney. Plaintiffs also seeks paralegal compensation at $115.00 per hour. In addition, Plaintiffs seek $366,866.56 in costs and expenses. Defendant objects to both the requested hourly rates and the number of hours reported by Plaintiffs. Defendant also argues that not all of the requested costs and expenses are allowed under relevant statutes and case law.

## APPLICABLE LAW

The FLSA provides that in addition to any judgment awarded to the plaintiff or plaintiffs, a court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In the Fifth Circuit, reasonable attorney's fees are calculated using the lodestar method. *Louisiana Power & Light Co. v. Kellstrom*, 50

---

[1] Although Plaintiffs state that they seek compensation for 5,161.60 hours of attorney and paralegal work, hours submitted for attorneys and paralegals total 5,173 hours, a difference of 11.4 hours. The difference apparently results from an error in the listed hours for paralegal Deanndra Garcia. In the application for attorney's fees, Plaintiffs state that after they exercised billing judgment to arrive at a reduced number of hours spent on the case, Garcia worked 400.95 hours on the case (Mot. for Att. Fees at p. 11; D.E. 284 at p. 11). However, the records attached to attorney Craig Sico's affidavit show that after exercising billing judgment, Garcia worked 412.35 hours, a difference of 11.4 hours (D.E. 284-1 at p. 421). There is discussion in this order about the original hours versus the reduced hours. In order to decrease the chance of confusion, the Court will use 5,161.60 as the number of hours submitted by Plaintiffs after exercising billing judgment. An adjustment is made in the section discussing paralegal compensation to reflect the additional 11.4 hours worked by Garcia.

F.3d 319, 323-24 (5th Cir. 1995).  To determine the lodestar, the court must determine the reasonable number of hours expended by the attorney and the reasonable hourly rate for the attorney.  The court then multiplies the number of hours by the reasonable hourly rate.  *Id*. at 324.  There is a strong presumption in favor of the lodestar amount, but it may be adjusted up or down based on twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).  *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

## A.  Hours Expended

Courts require applicants to provide contemporaneous billing records or other documents which are examined to determine which hours are compensable and which are not.  *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008).  "The party seeking attorneys' fees must present adequately documented time records to the court.  Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented."  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  Plaintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and also of proving that they exercised billing judgment.  *Hensley v. Eckerhart*, 461 U.S. 424, 433-434 (1983).  Counsel exercises billing judgment when it documents hours charged and the hours written off as unproductive, excessive, or redundant.  *Id*. at 434.

In this case, Plaintiffs submitted billing records which they represent as having been prepared contemporaneously with the work being done (Sico Aff. at p. 7 and Ex. G; D.E. 284-1 at p. 8 and pp. 199-437).  Plaintiffs seek compensation for 5,161.60 attorney

and paralegal hours for work done up until December 14, 2015 (D.E. 284 at p. 11; Sico Aff. at pp. 7, 10; D.E. 284-1 at pp. 8, 11).  According to Plaintiffs, prior to exercising billing judgment, their billing records indicated that they had expended 5,610.20 hours (Sico Aff. at p. 10; D.E. 284-1 at p. 11).  The 448.60 hours voluntarily deleted by Plaintiffs represent hours that were duplicative, excessive, for clerical work, or for work that was expended on two of Plaintiffs' motions that were denied by the Court (Sico Aff. at pp. 9-10; D.E. 284-1 at pp. 10-11).

Defendants make the following objections to Plaintiffs' billing records: (1) Some of the hours are duplicative, represent "over-lawyering," or are excessive for the task;  (2) Some of the records do not appear to have been made contemporaneously, are vague, and contain inconsistencies; (3) Some of the entries are for time spent on unsuccessful motions; (4) Some of the entries are for block billing; and (5) Some of the entries are for clerical and non-billable work.  Defendants argue that the original 5,610.20 attorney and paralegal hours submitted by Plaintiffs should be reduced by 1,302.30 hours to 4,307.90.

As an initial matter, it does not appear that Defendant's expert, Dawn Finlayson, reviewed the reduced hours submitted by Plaintiffs after they exercised billing judgment, attached as part of Exhibit G to the Affidavit of Craig Sico (D.E. 284-1 at pp.  224-246, 259-269, 292-307, 342-375, 381-385, 397-407, 415-421, 430-437).  In some cases, the excessive hours about which Defendant complains were already reduced by Plaintiffs.  Also, Plaintiffs reduced hours about which Defendant did not complain.  The Court uses the reduced hours attached as Exhibit G to the Sico Affidavit as the starting point for all calculations.

In response to Defendant's objections to the number of hours claimed, Plaintiffs' expert, David Kern, stated that he reviewed Plaintiffs' submitted hours and subtracted time spent on clerical work and for other reasons. In total, Kern recommended reducing Plaintiffs' time by 132.40 hours, which represented 67.45 hours of attorney time and 64.95 hours of paralegal time (Decl. of David Kern at pp. 41-42 and summary; D.E. 297-7 at pp. 42-43 and 203). However, like the Defendant's expert, Kern subtracted the 132.40 hours from the original 5,610.20 hours expended by Plaintiffs' counsel, rather than from the reduced 5,161.60 hours submitted by Plaintiffs after exercising billing judgment. Therefore, Kern's reductions are not helpful, because the resulting hours claimed, 5,477.70, are actually greater than the 5,161.60 hours initially claimed.

Plaintiffs state that they adopted Kern's recommendations and incorporated them into an amended lodestar (Pl's. Reply, D.E. 293 at p. 11). However, in light of the earlier sworn statement submitted by Plaintiffs' lead counsel that the original hours were true and correct and represented the exercise of billing judgment, the Court will use 5,161.60 hours as the benchmark for evaluating Plaintiffs' application for fees. *Watkins*, 7 F.3d at 457. This represents 4,497.10 hours of attorney time and 664.50 hours of paralegal time.

**(1) Excessive or Duplicative Hours**

Defendant's expert, Finlayson, submitted a report in which she stated that some of Plaintiffs' time entries were excessive. In particular, she stated that Plaintiffs' counsel spent too much time on deposition preparation, emails, and reviewing pleadings and suggested that less time would have been sufficient for the tasks.

In many of the cases, the expert's suggestions to reduce the amount of time spent appear arbitrary, such as reducing review of an email from 9 minutes to 6 or 3 minutes, or not suggesting a reduction at all. (*See, e.g.*, Finlayson's adjusted billing records for Craig Sico at p. 8; D.E. 290-1 at p. 27.)[2]   The suggested cuts by Defendant's expert for deposition preparation also appear to be arbitrary.   For example, while the expert may believe that preparation for a deposition should have taken less time than Plaintiffs claimed, the amount of preparation time necessary would have depended on the witness, the subject matter of the deposition, and the number and type of records that may have been referenced.   (*See e.g.,* Finlayson's adjusted billing records for Clif Alexander at pp. 13, 19; D.E. 290-1 at pp. 58, 64).   In many instances, rather than provide relevant argument that the hours are excessive, Defendant's expert appears to simply second-guess the amount of time that should have been spent on various tasks. (*See, e.g.*, Finlayson's adjusted billing records for Tara Hoelscher at p. 1; D.E. 290-1 at p. 75; suggesting that one hour, rather than two hours, is a reasonable time for an attorney conference on case issues and litigation strategy, and also suggesting that one hour, rather than three-and-a-half hours, is reasonable for an extensive conference with trial team regarding various issues).

---

[2] Although Defendant's expert made notes on the billing records about her recommendations for reducing time, she did not cite to particular notations or entries in the billing records in the text of her report.   There are almost 100 pages of billing records with approximately 36 entries per page (Report of Dawn Finlayson, D.E. 290-1).   The Court cites to representative examples rather than each particular entry when discussing proposed reductions in billing time.

The Court has reviewed the billing records as well as Defendant's suggested reductions and finds that the hours were not excessive for the tasks. Thus, the Court declines to make the reductions in time suggested by the expert.

Defendant's expert also argues that there are instances where time records are duplicated, either identically or where the entry is changed but wording indicates duplication. The expert recommends that where one attorney's entry is an exact copy of another attorney's entry, the time should be reduced or eliminated because the attorneys could not have been doing identical work. However, the fact that entries for different attorneys contain the same wording does not lead to the conclusion that the time was not spent on the task. Indeed, in many cases the entry consists of "Review" followed by the name of the document being reviewed. (*See, e.g.*, Finlayson's adjusted billing records for Craig Sico at p. 2; D.E. 290-1 at p. 21 and adjusted billing records for Roger Braugh, Jr., at p. 2; D.E. 290-1 at p. 37). Nor does the fact that one attorney reviewed or worked on a document mean that another attorney did not perform billable work when he or she also reviewed or worked on the document. Without more, the Court declines to reduce or eliminate time claimed by attorneys for the reason that the description of the work done was identical.

### (2) Vague, Inconsistent, or Non-contemporaneous Entries

Defendant's expert cites to entries in the billing records which appear inconsistent, such as where one attorney has designated time spent in a meeting with other attorneys, but no other attorney has noted the meeting; or when one attorney bills more time than another attorney for what appears to be a routine entry. However, the Court declines to

decrease the billing hours for this reason.  It is possible that attorneys who did not record meetings, or who noted less time spent on a task, were exercising billing judgment, or simply failed to note the time spent.  The Court is not willing to conclude that inconsistent entries among attorneys means that the attorney recording the time was being dishonest or inaccurate with the billing records.

Defendant's expert also noted that some of the billing entries were not made contemporaneously but were added by Plaintiffs to their final billing records. (*See, e.g.*, Finlayson's adjusted billing records for Clif Alexander at p. 19; D.E. 290-1 at p. 64). However, many of these hours were deleted by Plaintiffs after they exercised billing judgment. (*See, e.g.*, Finlayson's adjusted billing records for Craig Sico at p. 13; D.E. 290-1 at p. 32 and Ex. G to Sico Aff., D.E. 384-1 at p. 242).  For the remaining hours, the Court declines to find that the fact that a few entries were not made contemporaneously means that Plaintiffs' counsel was being dishonest or inflating the time spent.  Given the sporadic nature of the non-contemporaneous entries and the small percentage of the overall billed hours they represent, it is likely that the attorneys noted the hours elsewhere at the time the work was done and then entered them into the final billing documentation.

### (3) Time Spent on Unsuccessful Motions

If a litigant brings multiple claims against the same defendants in a lawsuit and prevails only on some of the claims, work on the unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result.  *Hensley*, 461 U.S. at 435. However, when claims involve a common core of facts or are based on related legal theories,  much of the attorneys' time will be devoted to the litigation as a whole, making

it difficult to divide the hours spent on a claim-by-claim basis. *Id.* Nevertheless, if a plaintiff achieved only partial or limited success, a fee based on all the hours expended may be excessive. *Id.* at 436.

There is no precise rule or formula for making the determination. A court may attempt to identify specific hours that should be eliminated, or it may reduce the award to account for the limited success. *Id.* at 436-437. The court has discretion, as long as it is exercised in light of the other considerations outlined in *Hensley*. *Id.* at 437. The Supreme Court concluded:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . . Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* at 440.

Plaintiffs' counsel stated via affidavit that part of the 447.40 hours they cut from their raw hours included time spent on motions in which they were not successful (Sico Aff. at pp. 9-10; D.E. 284-1 at pp. 10-11 and Ex. G to Aff., D.E. 284-1 at pp. 199-437). Defendant argues that the reduction in hours made by Plaintiffs did not account for all the hours spent on unsuccessful motions.

The Court has examined the billing records, the deductions made by Plaintiffs, and the additional recommended deductions by Defendant.  The Court finds that Plaintiffs achieved substantial success in this litigation with the exception of their arguments that captains were not executives and were entitled to relief in the lawsuit.   However, Plaintiffs voluntarily deleted much of the time spent on this claim (Sico. Aff. at pp. 9-10; D.E. 284-1 at pp. 10-11 and Ex. G to Aff., D.E. 284-1 at pp. 296-297, 300, 360-361).

The other deductions Defendant argues should be made are for time spent, for example, on unsuccessful discovery motions and motions to strike pleadings. (*See, e.g.*, Finlayson's adjusted billing records for Craig Sico at p. 14 and for Clif Alexander at pp. 20-21; D.E. 290-1 at pp. 33, 65-66).   The Court declines to make such deductions because although Plaintiffs did not prevail on those motions, they otherwise won substantial relief.

### (4) Block Billing

Defendant seeks to reduce some of the hours claimed by Plaintiffs because they reflect block billing.  Block billing is "a time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534, n. 15 (10th Cir. 1996)).   Block billing is disfavored by courts because the required reasonableness determination is difficult to make when the court cannot accurately determine the amount of time spent on any particular task.  *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 864 (S.D. Tex. 2011).  Although

courts may assess across-the-board reductions for block billing, a finding that an attorney engaged in block billing does not automatically lead to a reduction in the amount of time billed. *Davis v. Perry*, 991 F. Supp. 2d 809, 836 (W.D. Tex. 2014) *rev'd on other grounds sub nom Davis v. Abbot*, 781 F.3d 207 (5th Cir. 2015). The court must evaluate whether the applicant's evidence is sufficient to enable it to determine the reasonableness of the hours expended. *Id*.

Plaintiffs voluntarily deleted some of the block billing entries noted by Defendant. For example, Defendant objected to attorney Tara Hoelscher claiming 5.50 hours for several tasks on March 27, 2013, because of block billing and because Plaintiffs did not prevail on a motion on which Hoelscher worked. Defendant recommended reducing the time to 2.25 hours (Finlayson's adjusted billing records for Tara Hoelscher at p. 7; D.E. 290-1 at p. 81). However, Hoelscher had already reduced the amount of time claimed to .50 hours (Ex. G to Sico Aff., D.E. 284-1 at p. 294). Similarly, Defendant recommends reducing 6 hours of claimed time to 5.5 hours because of block billing and because the time was excessive, but Hoelscher had already reduced the time to 1 hour (Finlayson's adjusted billing records for Tara Hoelscher at p. 9; D.E. 290-1 at p. 83; Ex. G to Sico Aff, D.E. 284-1 at p. 296).

Many of the examples of block billing cited by Defendant are for billing entries where it was noted that time was spent on several emails, or for sending an email and making a telephone call (*See, e.g.*, Finlayson's adjusted billing records for Clif Alexander at pp. 10-11; D.E. 290-1 at pp. 55-56). In no entry did the block billing add up to an entire day. Although in some entries the block billing added up to several hours, the

Court finds that the entries are sufficiently specific to allow the Court to determine whether the amount of time claimed is reasonable.  For example, Clif Alexander entered 6.5 hours of time on June 23, 2014, for "Emails re: MSJ on damages, MSJ on willfulness, damage models, client updates; T/C with clients re: case update."  (*See* Finlayson's adjusted billing records for Clif Alexander at p. 25; D.E. 290-1 at p. 70).  While the entry should have been more segregated, the Court is familiar with the complex issues involved in the summary judgment motions and damage models and concludes that the amount of time spent is reasonable.  *Compare Barrow v. Greenville Independent School Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456 at *4-5 (N.D. Tex 2005) (court found that it could not accurately determine time spent on particular task when attorney typically compiled into one day's entry discrete tasks such as reviewing notes, preparing for discovery, correspondence, drafting pleadings and conducting legal research); *Fabela v. City of Farmers Branch, Tex.*, No. 3:10-CV-1425-D, 2013 WL 2655071 at *7 and n. 14 (N.D. Tex. 2013) (block billed entries for 10.6 hours to "prepare complaint; pursue strategy," 19.5 hours to "prepare complaint; pursue strategy; prepare filing of materials," and similar hours and descriptions were cut drastically by the court).

In addition, the block billing entries make up a small percentage of the billing entries, the vast majority of which are sufficiently segregated and offer sufficient detail. After having carefully examined the billing records, the Court finds that the hours claimed are reasonable for the work performed, even where the hours were submitted in block billing format.

Based on the foregoing, the Court finds that Plaintiffs' claim for 4,497.10 attorney hours is reasonable, given the complexity of the case and the length of the litigation.

**(5) Clerical Work**

Defendant argues that much of the work done by paralegals in this case was for clerical activities and not compensable.   Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical.  *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).  Examples of clerical tasks include calendaring, printing, filing, obtaining information about court procedures, and delivering pleadings.  *Ramirez v. Lewis Energy Group, L.P.*, ___ F. Supp. 3d ____, 2016 WL 4004706 at *4 (S.D. Tex. 2016); *Prime Ins. Syndicate, Inc. v. Jefferson*, 547 F. Supp. 2d 568, 575 (E.D. La. 2008).

Plaintiffs reduced billing hours for paralegals by 240.93 hours, from 916.80 to 675.90[3] (Ex. G to Sico Aff., D.E. 284-1 at pp. 386-437).  Defendant's expert recommends cutting the original 916.80 hours by 551.70 hours for work that she believes was clerical, leaving a total of 359.10 billable paralegal hours (Finlayson's adjusted Paralegal Billing records at p. 21; D.E. 290-1 at p. 118).

In response, Plaintiffs contend that the paralegal hours should be reduced by 64.95 hours for work that was clerical, leaving a total of 851.85 billable paralegal hours (Kern Decl. at pp. 41-42; D.E. 293-7 at pp. 42-43).  However, Plaintiffs' expert again started with the original 916.80 hours of paralegal time rather than the reduced 675.90 hours of paralegal time that represented Plaintiffs' billing judgment.  Because Plaintiffs have

---

[3] This number of hours includes the 11.4 hours erroneously omitted from Plaintiffs' reduced hours.  *See* n. 1.

already reduced the hours to 675.90, their subsequent recommendation to reduce them to 851.85 hours will be disregarded.

The Court has reviewed the paralegal hours and the reductions recommended by Defendant.  Looking at the hours that Defendant claims were spent on clerical tasks, the Court finds that some of the remaining tasks performed by paralegals, such as contacting clients about meetings, emailing an attorney with client contact information, and telephone calls to and from clients about the status of their cases were clerical in nature (*See, e.g.*, Ex. G to Sico Aff., D.E. 284-1 at pp. 400, 406, 434).

The Court finds that Plaintiffs failed to exercise billing judgment with regard to these hours, but concludes that a 5% reduction will adequately account for the non-billable clerical hours included in the billing statement.  *See Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719 at *4 (S.D. Tex. 2013) (court has discretion to deduct reasonable percentage of number of hours claimed as practical means of trimming fat from fee application); *U.S. ex rel. Becker v. Tools & Metals, Inc.*, Nos. 3:05-CV-0627-L, 3:05-CV-2301-L; 2013 WL 1293818 at *14 (N.D. Tex. 2013) (court reduced billed paralegal hours by 20% after finding roughly 22% were clerical);  *Hornbeck Offshore Services, L.L.C. v. Salazar*, No. 10-1663, 2011 WL 2214765 at *21 (E.D. La. 2011) (15% across-the-board reduction for lack of billing judgment adequately accounted for any paralegal or attorney time spent on clerical matters); *Jimenez v. Paw-Paw's Camper City, Inc.*, No. Civ.A. 00-1756, 2002 WL 257691 at *23 (E.D. La. 2002) (Rather than itemize each date on which clerical and administrative tasks occurred and attempt to calculate how much time each task took, court reduced overall time by 5% to reflect clerical tasks).

Accordingly, the Court reduces by 5%, or 33.80 hours, the number of claimed paralegal hours provided by Plaintiffs.  Plaintiffs will be awarded fees for 642.10 hours of paralegal time.

**B.  Hourly Rate**

The lodestar is intended to reflect the prevailing market rates in the relevant community.  *Purdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  It roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.  *Id*.  A reasonable fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious case, but is not intended to produce windfalls to attorneys.  *Id.* at 552 (internal citations omitted).  The burden is on the fee applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 896, n. 11 (2011)).

Plaintiffs ask that their two partner/shareholder attorneys, Craig Sico and Roger Braugh, be compensated at the rate of $550 per hour.  They ask that three other attorneys who worked on the case, Clif Alexander, Tara Hoelscher, and Stuart White, be compensated at the rate of $425 per hour.  Plaintiffs also ask that their paralegals be compensated at the rate of $115 per hour.  In addition, they ask that the Court enhance the lodestar by a multiplier of 1.75.  In support of their fee request, Plaintiffs submitted affidavits from all of the attorneys describing their involvement in the case, their

education and experience, and their knowledge of billing rates in the local legal community.  In addition, Plaintiffs provided affidavits from six attorneys not associated with the firm or this FLSA case, who described the high quality of work produced by Plaintiffs' attorneys and also said that the requested rates were in line with the usual and customary legal fees charged in the community.

Defendant counters that the rates requested by Plaintiffs are unreasonable and that Plaintiffs did not present evidence of reasonable hourly rates in Corpus Christi for attorneys with comparable skill, experience, and reputation.  Defendant asserts that none of the affidavits filed by Plaintiffs provides evidence that the hourly rates they seek are reasonable and in line with rates charged by comparable attorneys in FLSA actions in Corpus Christi, or that the attorneys have obtained those rates in a FLSA action in Corpus Christi.  Defendant asks that Plaintiffs' partner/shareholder attorneys be compensated at the rate of $250 per hour and that the other attorneys be compensated at the rate of $150 per hour.  Defendant asks that Plaintiffs' paralegals be compensated at the rate of $110 per hour.  In support, Defendant submitted an affidavit by its attorney attesting to rates in the Corpus Christi community for attorneys with comparable skill, experience, and reputation (Declaration of Keith Sieczkowski, D.E. 290-2).

An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested.  *Kellstrom*, 50 F.3d at 328.  In this case, Plaintiffs contend that their requested rate is their attorneys' customary billing

rate.  However, the requested amount is well outside the customary range of the community and is contested by Defendant.

Because there is such a wide disparity between the parties' sworn affidavits regarding an appropriate fee, the Court turns to a more objective source, the State Bar of Texas (SBOT) 2013 Hourly Fact Sheet.  The SBOT conducted a voluntary survey in 2014 to obtain information on hourly rates charged in 2013 by Texas attorneys.  The survey gives median hourly fees broken down into geographic areas, years of experience, firm size, and practice areas, among other categories.

According to the survey, the median hourly rate for an attorney statewide in 2013 was $242 per hour and in the Corpus Christi area it was $229 per hour.  There were no responses to the survey about the median hourly rate for the practice area of labor and employment law in Corpus Christi, but the median rates in other parts of the state ranged from $188 per hour to $273 per hour.  The median hourly rate for law firms with eleven to twenty-four members in the Corpus Christi area is $275 per hour.  Statewide, the rates for law firms of the same size range from $180 per hour to $279 per hour.

The Court has considered the affidavits of the parties and also the results of the SBOT survey and determines that $400 is a reasonable hourly rate for Sico and Braugh, the partner/shareholder attorneys.  The Court further determines that $300 is a reasonable hourly rate for Alexander and Hoelscher.  And $250 is a reasonable hourly rate for White.  In addition, the Court determines that work billed by the paralegals should be paid at the rate of $115 per hour.  Based on the foregoing, the Court orders that the lodestar amount of attorney's fees in this case is as follows:

Craig Sico:  483.75 hours x $400 = $193,500.00

Roger Braugh:  131.90 hours x $400 = $52,760.00

Tara Hoelscher:  1,671.50 hours x $300 = $501,450.00

Clif Alexander:  2060.20 hours x $300 = $618,060.00

Stuart White:  150.20 x $250 = $37,550.00.00

Paralegals:  642.10 x $115 = $73,841.50

Total:  $1,477,161.50

This total is subject to a deduction for travel on the part of attorney Alexander, who traveled to Dallas for a deposition on June 20, 2013 (Finlayson's adjusted hours for Alexander at p. 15; D.E. 290-1 at p. 60; Ex. G to Sico Aff.; D.E. 284-1 at p. 360).  Travel time generally is compensated at 50% of the hourly rate.  *In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008).  Because the billing entry does not specify which of several hours were spent traveling, the Court will attribute six of the hours to travel and deduct $750 from the attorney's fee award.  The adjusted lodestar amount is $1,476,411.50.

### C.  Adjustment Based on *Johnson* Factors

Plaintiffs argue that they are entitled to an upward adjustment by a multiplier of 1.75 percent based on the *Johnson* factors.  The factors considered by Johnson include (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7)

the time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

The lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (internal citations omitted). Accordingly, enhancements based on the *Johnson* factors are rare but may be awarded in exceptional circumstances. *Id*. at 552. An enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. *Id*. at 553. Thus, the novelty and complexity of a case generally may not be used as a ground for enhancement because those factors presumably are reflected in the number of billable hours recorded by the attorney. *Id*. In addition, time limitations and the preclusion of other employment by the attorney generally are subsumed in the lodestar calculation. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043-1044 (5th Cir. 1999). Also, the contingent nature of a case cannot serve as a basis for enhancement of fees under traditional fee-shifting statutes. *City of Burlington v. Dague*, 505 U.S. 557, 560-567 (1992); *Shipes v. Trinity Industries*, 987 F.2d 311, 322-323 (5th Cir. 1993).

Plaintiffs seek an upward adjustment based on the following Johnson factors: (1) the results obtained; (2) the undesirability of the case; (3) the contingent basis of the fee; (4) the preclusion of other work; and (5) the nature and length of the relationship between Plaintiffs and their counsel. Consideration of the contingent basis of the fee is foreclosed

by *City of Burlington*, 505 U.S. at 566-567, and the preclusion of other work was considered in the lodestar calculation.

Plaintiffs argue that this case was undesirable because Defendant's counsel was an interested party who had devised the pay system and this relationship increased the antagonism between the parties. Plaintiffs further claim that their attorneys risked jeopardizing their personal and professional relationships with Defendant's counsel because members of the two law firms have collaborated on personal and professional matters in the past. Finally, Plaintiffs assert that managing a large class of claimants and dissecting a complicated pay scheme made the case undesirable and time-consuming.

None of these circumstances reflects the type of undesirability contemplated by *Johnson*, which noted that civil rights attorneys face hardships in their communities because of their desire to help civil rights litigants and disapproval by the community can result in economic hardship. *Johnson*, 488 F.2d at 719; *see also Cooper v. Pentecost*, 77 F.3d 829, 833-834 (5th Cir. 1996) (court denied enhancement based on undesirability where, despite general negative stigma associated with prisoner cases, attorneys were not subjected to oppressive, unpleasant, or intimidating conditions). The Court declines to enhance the lodestar based on this factor.

Plaintiffs also argue that the nature and length of the relationship between them and their attorneys indicates that an increase in the lodestar is warranted. However, the crux of their argument is that the attorneys agreed to take the case on a contingent fee basis and such an adjustment is not allowed. Plaintiffs also assert that the clients have remained fully informed of the status of the case since its inception through phone calls,

personal meetings, letters, and emails.  However that time was contemplated in the lodestar calculation and does not warrant an increase under *Johnson*.

Regarding the result obtained, Plaintiffs say it merits an upward adjustment and Defendant says it merits a downward adjustment.  The "result obtained" factor is presumably fully reflected in the lodestar amount and cannot serve as an independent basis for increasing the basis fee award.  *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986).  The Fifth Circuit has held that although upward adjustment of this factor may still be permissible, such a modification is proper only in certain rare and exceptional circumstances.  *Shipes*, 987 F.2d at 320.

Nothing about the results obtained in this case warrants either an upward or downward adjustment.  Plaintiffs sought damages of up to more than $18 million for violations of the FWW pay plan (Decl. of David Kern at p. 2; D.E. 240-3 at p. 3).  Although they did not prevail on their arguments that they were entitled to that amount, the Court did find that they were entitled to more than $1.4 million in lost wages and liquidated damages, which is a significant judgment, but not rare or exceptional given the circumstances of the case.

For the foregoing reasons, the Court declines to adjust the lodestar amount of attorney's fees based on any of the Johnson factors.  Plaintiffs are awarded attorney's fees in the amount of $1,476,411.50.

### D.  Costs and Expenses

In addition to attorney's fees, Plaintiffs seek reimbursement for taxable costs in the amount of $18,628.02 and expenses in the amount of $348,238.54, for a total of

$366,866.56.   For taxable costs, they seek $415.00 in filing fees and for service of process; $8,449.04 for copying costs; and $9,828.98 in deposition/transcript costs.   For expenses, they seek $7,162.13 for Westlaw and PACER research; $1,312.09 for postage; $5,750 to cover the cost of two days of mediation; $3,010.46 for travel, lodging, mileage and parking reimbursement; $1,608.15 to hire an IT specialist; and expert fees in the amount of $331,518.97.   Defendant contends that Plaintiffs are not entitled to any costs not enumerated in 28 U.S.C. § 1920.   Among the items Defendant argues are not reimbursable are expert fees, Westlaw/PACER fees, postage, long-distance calls, mediation costs, travel related expenses, and the IT specialist fees.

Rule 54(d) of the Federal Rules of Civil Procedure provides that costs should be awarded to the prevailing party.   Rule 54(d)(1) addresses costs other than attorney's fees: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."   Rule 54(d)(2) addresses attorney's fees:   "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."

Costs are limited by 28 U.S.C. § 1920, which provides that the following expenses may be taxed as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any material where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

The Supreme Court has indicated that courts may only award costs which are articulated in § 1920 absent explicit statutory or contractual authorization to the contrary.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 444-445 (1987); *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 529 (5th Cir. 2001).

**(1) Costs**

**(a)  Filing and Process Fees**

Plaintiffs seek $415.00 in filing and service fees.  Such fees may be taxed as costs under 28 U.S.C. § 1920(1).  Accordingly, the $415.00 in fees are taxed as costs against Defendant.

**(b)  Copying and Scanning Costs**

Costs may be awarded for copies when they are necessarily obtained for use in a case.  28 U.S.C. § 1920(4).  The prevailing party has the burden of showing that the copies were necessary.  *Fogelman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991).  While it is not expected that a prevailing party will identify every copy made for use in the course of a legal proceeding, courts do require some demonstration that reproduction costs result from the litigation.  *Id.*  The party against whom costs are taxed should pay for the cost of producing relevant documents and exhibits for use in the case, "but should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines."

*Id*.   The cost of copies obtained simply for the convenience of counsel are not reimbursable.  *Id.*

Plaintiffs seek copying costs in the amount of $8,449.04.  This amount includes not only copies made in-house by the law firm, but costs for outsourced copying of documents, for scanning documents onto DVDs and flash drives, for a case file from another court, and for some PACER printouts (Ex. H to Sico Aff., D.E. 284-1 at pp. 439-440; Exs. A-C to Aff. of Roger Braugh, D.E. 293-9 at pp. 1-55).  Plaintiffs' proof that the copies were relevant and necessary is sparse and consists of sworn statements by two attorneys that the copies were reasonable and necessary for the litigation (Sico Aff. at pp. 14-15l, D.E. 284-1 at pp. 15-16; Braugh Aff. at p. 6; D.E. 293-9 at p. 7).

Looking only at the copying costs, the Court finds that Plaintiffs made 32,132 in-house copies at a cost of $.10 each for a total of $3,213.20.  Plaintiffs also obtained 555 copies from a document service at a cost of $.10 each for a total of $55.50.   This lawsuit was based on voluminous pay records for a large class of plaintiffs and the Court is sure that some amount of the copies were reasonable and necessary for the litigation. However, without some evidence provided by Plaintiffs regarding the nature of the copies and some detail about why they were reasonable and necessary to the litigation, the Court will reduce the copying costs by 25% to account for the possibility that some of the copies were not necessary for the litigation, but were produced for the convenience of the attorneys.  Thus, copying costs in the amount of $3,268.70 will be reduced by 25% to $2,451.52 and this amount will be taxed as costs.

Also, Plaintiffs ordered several DVDs and CDs of documents and did not explain what they are or why they were necessary (Ex. C to Braugh Aff., D.E. 293-9 at pp. 43-45 and 47). They also submitted bills for color copies, index tabs, digital prints, binders and trial boards without explanation for why they were necessary (Ex. C. to Braugh Aff., D.E. 293-9 at pp. 46-48, 50). Without some explanation, Plaintiffs did not meet their burden of showing these expenses were reasonable and necessary for the litigation and the Court will not tax them as costs.

Plaintiffs also submitted a bill from the National Archives and Records Administration in the amount of $213.00 for what appears to be documents from a case from the federal court in the Western District of Texas (Ex. C to Braugh Aff., D.E. 293-9 at pp. 51-52). Plaintiffs provide no explanation for this expense and the Court declines to tax it as a cost.

Plaintiffs included $199.00 in PACER fees as part of their request for copying costs without any explanation as to why they were reasonable or necessary for use in the case. Plaintiffs have not met their burden regarding the PACER entries and the Court declines to tax them as costs.

Plaintiffs also include an expense of $3,165.89 which was half the cost (split with Defendant) of scanning 41,054 documents onto a disc and providing Optical Character Recognition (OCR) for the documents.[4] Courts are divided on whether scanning documents onto a disc is considered copying for purposes of 42 U.S.C. § 1920(4). In

---

[4] Attorney Braugh states in his affidavit that Plaintiffs paid Defendant's law firm $5,802.84 for their half of the scanning costs (Braugh Aff. at p. 6; D.E. 293-9 at p. 7). However, the records submitted only contain invoices for a total of $6,331.78, half of which is $3,165.89 (Ex. B. to Braugh Aff., D.E. 293-9 at pp. 32-37). Absent further explanation or documentation, the Court will consider only this amount as an expense for scanning documents.

*Baisden v. I'm Ready Productions, Inc.*, 793 F. Supp. 2d 970, 987 (S.D. Tex. 2011), the court disallowed costs for document scanning and imaging because the party seeking the cost did not cite any authority that recognized the expenditures for the services as costs that could be taxed under § 1920.

However in *Eolas Technologies Inc. v. Adobe Systems, Inc.*, 891 F. Supp. 2d 803, 806 (E.D. Tex. 2012), the court stated that "[d]ocument scanning is essentially copying paper documents to electronic form.  Thus, the costs of scanning documents are permitted under § 1920."  Similarly, the court in *United States ex rel. King v. Solvay, S.A.*, No. H-06-2662, 2016 WL 3523873 at *13 (S.D. Tex. 2016), taxed the cost of scanning after the party seeking the costs explained that the items were necessary to generate files that were in compliance with extensive discovery requests.  This Court finds that the scanning of documents is sufficiently like copying paper documents that such costs are taxable.

Plaintiffs refer to the scanned documents as "RTFC records" without further explanation (Braugh Aff., at p. 6; D.E. 293-9 at p. 7).  However, the Court is familiar with the proceedings in this case and surmises that "RTFC records" were hour and pay records for the Plaintiffs that were critical to understanding how RTFC administered its pay plan.  In addition, the fact that Defendant split the cost of scanning the documents indicates that it also believed the documents were important to the case.  Thus, the Court will tax $3,165.89 for the scanning of documents as costs.

### (c) Deposition, Transcripts, and Video Costs

Plaintiffs seek $9,828.98 in deposition and transcript costs.  Defendant concedes that deposition and transcript costs can be taxed as costs under § 1920, but argues that the

cost of videotaped depositions or a surcharge for an expedited transcript cannot be taxed as costs under the statute. Defendant cites *Mota*, 261 F.3d at 529-530, where the court found that because § 1920 only allowed for the recovery of "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case," a party could not recover the cost of videotaped depositions. However, § 1920(2) was amended in 2008 to allow a judge to tax as costs fees for electronically recorded transcripts. *Baisden*, 793 F. Supp. 2d at 976 (citing *S&D Training Academy, LLC v. AAFIS, Inc.*, 336 Fed. Appx. 443, 450-451 (5th Cir. 2009)); *see also Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 789-790 (N.D. Tex. 2014) (cost of printed transcript or recorded deposition, or both, is authorized under § 1920(2)).

A deposition need not be introduced into evidence at trial in order to be necessarily obtained for use in the case. *Fogelman*, 920 F.2d at 285. "If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party." *Id.* Also, a deposition copy obtained for use at trial or in preparation for trial, rather than for the mere convenience of counsel, may be included as a taxable cost. *Id.* The party seeking the costs has the burden of showing that the various versions of the deposition were reasonably obtained for use in the case. *Baisden*, 793 F. Supp. 2d at 977.

Plaintiffs contend that they deposed fourteen witnesses and relied on the deposition transcripts to address dispositive motions and prepare expert reports. They further contend that it is their routine practice to take video depositions of witnesses so that the testimony will be preserved in the event that the witness is later unavailable to

testify at trial and that videotaped depositions are more effective than written transcripts in such circumstances  (Braugh Aff. at pp. 6-7; D.E. 293-9 at pp. 7-8).

The billing records show that Plaintiffs seek to have taxed as costs original deposition transcripts for four Defendant witnesses and one copy each of three of those transcripts (Ex. D to Braugh Aff., D.E. 293-9 at pp. 83-84, 86, 90).  Plaintiffs also seek fees for the video depositions of the four Defendant witnesses (Ex. D to Braugh Aff., D.E. 293-9 at pp. 59, 78, 88).  The remaining costs are for single copies of transcripts of Plaintiffs' witnesses (Ex. D to Braugh Aff., D.E. 293-9 at pp. 61, 65-67, 69-70, 72, 74-75).  Plaintiffs also seek costs for copies of two hearing transcripts that total $166.00 and an MPEG copy of two depositions at a cost of $250.  The Court finds that Plaintiffs have met their burden of showing that the transcripts and videotaped depositions were obtained for use at trial or in preparation for trial.  Similarly, the hearing transcripts and MPEG copies of two of the depositions were reasonably attained for use in or preparation for trial.

Plaintiffs also submitted $130 in costs for shipping, binding, and handling of the depositions (*See* Ex. D to Braugh Aff., D.E. 293-9 at pp. 59, 61, 78, 88, 90).  These costs are not recoverable.  *U.S. ex rel. Long v. GSDMidea City, L.L.C.*, 807 F.3d 125, 133 (5th Cir. 2015).  Accordingly, the Court taxes as costs $9,698.98 for expenses related to depositions in this case.

In sum, the Court finds that the following are taxable costs:

Filing and Process Fees:  $415.00

Copying:  $2,451.52

Scanning:  $3,165.89

Deposition Transcripts and Videos:  $9,698.98

Total:  $15,731.39

**(2) Reasonable and Necessary Expenses**

In addition to costs, Plaintiffs assert that they also are entitled to recover their reasonable and necessary expenses.  Rule 54(d)(2) addresses attorney's fees and states that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Some circuit courts have interpreted the "related nontaxable expenses" language in Rule 54(d)(2) very broadly in FLSA cases.  For example, in *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997), the court noted that travel and related expenses were recoverable not as costs, but as expenses, because they were the type of expense that a lawyer normally includes with a bill for professional services.  *See also Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (where attorney's fees are expressly authorized as they are in 29 U.S.C. § 216(b), trial court is not limited to Rule 54(d), but has authority to include litigation expenses as part of a reasonable attorney's fee).

However, the Fifth Circuit has taken a much more narrow view of the rule, finding that federal courts may only award those costs articulated in 28 U.S.C. § 1920, absent explicit statutory or contractual authorization to the contrary.  *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (citing *Cook Children's Medical Center v. The New England PPO Plan of General Consolidation Management Inc.*, 491

F.3d 266, 274 (5th Cir. 2007)).  Most courts in the Fifth Circuit that have examined the issue of whether expenses could be awarded for things such as expert witness fees and computer assisted legal research, which are not listed as costs under § 1920, have disallowed them without discussion as to whether they were costs or expenses when they are not explicitly authorized by another statute.  *See*, *e.g.*, *Cook Children's Medical Center*, 491 F.3d at 276 (mediation fees not recoverable in ERISA case) and *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 404-405 (5th Cir. 2002) (disallowing expert witness fees  in absence of express authority in ADEA or FLSA).

Plaintiffs cites several district court cases where various expenses were awarded as nontaxable expenses even though they were not listed in § 1920.  In *Quintanilla v. A&R Demolition*, No. H-04-1965, 2008 WL 9410399 at *9 (S.D. Tex. 2008), the court, citing *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1329 (M.D. Fla. 2001), found that "[r]eimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable under the FLSA as part of an attorney's fee award."  Notably, the court did not distinguish between costs included in § 1920 and items not included in that statute.

Other district courts have cited *Quintanilla* for its holding regarding recovery of costs and expenses.  *See Rouse v. Target Corporation*, No. 3:15-CV-48, 2016 WL 319871 at *7-8 (S.D. Tex. 2016); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 629-630 (W.D. Tex. 2015); *Hilton v. Executive Self Storage Associates*, *Inc.*, No. H-06-

2744, 2009 WL 1750121 at *16 (S.D. Tex. 2009); and *Chapman v. A.S.U.I. Healthcare and Development Ctr.*, No. H-11-3025, 2013 WL 487032 at *8-9 (S.D. Tex. 2013).

This Court is hesitant to adopt the holding in *Quintanilla* because the parties there had settled their collective action and agreed on the amount of attorney's fees and costs. *Quintanilla*, 2008 WL 9410399 at *3. The court did not discuss costs versus expenses and there was no description of the costs or expenses awarded by the court. *Id.* at *9. Similarly in the *Alex* case, the non-prevailing party did not dispute the request for fees and the court awarded fees for travel, meals, lodging, photocopying, computer legal research, postage, courier service, mediation, and exhibits. *Alex*, 125 F. Supp. 2d at 630. The courts in *Hilton* and *Chapman* quoted *Quintanilla* and awarded costs to the prevailing party, but neither court listed the items for which costs were awarded. *Hilton*, 2009 WL 1750121 at *16; Chapman, 2013 WL 487032 at *8-9. In *Rouse*, the court cited *Quintanilla* and the other cases listed above and awarded costs of travel, meals, postage, faxes, and copies as "reasonable litigation expenses," without noting which items are listed in § 1920 and which are not. *Rouse*, 2016 WL 319871 at *7-8.

None of these courts squarely discussed the issue of awarding costs versus expenses in light of Rule 54(d) and the limits imposed by 28 U.S.C. § 1920 because it does not appear that the issue was raised in any of the cases. Other courts in this circuit when faced with disputed requests for costs, including expenses that normally are passed on to a client by an attorney, routinely deny requests for items that are not listed in § 1920. *See Tempest Publishing, Inc. v. Hacienda Records and Recording Studio, Inc.*, 141 F. Supp. 3d 712, 725 (S.D. Tex. 2015) (Costs for faxes, meals, messenger and delivery

services, mileage, postage, research and documentation, and travel expenses are overhead costs and not recoverable under 28 U.S.C. § 1920 (citing *Embotelladora Agral Regiomontana, S.A. de C.V. v Sharp Capital, Inc.*, 952 F. Supp. 415, 417-19 (N.D. Tex. 1997)); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991 at \*12 (N.D. Tex. 2014) (court denied costs for postage and delivery, travel expenses, and post-appeal mediation because they are not included in § 1920 and not authorized by the FLSA); *Hernandez v. Aleman Const., Inc.*, No. 3:10-CV-2229-BN, 2013 WL 5873289 at \*6-7 (N.D. Tex. 2013) (court denied costs for process serving, mediation, mileage, parking, office supplies, teleconferencing, and FedEx costs because they were not listed in § 1920*); Conoco, Inc. v. Energy & Environmental Intern., L.C.*, No. Civ.A-H-01-4242, 2006 WL 734396 at \*1-2 (S.D. Tex. 2006) (court disallowed costs for expert witnesses, travel, meals, postage and delivery fees, investigators, outside computer services, and computer database research because they are not listed in § 1920).

The Court is mindful of the different ways district courts have addressed the issue of costs and expenses. However, given that courts that have awarded nontaxable expenses have not acknowledged what effect, if any, 28 U.S.C. § 1920 might have on the requests, the Court declines to follow their holdings. Accordingly, Plaintiffs' request to be reimbursed for expenses not listed in 28 U.S.C. § 1920 are denied. Notwithstanding the foregoing, two of Plaintiffs' requests are addressed more specifically below.

### (a) Expert Witness Fees

Plaintiffs seek to recover fees for their expert witnesses in the amount of $331,518.97. It is well-settled in the Fifth Circuit that there is no express statutory

authority in the FLSA to award expert witness fees for other than court-appointed expert witnesses. *Tyler*, 304 F.3d at 404-405; *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 709 (E.D. La. 2009); *Conoco*, 2006 WL 734396 at *1-2. Plaintiffs cite *Meesook v. Grey Canyon Family Medicine, P.A.*, No. 5:13-CV-729-XR, 2014 WL 5040133 (W.D. Tex. 2014), where the court awarded $18.00 in Secretary of State research fees in a FLSA case. The *Meesook* court cited to the Voting Rights Act attorney's fee statute, 42 U.S.C. § 1973l(e),[5] for authorization to award the fee. That statute allows "reasonable expert fees, and other reasonable litigation expenses" as part of the costs. The court offered no explanation for why it looked at 42 U.S.C. § 1973l(e) rather than the general cost statute, 28 U.S.C. § 1920, when making the determination about awarding the $18.00 fee. In light of the clear language in *Tyler* that there is no statutory authority to award witness expert fees in a FLSA case, this Court declines to award expert fees to Plaintiffs.

In the alternative, Plaintiffs suggest that because its experts are also licensed attorneys, the expert witness fees be considered attorney's fees in the case. Plaintiffs cite no authority for their proposition and none was found. Moreover, if the experts were designated attorneys of record in this case, the time they spent in the case would need to be documented and determined to be reasonable and no such documentation was submitted. For these reasons, the amount requested for expert fees must be disallowed.

### (b)  Computer Assisted Legal Research and Pacer Research

Plaintiffs seek $6,130.70 in computer assisted legal research fees on Westlaw and Pacer. Plaintiffs assert that this amount represents a 20% reduction in the actual costs

---

[5] Now located at 52 U.S.C. § 10310(e).

incurred to reflect that the law firm pays a monthly Westlaw expense for all its cases. Plaintiffs add that they incurred additional Westlaw expenses when they examined materials outside their contract plan (Sico Aff. at pp. 15-16; D.E. 284-1 at pp. 16-17).

The Fifth Circuit has not addressed whether computer assisted legal research fees are recoverable as costs in a FLSA case.  Other appellate courts have held that fees associated with legal research cannot be taxed as costs, but in some cases may be considered attorney's fees.  *See Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 43 (1st Cir. 2006); *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1180 (10th Cir. 2005); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir. 2000); *U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2nd Cir. 1996).

District courts in the Fifth Circuit have declined to tax computer assisted research fees as costs or expenses.  *See, e.g., Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 581 (W.D. Tex. 2010); *International Marine, LLC v. FDT, LLC*, No. 10-0044, 2015 WL 914898 at *18 (E.D. La. 2015); and *Construction South, Inc. v. Jenkins*, No. 11-1201, 2011 WL 3882271 at *4 (E.D. La. 2011).   In *Javelin Investments, LLC v. McGinnis*, No. H-05-3379, 2007 WL 1003856 at *4 (S.D. Tex. 2007), the court noted that charges for computer assisted legal research are arguably recoverable as part of attorney's fees in a copyright infringement case brought pursuant to 17 U.S.C. § 505, but declined to award the fees because the documentation of the charges was inadequate. Because there is no precedent for awarding computer assisted legal research fees as either

costs or attorney's fees in a FLSA case in the Fifth Circuit, Plaintiffs requests for such fees is denied.

## CONCLUSION

Based on the foregoing, it is ORDERED that Defendant pay Plaintiffs $1,476,411.50 in attorney's fees and $15,731.39 in costs.  In addition, it is ordered that Plaintiffs pay Defendant post-judgment interest at the legal rate.

ORDERED this 2nd day of September, 2016.


NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE